Filing # 100414546 E-Filed 12/17/2019 10:05:50 AM

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law.  This form must be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to section 25.075, Florida Statutes.  (See instructions for completion.)

**I.      CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>ELEVENTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>  COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>ECB USA, Inc., Atlantic Ventures Corp., G.I.E. C2B</u>
Plaintiff
            vs.
<u>CHUBB INSURANCE COMPANY OF NEW JERSEY</u>
Defendant

**II.      TYPE OF CASE**

- ☐ Condominium
- ☒ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☐ Negligence – other
    - ☐ Business governance
    - ☐ Business torts
    - ☐ Environmental/Toxic tort
    - ☐ Third party indemnification
    - ☐ Construction defect
    - ☐ Mass tort
    - ☐ Negligent security
    - ☐ Nursing home negligence
    - ☐ Premises liability – commercial
    - ☐ Premises liability – residential
- ☐ Products liability
- ☐ Real Property/Mortgage foreclosure
    - ☐ Commercial foreclosure $0 - $50,000
    - ☐ Commercial foreclosure $50,001 - $249,999
    - ☐ Commercial foreclosure $250,000 or more
    - ☐ Homestead residential foreclosure $0 – 50,000
    - ☐ Homestead residential foreclosure $50,001 - $249,999
    - ☐ Homestead residential foreclosure $250,000 or more
    - ☐ Non-homestead residential foreclosure $0 - $50,000
    - ☐ Non-homestead residential foreclosure $50,001 - $249,999

- ☐ Non-homestead residential foreclosure $250,00 or more
- ☐ Other real property actions $0 - $50,000
- ☐ Other real property actions $50,001 - $249,999
- ☐ Other real property actions $250,000 or more

- ☐ Professional malpractice
    - ☐ Malpractice – business
    - ☐ Malpractice – medical
    - ☐ Malpractice – other professional
- ☐ Other
    - ☐ Antitrust/Trade Regulation
    - ☐ Business Transaction
    - ☐ Circuit Civil - Not Applicable
    - ☐ Constitutional challenge-statute or ordinance
    - ☐ Constitutional challenge-proposed amendment
    - ☐ Corporate Trusts
    - ☐ Discrimination-employment or other
    - ☐ Insurance claims
    - ☐ Intellectual property
    - ☐ Libel/Slander
    - ☐ Shareholder derivative action
    - ☐ Securities litigation
    - ☐ Trade secrets
    - ☐ Trust litigation

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

| | | |
|---|---|---|
| III. | **REMEDIES SOUGHT** (check all that apply): | |
| | ☒ | Monetary; |
| | ☒ | Non-monetary declaratory or injunctive relief; |
| | ☐ | Punitive |

IV.    **NUMBER OF CAUSES OF ACTION: (    )**
(Specify)

<u>3, breach of contract,  declaratory relief, common law bad faith</u>

V.    **IS THIS CASE A CLASS ACTION LAWSUIT?**
☐ Yes
☒ No

VI.    **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☒ No
☐ Yes – If "yes" list all related cases by name, case number and court:

VII.    **IS JURY TRIAL DEMANDED IN COMPLAINT?**
☒ Yes
☐ No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature <u>s/ JOEL S MAGOLNICK</u>        FL Bar No.: <u>776068</u>
          Attorney or party                                    (Bar number, if attorney)

<u>JOEL S MAGOLNICK</u>        <u>12/17/2019</u>
    (Type or print name)            Date

Filing # 100414546 E-Filed 12/17/2019 10:05:50 AM

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.

ECB USA, INC., a Florida corporation,
ATLANTIC VENTURES CORP., a Florida
corporation, G.I.E. C2B, a French
business entity, as assignees of
CONSTANTIN ASSOCIATES LLP, a New
York limited liability partnership,

      Plaintiffs,

vs.

CHUBB INSURANCE COMPANY OF NEW
JERSEY, a New Jersey insurance company
corporation,

      Defendant.

_____/

### COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

Plaintiffs ECB USA, INC. ("ECB USA"), Atlantic Ventures Corp. ("Atlantic Ventures"), and G.I.E. C2B ("C2B") (ECB USA, Atlantic Ventures, and C2B will be referred to, collectively, as the "Plaintiffs"), hereby sue Defendant Chubb Insurance Company of New Jersey ("Chubb") and, as grounds, state:

### BACKGROUND

This case is about Chubb's refusal to provide an indemnity or defense to its insured Constantin Associates, LLP ("Constantin"), for claims asserted by Plaintiffs in their initial Complaint and Amended Complaint, in the matter styled *ECB USA, et al. v. Constantin Associates, LLP, et al.,* Miami-Dade Circuit Court Case Number 2018-028627-CA-01 (the

Case No.: _____

"Constantin Lawsuit").  The claims in the Constantin Lawsuit arise out of Constantin's provision of professional **accounting** services. Constantin's insurance policy, Chubb Professional Portfolio Policy Number 8168-4190 (the "Policy"), provides coverage for "services directed toward expertise in ...**accounting**...." (emphasis added). Despite the clear language of the Policy, Chubb twice refused to provide Constantin a defense or indemnity in the Constantin Lawsuit, stating that "the definition of Professional Services does not include **accounting** services" (emphasis added).  Chubb's refusal left Constantin to fend for itself.  After defending the Constantin Lawsuit for over a year, Constantin settled with Plaintiffs for $4.96 million and an assignment to Plaintiffs of all of Constantin's rights against Chubb. Plaintiffs seek (i) a declaration that Chubb was required to provide a defense and to indemnify Constantin under the Policy, (ii) damages for Chubb's failure to defend or indemnify, and (iii) damages for common law bad faith.

## THE PARTIES

1.      ECB USA is a Florida corporation with its principal place of business in Miami-Dade County, Florida.

2.      Atlantic Ventures is a Florida corporation with its principal place of business in Miami-Dade County, Florida.

3.      C2B is a French business entity.

4.      Plaintiffs file this action as the assignees of all claims that Constantin has against Chubb related to its failure and refusal to provide Constantin (assignor of the claims) with a defense or indemnification for the claims in the Constantin Lawsuit.  A copy of the assignment of Constantin's rights against Chubb to Plaintiffs is attached as Exhibit "A" (the "Assignment").

Case No.: _____

5.     Chubb is a New Jersey stock insurance company incorporated under the laws of New Jersey with its principal place of business in New Jersey.

## JURISDICTION AND VENUE

6.     This is an action for damages in excess of the jurisdictional limits of this Court, exclusive of interest, costs, and attorney's fees.

7.     Jurisdiction over Chubb is proper pursuant to Florida Statutes §48.193(7) because, as more fully set forth, *infra*, Chubb breached a contract in this state by failing to perform acts required by the contract to be performed in this state.

8.     Venue is proper in Miami-Dade County, Florida under Florida Statutes §§ 47.011 and 47.051 because the action accrued in Miami-Dade County, Florida, where Chubb was required to, but in breach of the Policy, refused to, provide a defense or indemnification for the Constantin Lawsuit. Accordingly, a substantial part of the events or omissions giving rise to this claim occurred in Miami-Dade County, Florida.

## FACTS

9.     The Policy is a claims-made policy and covers the period beginning December 12, 2017 and continuing until December 12, 2018. A copy of the Policy is attached as Exhibit "B."

10.     Constantin was insured under the Policy which had limits of $3 million.

11.     In the Constantin Lawsuit, Plaintiffs sought damages in excess of $30 million arising out of Constantin's provision of professional **accounting** services.  A copy of the initial Complaint filed by Plaintiffs is attached as Exhibit "C."

Case No.: _____

12.     On September 19, 2018, Constantin's insurance agency provided notice of the initial Complaint to Chubb.  A copy of the September 19, 2018 notice is attached as Exhibit "D."

13.     On October 12, 2018, Chubb denied coverage to Constantin under the Policy and refused to provide a defense to, or indemnify, Constantin.  A copy of Chubb's October 12, 2018 denial is attached as Exhibit "E."

14.     On April 10, 2019, Plaintiffs filed an Amended Complaint in the Constantin Lawsuit.  A copy of the Amended Complaint is attached as Exhibit "F."

15.     On June 10, 2019, Constantin's counsel provided notice of the Amended Complaint to Chubb.  A copy of the June 10, 2019 notice is attached as Exhibit "G."

16.     On June 27, 2019, Constantin's counsel provided written notice to Chubb that Plaintiffs were seeking in excess of $27 million in compensatory damages in the Constantin Lawsuit.  A copy of the June 27, 2019 letter is attached as Exhibit "H."

17.     On July 2, 2019, Chubb, once again, denied coverage to Constantin under the Policy, and refused to provide a defense or indemnification.  A copy of the July 2, 2019 denial letter is attached as Exhibit "I."

18.     Notwithstanding the fact that the plain language of the Policy makes clear that the Policy covers "services directed to an expertise in .... **accounting**," *see* Exh. "B" (emphasis added), Chubb stated in its July 2, 2019 denial letter that "the definition of Professional Services **does not include accounting services**." (emphasis added).  *See* Exh. "I" at 3.

Case No.: _____

19.     After more than a year of active litigation, in November 2019, Constantin settled Plaintiffs' negligence-based claims in the Constantin Lawsuit for $4,946,000, plus the Assignment (the "Settlement").

20.     As part of the Settlement, the Court in the Constantin Lawsuit entered judgment in favor of Plaintiffs against Constantin in the amount of $4,850,000 (the "Agreed Final Judgment").  A copy of the Agreed Final Judgment is attached as Exhibit "J."

21.     The amount of the Settlement was reasonable and the Settlement was entered into in good faith.

22.     All conditions precedent to the filing of this action have been performed, satisfied, excused or waiver.

## COUNT I
## DECLARATORY RELIEF

23.     Plaintiffs adopt and incorporate by reference the allegations of paragraphs 1 through 22 of this Complaint as though more fully set forth herein, and allege further:

24.     This is a claim for declaratory relief under Florida Statute § 86.012, pursuant to which any person claiming to be interested in, or who may be in doubt about his or her rights under, a contract or whose rights, status, or other equitable or legal relations are affected by such contracts or instrument in writing, may have determined any question of construction or validity arising under such contract or written agreement.

25.     Plaintiffs have an interest in the Policy.  Plaintiffs believe in good faith that the Policy provided coverage for the claims in the Constantin Lawsuit and that the Policy required Chubb to provide a defense and/or indemnification to Constantin for the claims in the Constantin Lawsuit.

Case No.: _____

26.     Chubb has denied that the Policy provides coverage for the claims in the Constantin Lawsuit or that Chubb was required to provide a defense and/or indemnification to Constantin for the claims in the Constantin Lawsuit.

27.     Plaintiffs and Chubb have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law.

28.     There is a bona fide, actual, present practical need for the declaration sought herein.

29.     The antagonistic and adverse interests are all before the Court by proper process.

WHEREFORE, Plaintiffs request that the Court enter a declaratory judgment against Chubb, declaring that the Policy provides coverage for the claims in the Constantin Lawsuit, including the duty of Chubb to indemnify and defend Constantin for the claims in the Constantin Lawsuit.  Additionally, Plaintiffs request entry of an Order awarding all recoverable costs and attorneys' fees pursuant to Florida Statutes § 627.428, and for such further relief as this Court deems just and proper.

### COUNT II
### BREACH OF CONTRACT

30.     Plaintiffs adopt and incorporate by reference the allegations of paragraphs 1 through 22 of this Complaint as though more fully set forth herein, and allege further:

31.     Chubb issued the Policy under which Constantin was a named insured.

32.     The Policy provided coverage for the claims in the Constantin Lawsuit.

33.     Pursuant to the terms of the Policy, Chubb had a duty to defend and indemnify Constantin for the claims in the Constantin Lawsuit.

34.     Constantin fully performed its obligations under the Policy.

Case No.: _____

35.     Chubb breached its obligations under the Policy by failing to defend and indemnify Constantin in the Constantin Lawsuit based upon an improper assertion that the claims in the Constantin Lawsuit were not covered under the Policy.

36.     Plaintiffs have been damaged as a direct and proximate result of Chubb's breach of its obligations to defend and indemnify Constantin in the Constantin Lawsuit.

**WHEREFORE**, Plaintiffs demand judgment against Chubb for:

a.  compensatory and consequential damages, including the full amount of the Agreed Final Judgment;

b.  all other amounts paid or owed by Constantin pursuant to the Settlement;

c.  recovery of all attorneys' fees and costs associated with the defense and settlement of the Constantin Lawsuit;

d.  all other recoverable costs and attorneys' fees pursuant to Florida Statutes § 627.428; and

e.  such further relief as this Court deems just and proper.

## COUNT III
## COMMON LAW BAD FAITH

37.     Plaintiffs adopt and incorporate by reference the allegations of paragraphs 1 through 22 of this Complaint as though more fully set forth herein, and allege further:

38.     Chubb issued the Policy under which Constantin was an insured.

39.     Constantin notified Chubb of the claims in the Constantin Lawsuit and furnished Chubb with copies of the initial Complaint and the Amended Complaint.

40.     Despite its clear obligation under the Policy, Chubb failed to provide a defense to Constantin for the claims in the Constantin Lawsuit.

Case No.: _____

41.     Despite its clear obligation under the Policy, Chubb failed to indemnify Constantin for the claims in the Constantin Lawsuit.

42.     After defending the Constantin Lawsuit for over a year, Constantin entered the Settlement with Plaintiffs.

43.     Chubb breached its duties of good faith to Constantin by, *inter alia*:

(a)     Failing to use towards Constantin the same degree of care and diligence as a company of ordinary care and prudence should exercise in the management of its affairs;

(b)     Failing to provide a defense to Constantin in the Constantin Lawsuit;

(c)     Failing to make decisions with regard to coverage, settlement, and litigation in good faith with due regard to the interests of Constantin in the Constantin Lawsuit;

(d)     Failing to timely investigate coverage of the claims in the Constantin Lawsuit;

(e)     Failing to timely and properly evaluate the claims against Constantin in the Constantin Lawsuit;

(f)     Failing to initiate settlement negotiations with Plaintiffs as coverage under the Policy for the claims in the Constantin Lawsuit was clear and the damages suffered by Plaintiffs were so large that a judgment in excess of policy limits was likely;

(g)     Failing to advise Constantin of settlement opportunities for the Constantin Lawsuit;

(h)     Failing to advise Constantin of the possible outcomes of the Constantin Lawsuit, including an excess judgment;

(i)     Failing to properly and timely evaluate the exposure to Constantin presented by the claims in the Constantin Lawsuit;

(j)     Failing to settle, if at all possible, where a reasonable, prudent company faced with the prospect of paying an excess judgment would do so;

(k)     Failing to settle the claims in the Constantin Lawsuit within Policy limits upon notice of the Constantin Lawsuit; and

Case No.: _____

      (l)     Failing to indemnify Constantin under the Policy.

44.     Chubb is liable for the acts and omissions of its agents, employees and/or representatives in the handling of the claims against Constantin in the Constantin Lawsuit.

45.     Chubb's actions, as more fully described herein, unfairly interfered with Constantin's receipt of the Policy's benefits.

46.     Chubb's conduct did not comport with reasonable contractual expectations under the Policy's terms regarding Chubb's duty to defend and indemnify Constantin for the claims in the Constantin Lawsuit.

47.     Plaintiffs were damaged as a direct and proximate result of Chubb's bad faith actions.  As a result of the above breaches of its duty of good faith, Chubb is liable for the full amount of the Settlement, including the Final Judgment in the amount of $4,850,000, plus all sums expended by Constantin under the Settlement, and all fees and costs expended or owed by Constantin in the defense of the Constantin Lawsuit.

48.     As assignees of Constantin, Plaintiffs are entitled to recover attorneys' fees pursuant to Florida Statutes § 627.428.

**WHEREFORE**, Plaintiffs demand judgment against Chubb for:

a.   compensatory and consequential damages, including the full amount of the Agreed Final Judgment;

b.   all other amounts paid or owed by Constantin pursuant to the Settlement;

c.   recovery of all attorneys' fees and costs associated with the defense and settlement of the Constantin Lawsuit;

d.   all other recoverable costs and attorneys' fees pursuant to Florida Statutes § 627.428; and

Case No.: _____

  e.  such further relief as this Court deems just and proper.

## RESERVATION OF RIGHTS

Plaintiffs also reserve the right to amend this Complaint to assert a claim for statutory bad faith, seeking statutory damages, as well as attorneys' fees and costs, pursuant to Florida Statutes, 624.155 *et. seq.*

## DEMAND FOR JURY TRIAL

Plaintiffs request a trial by jury on all issues.

Respectfully submitted,

**MARKO & MAGOLNICK, P.A.**
Attorneys for Plaintiffs
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: (305) 285-2000
Facsimile:  (305) 285-5555


By: /s/ Joel S. Magolnick
     **Joel S. Magolnick, Esq.**
     Florida Bar No. 776068
     Magolnick@mm-pa.com
     **John E. Kirkpatrick, Esq.**
     Florida Bar No. 376782
     Kirkpatrick@mm-pa.com
     **Davide Proietti, Esq.**
     Florida Bar No. 1002553
     Proietti@mm-pa.com

# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

CASE NO.: 2018-028627-CA-01 (44)

ECB USA, INC., a Florida corporation,
ATLANTIC VENTURES CORP., a Florida
corporation, and G.I.E. C2B, a French entity,

      Plaintiffs,

vs.

CONSTANTIN ASSOCIATES, LLP, a New
York limited liability partnership; and
BERTRAND PROUST, an individual,

      Defendants.

_____/

BERTRAND PROUST, an individual,

      Third-Party Plaintiff,

vs.

ARNO LEONI, an individual,

      Third-Party Defendant.

_____/

## **ASSIGNMENT**

Constantin Associates, LLP ("Assignor"), for Ten Dollars and other good

and valuable consideration, hereby irrevocably assigns to ECB USA, Inc., Atlantic

Ventures Corp. and GIE C2B (collectively, "Assignees"):

    (i)    all actions, claims, rights, remedies, demands, or lawsuits, known or

          unknown, accrued or unaccrued, of any nature whatsoever, that

ECB USA, Inc. et al. v. Constantin Associates, LLP, et al.
Assignment of Chubb Claims

Assignor has, or may have, directly or indirectly, against any insurance carrier, including, but not limited to, Chubb Insurance Company of New Jersey ("Chubb"), and, as applicable, any of Chubb's affiliates, divisions, or reinsurers, arising from, or in any way related to, the failure or refusal to provide Assignor with insurance coverage, a defense or indemnification, or to otherwise acknowledge and accept responsibility under any insurance policy through which Assignor is an insured for any of the claims against Assignor in the above-styled action (the "Action"), including for any judgment entered in the Action;

(ii)     all proceeds and rights to proceeds of the foregoing; and

(iii)    all rights to enforce, and to collect upon, the foregoing along with all other rights (collectively, i, ii, and iii are referred to as the "Transferred Rights"). This Assignment shall be deemed an absolute and unconditional assignment of the Transferred Rights for all lawful purposes.

The term "Assignor" in this Assignment includes all parents, subsidiaries, and affiliates of Assignor ("Affiliates") that have or may have rights pursuant to, through or under Chubb Professional Portfolio insurance policy number 8168-4190 and/or any other insurance policies that cover Assignor or any of its Affiliates.

Assignor represents and warrants that: (a) it has full power and authority and has taken all action necessary to execute and deliver this Assignment and to fulfill its obligations hereunder and to consummate the transactions contemplated hereby on behalf of itself and its Affiliates; (b) the making and performance by

ECB USA, Inc. et al. v. Constantin Associates, LLP, et al.
Assignment of Chubb Claims

Assignor of this Assignment does not and will not violate any law or regulation of the jurisdiction under which it exists or is authorized to conduct business, any other law applicable to Assignor, or any other agreement to which Assignor is a party or by which Assignor is or may be bound; (c) this Assignment has been duly and validly authorized, executed and delivered by Assignor and is legal, valid, binding and enforceable against Assignor in accordance with its terms; and (d) no consent, approval, filing, or corporate, partnership or other action of Assignor or any Affiliate is required as a condition to, or in connection with, the execution, delivery, and performance of this Assignment and the transactions contemplated herein.

Neither Assignor, nor any of its Affiliates, shall compromise or settle the Transferred Rights or take any action to diminish the value of the Transferred Rights in any manner. In performing any of the obligations hereunder, Assignor and Assignees hereby covenant and agree to act reasonably at all times and to maximize the amount of recovery by Assignees on any claim, and to minimize the amount of time in which all components of the Transferred Rights are quantified and paid.

Assignor agrees to promptly forward to Assignees all notices received from Chubb or any third party with respect to the Transferred Rights. Assignor further agrees that if Assignor or its Affiliates receive any distributions, payments, or proceeds from Chubb (or on its behalf or of any Affiliate) pertaining to the Transferred Rights, whether in the form of cash, credits, instruments or any other property, the aforementioned shall constitute property of the Assignees to which the Assignees have the sole and exclusive right. Assignor shall hold such property

ECB USA, Inc. et al. v. Constantin Associates, LLP, et al.
Assignment of Chubb Claims

in trust and, within five (5) business days of receipt, will, at its own expense, deliver to Assignees any such property in the same form received, together with any endorsements or documents necessary to transfer such property to Assignees.

Assignor hereby acknowledges that Assignees may at any time reassign any or all of the Transferred Rights, together with all right, title and interest of Assignees in and to this Assignment.

All representations, warranties, covenants and agreements contained herein shall survive the execution and delivery of this Assignment and any reassignment, and shall inure to the benefit of Assignor, Assignees and the respective successors and assigns of any party hereto; provided, however, that the obligations of Assignor and Assignees contained herein shall continue and remain in full force and effect until fully paid, performed and/or satisfied.

Dated this 24 day of _October_ 2019.

ASSIGNOR: CONSTANTIN ASSOCIATES, LLP

By: _____
       DANIEL P. NAGLE, U.S. MANAGING DIRECTOR

The undersigned hereby acknowledge and accept the foregoing Assignment.

ASSIGNEES:

ECB USA Inc.

By:_____

Claude Blandin, President
Name and position

4

ECB USA, Inc. et al. v. Constantin Associates, LLP, et al.
Assignment of Chubb Claims

in trust and, within five (5) business days of receipt, will, at its own expense, deliver to Assignees any such property in the same form received, together with any endorsements or documents necessary to transfer such property to Assignees.

Assignor hereby acknowledges that Assignees may at any time reassign any or all of the Transferred Rights, together with all right, title and interest of Assignees in and to this Assignment.

All representations, warranties, covenants and agreements contained herein shall survive the execution and delivery of this Assignment and any reassignment, and shall inure to the benefit of Assignor, Assignees and the respective successors and assigns of any party hereto; provided, however, that the obligations of Assignor and Assignees contained herein shall continue and remain in full force and effect until fully paid, performed and/or satisfied.

Dated this _____ day of _____ 2019.

ASSIGNOR: CONSTANTIN ASSOCIATES, LLP


By: _____
    DANIEL P. NAGLE, U.S. MANAGING DIRECTOR


The undersigned hereby acknowledge and accept the foregoing Assignment.

ASSIGNEES:

ECB USA Inc.

By: _____
    Claude Blandin, President
Name and position

4

ECB USA, Inc. et al. v. Constantin Associates, LLP, et al.
Assignment of Chubb Claims

Atlantic Ventures Corp.

By: _____

Claude Blandin, President
Name and position

G.I.E. C2B

By: _____

Bruno Blandin, President
Name and position

# EXHIBIT "B"

**CHUBB·** Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*[SM]
*General Terms and Conditions*

---

GTC DECLARATIONS

**CHUBB INSURANCE COMPANY OF NEW JERSEY**
A stock insurance company, incorporated under the laws
of New Jersey, herein called the Company

202B Hall's Mill Road
Whitehouse Station, NJ 08889

**Policy Number:**       8168-4190

**NOTICE: THE "CLAIMS MADE LIABILITY COVERAGE PARTS" PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY APPLICABLE EXTENDED REPORTING PERIOD.   THE MEDIAGUARD OCCURRENCE COVERAGE PART PROVIDES OCCURRENCE COVERAGE, WHICH APPLIES TO "CLAIMS" MADE AT ANY TIME THAT ARISE FROM "WRONGFUL ACTS" OCCURRING DURING THE "POLICY PERIOD".**

**THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS MAY BE REDUCED OR COMPLETELY EXHAUSTED BY "DEFENSE COSTS" AND "SUBPOENA DEFENSE COSTS", AND "DEFENSE COSTS" AND "SUBPOENA DEFENSE COSTS" WILL BE APPLIED AGAINST THE APPLICABLE RETENTION.  IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS", "SUBPOENA DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.  READ THE ENTIRE POLICY CAREFULLY.**

| | | |
|---|---|---|
| **Item 1.** | **Parent Organization:** | Control Associates/Constantin Group LP D/B/A Constantin Control Associates LP |
| | Principal Address: | 4400 Route 9 South |
| | | Suite 1000 |
| | | Freehold, NJ 07728 |
| **Item 2.** | **Policy Period:** | |
| | (A)  From: | December 12, 2017 |
| | (B)  To: | December 12, 2018 |
| | At 12:01 AM local time at the address shown in Item 1. | |
| **Item 3.** | **Combined Maximum Aggregate Limit of Liability:** | |

The Combined Maximum Aggregate Limit of Liability for all **Claims** under all **Liability Coverage Parts** shall be: $5,000,000.00

**Item 4.** **Coverage applicable to this Policy:**

[X]  Miscellaneous Professional and Technology Services Liability Coverage Part
    (for Professional Service Firms)

[ ]  Technology Products and Services Liability Coverage Part
    (for Technology Companies)

CHUBB°  **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*[SM]
*General Terms and Conditions*

☐ MediaGuard Claims Made Liability Coverage Part

☐ MediaGuard Occurrence Liability Coverage Part

☐ CyberSecurity Coverage Part

**Item 5.** **Extended Reporting Period:**

    (A) Additional Period:      1 year

    (B) Additional Premium:    100 % of Annual Premium

In witness whereof, the Company issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

**CHUBB INSURANCE COMPANY OF NEW JERSEY**

_____
Secretary

_____
President

_____
December 21, 2017
Date

_____
Authorized Representative

CHUBB®  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*<sup>SM</sup>
*General Terms and Conditions*

---

**In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this Policy, the Company and the Insureds agree as follows:**

---

### I.   TERMS AND CONDITIONS

Except for these General Terms and Conditions or unless stated to the contrary in any Coverage Part, the terms and conditions of each Coverage Part apply only to that Coverage Part.  If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part.  All references to "Section", "Subsection", "Paragraph" or "Subparagraph" in these General Terms and Conditions shall apply only to these General Terms and Conditions, unless otherwise stated.  All references to "Section", "Subsection", "Paragraph" or "Subparagraph" in a Coverage Part, shall apply only to such Coverage Part, unless otherwise stated.

---

### II.   DEFINITIONS

**Claim** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Claims Made Liability Coverage Part** means all **Liability Coverage Parts**, except the MediaGuard Occurrence Liability Coverage Part.

**Covered Subpoena** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Defense Costs** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Expense** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Insured** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Insured Person** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Liability Coverage Part** means:

(A)   the Miscellaneous Professional and Technology Services Liability Coverage Part, Technology Products and Services Liability Coverage Part, MediaGuard Claims Made Liability Coverage Part, and MediaGuard Occurrence Liability Coverage Part; and

(B)   Insuring Clauses (A), Cyber Liability Coverage and (B), Privacy Regulatory Action Coverage, of the CyberSecurity Coverage Part,

if purchased as set forth in Item 4, Coverage applicable to this Policy, of the GTC Declarations.

**Loss** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Managing Partner** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Non-Liability Coverage Part** means Insuring Clauses (C), Privacy Notification and Crisis Management Expenses Coverage; (D), Reward Expenses Coverage; and (E), Additional Expenses Coverage, of the CyberSecurity Coverage Part, if purchased as set forth in Item 4, Coverage applicable to this Policy, of the GTC Declarations.

**Organization** means the **Parent Organization** and any **Subsidiary**. **Organization** shall also mean any such entity as a debtor in possession under United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

**Parent Organization** means the entity named in Item 1 of the GTC Declarations.

CHUBB'  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*<sup>SM</sup>
*General Terms and Conditions*

**Policy Period** means the period of time set forth in Item 2 of the GTC Declarations, subject to any prior termination in accordance with Section IX, Termination of Policy.

**Production** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Related Claims** means all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

**Related Expenses** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Subpoena Defense Costs** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Subsidiary** means:

(A)    any entity while more than fifty percent (50%) of the outstanding securities representing the present right to vote for election of or to appoint directors, trustees, managers, members of the Board of Managers or equivalent positions of such entity are owned, or controlled, by the **Parent Organization**, directly or through one or more **Subsidiaries**;

(B)    any entity formed as a partnership while more than fifty percent (50%) of the ownership interests representing the present right to vote for election of or to appoint the management or executive committee members or equivalent positions of such entity are owned, or controlled, by the **Parent Organization**, directly or through one or more **Subsidiaries**; or

(C)    any entity while:

    (1)    exactly fifty percent (50%) of the voting rights representing the present right to vote for election of or to appoint directors, trustees, managers, members of the Board of Managers or equivalent positions of such entity are owned, or controlled, by the **Parent Organization**, directly or through one or more **Subsidiaries**; and

    (2)    the **Parent Organization**, pursuant to a written contract with the owners of the remaining and outstanding voting stock of such entity, solely controls the management and operation of such entity.

**Wrongful Act** shall have the meaning ascribed to that term in each applicable Coverage Part.

---

**III.    LIMIT OF LIABILITY**

(A)    With respect to the **Liability Coverage Parts**:

    (1)    The Company's maximum aggregate limit of liability for all **Loss** and all **Subpoena Defense Costs** during each **Policy Period** under all **Liability Coverage Parts** of this Policy, combined, shall be the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations.  However, any **Loss** or **Subpoena Defense Costs** paid under any **Liability Coverage Part** shall not exceed the Maximum Aggregate Limit of Liability set forth in Item 2 of the Declarations of such Coverage Part.

    (2)    **Defense Costs** and **Subpoena Defense Costs** are part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the Declarations of each **Liability Coverage Part** and payment by the Company of **Defense Costs** and **Subpoena Defense Costs** shall reduce and may exhaust such Limits of Liability.

(B)    With respect to any **Non-Liability Coverage Part**, the Company's maximum liability shall be the Limits of Liability set forth in the Declarations applicable to such **Non-Liability Coverage Part**.

CHUBB'  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*[SM]
*General Terms and Conditions*

---

(C)   If the **Policy Period** is less than or greater than one year, then the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations and any applicable Limit of Liability in any Coverage Part shall apply to the entire **Policy Period**.

## IV.   RELATED CLAIMS AND RELATED EXPENSES

(A)   With respect to the **Claims Made Liability Coverage Parts**, all **Related Claims** shall be deemed a single **Claim** made in the **Policy Period** in which the earliest of such **Related Claims** was first made or first deemed to have been made in accordance with the Reporting section of the applicable Coverage Part (the "Earliest Related Claim"). All **Related Claims** shall be subject to the same Retention and Limits of Liability applicable to the Earliest Related Claim.

(B)   With respect to the **Non-Liability Coverage Parts**, all **Related Expenses** shall be deemed a single **Expense** incurred or discovered, as applicable, in the **Policy Period** in which the earliest of such **Related Expenses** is incurred or discovered (the "Earliest Related Expenses").  All **Related Expenses** shall be subject to the same Retention and Limits of Liability applicable to the Earliest Related Expense.

(C)   With respect to the **Claims Made Liability Coverage Parts** and **Non-Liability Coverage Parts**, if any **Claims** and **Expenses** are based upon, arising from or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events, then all such **Claims** and **Expenses** shall be deemed made, incurred or discovered, as applicable, in the earliest of the following:

   (1)   the **Policy Period** in which the earliest of such **Claims** is first made or deemed to have been made; or

   (2)   the **Policy Period** in which the earliest of such **Expenses** is deemed to have been incurred or discovered,

   and shall be subject to the applicable Retentions and Limits of Liability of such **Policy Period**.

(D)   With respect to the MediaGuard Occurrence Liability Coverage Part, all **Related Claims** shall be deemed a single **Claim**.  All **Related Claims** shall be subject to the same Retention and Limits of Liability.

---

## V.   EXTENDED REPORTING PERIOD

With respect to the **Claims Made Liability Coverage Parts**:

(A)   If this Policy does not renew or otherwise terminates for a reason other than for failure to pay premium (each a "Termination of Coverage"), then an **Insured** shall have the right to purchase an Extended Reporting Period for the Additional Period and Additional Premium set forth in Item 5 of the GTC Declarations.

(B)   In the event of a Termination of Coverage and upon request from an **Insured**, the Company shall, in its sole discretion, provide a quote for Additional Periods other than as set forth in Item 5, Extended Reporting Period, of the GTC Declarations.  Any such additional quote offered shall be subject to such Additional Premium as the Company may require.

(C)   The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew.

---

CONFIDENTIAL

CHUBB'   Chubb Group of Insurance Companies          *Chubb Professional Portfolio*<sup>SM</sup>
          202B Hall's Mill Road                               *General Terms and Conditions*
          Whitehouse Station, NJ 08889

(D)   This right to purchase an Extended Reporting Period shall lapse unless written notice of election to purchase the Extended Reporting Period, together with payment of the applicable Additional Premium, is received by the Company within sixty (60) days after the effective date of the Termination of Coverage.

(E)   If an Extended Reporting Period is purchased, then coverage otherwise afforded by this Policy shall be extended to apply to **Claims**: (1) first made during such Extended Reporting Period; and (2) reported to the Company pursuant to the Reporting section of the applicable Coverage Part, but only to the extent such **Claims** are for **Wrongful Acts** before the effective date of such Termination of Coverage or the date of any conversion of coverage described in Section VI, Changes in Exposure, whichever is earlier.  Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the **Policy Period** immediately preceding the Extended Reporting Period.

(F)   The entire premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period.

(G)   The limit of liability for the Extended Reporting Period is part of and not in addition to the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations.

---

**VI.   CHANGES IN EXPOSURE**

(A)   **Acquisition of Another Organization**

   (1)   If before or during the **Policy Period** an **Organization** acquires voting rights in another entity such that the acquired entity becomes a **Subsidiary**,

   (2)   then coverage shall be provided for such **Subsidiary** and its **Insureds** with respect to any:

      (a)   **Liability Coverage Part**, solely for **Claims** for **Wrongful Acts** after such acquisition; or

      (b)   **Non-Liability Coverage Part**, solely after the effective date of such acquisition subject to Section XII, Liability for Prior Losses, of the CyberSecurity Coverage Part.

(B)   **Cessation of Subsidiaries**

   (1)   If before or during the **Policy Period** an **Organization** ceases to be a **Subsidiary**,

   (2)   then with respect to any:

      (a)   **Liability Coverage Part**, coverage for such **Subsidiary** and its **Insureds** shall continue until termination of this Policy in accordance with Section VI(C), Conversion of Coverage Under Certain Circumstances, or Section IX, Termination of Policy, whichever occurs first, but only for **Claims** for **Wrongful Acts** while such **Organization** was a **Subsidiary**; or

      (b)   **Non-Liability Coverage Part**, such **Subsidiary** and its **Insureds** shall cease to be **Insureds** as of the effective date of such cessation and coverage under this Policy shall apply as provided in such **Non-Liability Coverage Part**.

(C)   **Conversion of Coverage Under Certain Circumstances**

   (1)   If during the **Policy Period** any of the following events occur:

      (a)   another entity, person or group of entities or persons acting in concert, acquires more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of or to appoint directors, trustees, members of the Board of Managers or management committee members of the **Parent Organization**;

CHUBB®    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*SM
*General Terms and Conditions*

   (b)   another entity, person or group of entities or persons acting in concert, acquires the right to vote for the election of or to appoint the **Managing Partner** or the majority of management or executive committee members of the **Parent Organization**, if the **Parent Organization** is a partnership;

   (c)   the acquisition of all or substantially all of the **Parent Organization's** assets, by another entity, person or group of entities or persons acting in concert, or the merger of the **Parent Organization** into or with another entity such that the **Parent Organization** is not the surviving entity; or

   (d)   the **Parent Organization** emerges from bankruptcy as of the effective date stated in the plan of reorganization,

(2)   then:

   (a)   any applicable coverage under this Policy with respect to:

      (i)   any **Liability Coverage Part**, shall continue until the expiration of the current **Policy Period**, solely for **Claims** for **Wrongful Acts** prior to such event; or

      (ii)   any **Non-Liability Coverage Part**, shall continue until the expiration of the current **Policy Period**, solely for **Expense** first incurred or discovered, if applicable, prior to such event;

   (b)   the **Parent Organization** shall give written notice of such event to the Company as soon as practicable together with such information as the Company may require; and

   (c)   the entire premium for this Policy shall be deemed fully earned as of the effective date of such event.

## VII.  SPOUSES, DOMESTIC PARTNERS, ESTATES AND LEGAL REPRESENTATIVES

With respect to the **Liability Coverage Parts**, coverage under this Policy shall extend to **Claims** for **Wrongful Acts** of an **Insured Person** made against:

(A)   the lawful spouse or domestic partner of such **Insured Person** solely by reason of such spouse or domestic partner's status as a spouse or domestic partner, or such spouse or domestic partner's ownership interest in property which the claimant seeks as recovery for an alleged **Wrongful Act** of such **Insured Person**; or

(B)   the estate, heirs, legal representatives or assigns of such **Insured Person** if such **Insured Person** is deceased, or the legal representatives or assigns of such **Insured Person** if such **Insured Person** is legally incompetent, insolvent or bankrupt,

provided that no coverage afforded by this Section VII shall apply with respect to any loss arising from an act, error or omission by an **Insured Person's** spouse, domestic partner, estate, heirs, legal representatives or assigns.

## VIII.  NOTICE

(A)   Notice to the Company of any **Claim**, **Expense**, or circumstances under any Coverage Part shall be deemed notice under the Policy in its entirety.

(B)   All notices to the Company under this Policy of any **Claim**, **Covered Subpoena**, **Expense**, or circumstances under any Coverage Part shall be given in writing to one of the following addresses:

CONFIDENTIAL

CHUBB· Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*<sup>SM</sup>
*General Terms and Conditions*

    (1)    specialtyclaims@chubb.com; or

    (2)    Attn: Claims Department
         Chubb Group of Insurance Companies
         82 Hopmeadow St.
         Simsbury, CT 06070-7683

(C)    All other notices to the Company under this Policy shall be given in writing addressed to:

         Attn: Chubb Underwriting Department
         Chubb Group of Insurance Companies
         202B Hall's Mill Road
         Whitehouse Station, NJ 08889

(D)    Any notice described above shall be effective on the date of receipt by the Company.

## IX.    TERMINATION OF POLICY

(A)    This Policy shall terminate at the earliest of the following times:

    (1)    upon receipt by the Company of written notice of termination from the **Parent Organization**, provided that:

        (a)    this Policy may not be terminated by the **Parent Organization** after the effective date of any event described in Section VI(C), Conversion of Coverage Under Certain Circumstances; and

        (b)    the MediaGuard Occurrence Liability Coverage Part may not be terminated by the **Parent Organization** after the first publication or broadcast of any stand alone **Production** (if a single, stand alone **Production** is insured only), in which case the portion of the premium for the MediaGuard Occurrence Liability Coverage Part shall become fully earned;

    (2)    upon expiration of the **Policy Period** set forth in Item 2 of the GTC Declarations;

    (3)    twenty (20) days after receipt by the **Parent Organization** of a written notice of termination from the Company based upon nonpayment of premium, unless the premium is paid within such twenty (20) day period; or

    (4)    at such other time as may be agreed upon by the Company and the **Parent Organization**.

(B)    Except as stated in subparagraph (A)(1)(b) above, the Company shall refund the unearned premium computed at customary short rates if this Policy is terminated by the **Parent Organization**. Under any other circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

## X.    BANKRUPTCY

Bankruptcy or insolvency of an **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this Policy.

## XI.    COORDINATION OF COVERAGE

(A)    If **Loss** on account of any **Claim** is covered under more than one **Liability Coverage Part**, such **Loss** shall be first covered under the MediaGuard Occurrence Liability Coverage Part, if applicable, subject to

CHUBB° Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*[SM]
*General Terms and Conditions*

its terms, conditions and limitations. Any remaining portion of such **Loss** which is not paid under the MediaGuard Occurrence Liability Coverage Part shall then be covered under the CyberSecurity Coverage Part, if applicable, subject to its terms, conditions and limitations. Any remaining portion of such **Loss** otherwise covered under any other applicable **Liability Coverage Part** which is not paid under the MediaGuard Occurrence Liability or CyberSecurity Coverage Parts shall be covered under such other **Liability Coverage Part**, subject to the terms, conditions and limitations of such **Liability Coverage Part**.

(B)   If **Loss** on account of any **Claim** is covered under the MediaGuard Occurrence Liability Coverage Part and any other **Liability Coverage Part**, and if the **Insured** elects to retain the duty to defend such **Claim** pursuant to Section VII, Defense and Settlement of Claims, Subpoenas and Retraction Demands, of the MediaGuard Occurrence Liability Coverage Part, then the terms of such Section VII as well as the terms of Section VIII(A), Allocation, of the MediaGuard Occurrence Liability Coverage Part shall apply to such **Claim**.

## XII.   VALUATION AND FOREIGN CURRENCY

All premiums, limits, retentions, loss and other amounts under this Policy are expressed and payable in the currency of the United States of America. Except as otherwise provided in this Policy, if a judgment is rendered, a settlement is denominated or any element of loss under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the rate of exchange published in *The Wall Street Journal* on the date the judgment becomes final, the amount of the settlement is agreed upon or any element of loss is due, respectively.

## XIII.   ACTION AGAINST THE COMPANY

No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or entity shall have any right under this Policy to join the Company as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

## XIV.   ROLE OF PARENT ORGANIZATION

By acceptance of this Policy, the **Parent Organization** agrees that it shall be considered the sole agent of, and shall act on behalf of, each **Insured** with respect to: (A) the payment of premiums and the receiving of any return premiums that may become due under this Policy; (B) the negotiation, agreement to and acceptance of endorsements; and (C) the giving or receiving of any notice provided for in this Policy (except the giving of notice to apply for an Extended Reporting Period as provided in Section V, Extended Reporting Period, and the giving of notice of **Claim**, **Covered Subpoena**, **Expense**, or circumstances as provided in the Reporting section of the applicable Coverage Part). Each **Insured** agrees that the **Parent Organization** shall act on its behalf with respect to all such matters.

## XV.   ALTERATION AND ASSIGNMENT

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written endorsement to this Policy which is signed by an authorized representative of Chubb, a division of Federal Insurance Company.

CHUBB° Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*[SM]
*General Terms and Conditions*

XVI.   **TERRITORY**

This Policy shall apply anywhere in the world.

XVII.   **HEADINGS**

The descriptions in the headings and subheadings of this Policy are solely for convenience and form no part of the terms and conditions of coverage.

XVIII.   **COMPLIANCE WITH TRADE SANCTIONS**

This insurance does not apply to the extent that trade or economic sanctions or other similar laws or regulations prohibit the Company from providing insurance.

# Schedule of Forms

To be attached to and form part of
Policy No.   8168-4190

Company:   Chubb Insurance Company of New Jersey

Issued to:   Control Associates/Constantin Group LP D/B/A Constantin Control Associates LP


Chubb Professional Portfolio General Terms and Conditions CICNJ

14-02-20867 (6/15 ed.)

Chubb Professional Portfolio Miscellaneous Professional and Technology Services Liability Coverage Part CICNJ

14-02-20951 (6/15 ed.)

14-02-22100 (7/16 ed.)

C-ASSOCIATES (INS.) 000011

CONFIDENTIAL

C-ASSOCIATES (INS.) 000012

**ENDORSEMENT/RIDER**

Coverage Section: Chubb Professional Portfolio General Terms and Conditions CICNJ

Effective date of
this endorsement/rider: December 12, 2017          Chubb Insurance Company of New Jersey

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8168-4190

Issued to:  Control Associates/Constantin Group LP D/B/A Constantin Control Associates LP

NEW JERSEY AMENDATORY ENDORSEMENT TO THE GENERAL TERMS AND CONDITIONS

In consideration of the premium charged, it is agreed that:

1.  Section V., Extended Reporting Period, is deleted and replaced with the following:

With respect to the **Liability Coverage Parts**: if the Company or the **Parent Organization** terminates or does not renew this Policy, for any reason, then the **Insured** shall have the right to purchase an Extended Reporting Period for the twelve (12) month period beginning on the effective date of the termination or non-renewal of this Policy. The premium for this Extended Reporting Period shall be the amount set forth in Item 5 of the GTC Declarations.

This right to purchase an Extended Reporting Period shall lapse unless written notice of election to purchase the Extended Reporting Period, together with payment of the additional premium due is received by the Company within thirty (30) days following the effective date of the termination or non-renewal of this Policy.

If the Extended Reporting Period is purchased, then coverage otherwise afforded by this Endorsement will be extended to apply to **Claims** first made during such Extended Reporting Period and reported in accordance with this Endorsement, but only for **Wrongful Acts** occurring or allegedly occurring before the effective date of termination or nonrenewal. The entire additional premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period. Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding **Policy Year**. The Limit of Liability for the Extended Reporting Period shall be part of and not in addition to the applicable Limits of Liability for the immediately preceding **Policy Year**.

If money is owed to the Company under this Policy, then such Extended Reporting Period will not become effective until all amounts due under this Policy are paid and the premium for the Extended Reporting Period is paid when due.  Any premium paid for the Extended Reporting Period will be applied first to amounts owed under this Policy.

2.  Subparagraph (A)(3) of Section IX, Termination of Policy, is amended by deleting the word "or" at the end of such paragraph and adding the following thereafter:

provided that such notice of termination by the Company shall be delivered or mailed by first class mail (if the Company retains a date stamped proof of mailing from the post office showing the addressee) or

certified mail to the **Parent Organization** at its last address known to the Company and shall clearly state the effect of nonpayment by the due date; or

3.  Subsection (A) of Section IX, Termination of Policy, is amended by adding the following to the end of such subsection:

    provided that, non-renewal by the Company is effective if the Company mails or delivers, by first class mail (if the Company retains a date stamped proof of mailing from the post office showing the addressee) or certified mail, between thirty (30) and one hundred and twenty (120) days' advance written notice of non-renewal to the **Parent Organization** at its last known address. Such non-renewal will be based on underwriting guidelines that are not arbitrary, capricious or unfairly discriminatory and the notice of non-renewal will state the reason(s) for non-renewal. If the Company does not provide the notice within the time period specified in this paragraph, this Policy will be extended until such notice is provided, with such extension conditioned upon the payment of premium calculated by pro-rating the premium for the expiring **Policy Period**; or

4.  Any notice of non-renewal by the Company will contain a provision in bold type stating that the **Parent Organization** may file a written complaint on the decision to non-renew with the New Jersey Department of Insurance.  The Department's address will be included and the **Parent Organization** will be advised to immediately contact the Insurance Department in the event it wishes to file a complaint.

    The Company has no obligation to send notice of termination or non-renewal if the **Parent Organization** has:

        (1)    replaced coverage elsewhere; or

        (2)    specifically requested termination.

    The Company may increase the premium or change the terms and conditions of this Policy upon renewal by delivering or mailing written notice of such changes to the **Parent Organization** between thirty (30) and one hundred and twenty (120) days before the premium due date.  Such notice will state the effect of nonpayment of the premium by the due date.

The Policy will be deemed to have been amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the State of New Jersey.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

CHUBB° **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*[SM]
*Miscellaneous Professional and Technology*
*Services Liability Coverage Part*

---

MPTS DECLARATIONS

**CHUBB INSURANCE COMPANY OF NEW JERSEY**
A stock insurance company, incorporated under the laws
of New Jersey, herein called the Company

202B Hall's Mill Road
Whitehouse Station, NJ 08889

NOTICE: THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY APPLICABLE EXTENDED REPORTING PERIOD.

THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS MAY BE REDUCED OR COMPLETELY EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.  READ THE ENTIRE POLICY CAREFULLY.

**Item 1.**  **Parent Organization:**   Control Associates/Constantin Group LP D/B/A Constantin Control Associates LP

**Item 2.**  **Maximum Aggregate Limit of Liability for this Coverage Part:**   $5,000,000.00

**Item 3.**  **Retention:**   $50,000.00 each **Claim**

**Item 4.**  **Retroactive Date:**   August 02, 2002

**Item 5.**  **Professional Services:**
Computer Consulting including computer system architecture and design
Temporary Placement Agency Services and Management consulting
Management consulting services meaning services directed toward expertise in banking finance, accounting, risk and systems analysis, design and implementation, asset recovery and strategy planning for financial institutions.

CONFIDENTIAL                                                                 C-ASSOCIATES (INS.) 000015

CONFIDENTIAL

CHUBB  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*<sup>SM</sup>
*Miscellaneous Professional and Technology*
*Services Liability Coverage Part*

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Part, the Company and the Insureds agree as follows:

## I.   INSURING CLAUSE

**Miscellaneous Professional and Technology Services Liability Coverage**

The Company shall pay, on behalf of an **Insured**, **Loss** on account of a **Claim** first made against the **Insured** during the **Policy Period**, or the Extended Reporting Period if applicable, for a **Wrongful Act** on or after the Retroactive Date set forth in Item 4 of the MPTS Declarations.

## II.   DEFINITIONS

For purposes of this Coverage Part:

**Application** means:

(A)   any portion of an application given to the Company for this Policy, including any attachments, written information and materials provided to the Company by or on behalf of an **Insured** for the purposes of the Company's underwriting of this Coverage Part; and

(B)   any warranty provided to the Company within the past three years in connection with any coverage part or policy of which this Coverage Part is a renewal or replacement.

**Claim** means any:

(A)   written demand first received by an **Insured** for monetary or non-monetary relief, including injunctive relief;

(B)   civil proceeding commenced by the service of a complaint or a similar pleading; or

(C)   arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document,

against an **Insured** for a **Wrongful Act**, including any appeal therefrom; or

(D)   written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** described in Subsections (A) through (C) above.

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of **Insured Persons**) incurred in investigating, defending, opposing or appealing any **Claim** and the premium for appeal, attachment or similar bonds.

**Employee** means any natural person whose labor or service is, was or will be engaged and directed by an **Organization** including a part-time, seasonal, leased or temporary employee, intern or volunteer. **Employee** shall not include any independent contractor.

**Environmental Agents** means any:

(A)   bacteria;

(B)   mildew, mold, or other fungi;

(C)   other microorganisms;

CONFIDENTIAL                                                                                          C-ASSOCIATES (INS.) 000017

CHUBB' Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*[SM]
*Miscellaneous Professional and Technology*
*Services Liability Coverage Part*

(D)  mycotoxins, spores, or other by-products of Subsections (A), (B) or (C) above;

(E)  viruses or other pathogens (whether or not a microorganism); or

(F)  colony or group of any of the foregoing.

**ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, and the Health Insurance Portability and Accountability Act of 1996), as amended; any similar provisions of any statutory or common law anywhere in the world; or any rule or regulation promulgated under any such Act or law.

**Executive** means any natural person who is, was or will be:

(A)  a duly elected or appointed director, officer, member of the Advisory Board or in-house general counsel of any **Organization** incorporated in the United States of America;

(B)  a duly elected or appointed: (1) manager or member of the Board of Managers or equivalent position; (2) member of the Advisory Board; or (3) in-house general counsel, of any **Organization** formed as a limited liability company in the United States of America;

(C)  a partner of any **Organization** formed as a partnership in the United States of America; or

(D)  a holder of an equivalent position to those described in Subsections (A) through (C) above in any **Organization** incorporated, formed or organized anywhere in the world.

**First Inception Date** means the inception date of the first claims made policy or coverage part insuring miscellaneous errors and omissions issued by the Company and continually renewed by the Company until the inception date of this current Policy and of which this Policy is a direct renewal or replacement.

**Insured** means any **Organization** and any **Insured Person**.

**Insured Person** means any **Executive** or **Employee** of an **Organization** acting in his or her capacity as such.

**Liquidated Damages** means a sum of money stipulated by the parties to a contract as the amount of damages to be recovered for a breach of such contract.

**Loss** means the amount which an **Insured** becomes legally obligated to pay as a result of any **Claim**, including:

(A)  compensatory damages;

(B)  punitive, exemplary, or multiplied damages, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the **Insured**, the Company, or to the **Claim** giving rise to such damages;

(C)  judgments, including pre-judgment and post-judgment interest;

(D)  settlements; and

(E)  **Defense Costs**,

provided that **Loss** does not include any portion of such amount that constitutes any:

(1)  cost of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief;

(2)  amount uninsurable under the law pursuant to which this Coverage Part is construed;

(3)  tax, fine or penalty imposed by law against an **Insured**; except as provided in Subsection (B) above with respect to punitive, exemplary or multiplied damages;

C-ASSOCIATES (INS.) 000018

CHUBB' Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*[SM]
*Miscellaneous Professional and Technology*
*Services Liability Coverage Part*

---

(4) amount incurred by an **Insured** in the defense or investigation of any action, proceeding or demand that was not then a **Claim** even if (a) such amount also benefits the defense of a covered **Claim**; or (b) such action, proceeding or demand subsequently gives rise to a **Claim**;

(5) **Liquidated Damages**;

(6) consideration owed or paid in connection with any **Insured's** goods, products or services, including any royalties, restitution, reduction, disgorgement or return of any payment, charges or fees;

(7) cost of correcting, re-performing or completing any **Professional Services**, or any costs to satisfy any warranty or other obligation assumed by or on behalf of an **Insured** in connection with any **Professional Services**; or

(8) cost incurred in cleaning-up, removing, containing, treating, detoxifying, neutralizing, assessing the effects of, testing for, or monitoring **Pollutants**.

**Managing Partner** means any natural person who is chosen or appointed to manage or direct any **Organization** that is formed as a partnership; provided that if no such individual exists, **Managing Partner** means each and every member of the management or executive committee (or similar body responsible for management) of any **Organization** that is formed as a partnership.

**Personal Injury** means:

(A) libel, slander, product disparagement, trade libel or other form of defamation;

(B) invasion or infringement of the right of privacy or publicity, including false light, public disclosure of private facts, intrusion and commercial appropriation of name, persona or likeness;

(C) false arrest, detention or imprisonment; or

(D) wrongful entry or eviction, or other invasion of the right of private occupancy.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, asbestos, asbestos products or waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**Professional Services** means:

(A) services which are performed by or on behalf of an **Insured** for others for a fee and set forth in Item 5 of the MPTS Declarations; and

(B) **Technology Services**.

**Securities Laws** means the Securities Act of 1933, Securities Exchange Act of 1934, Investment Advisors Act of 1940, the Investment Company Act of 1940, any state "blue sky" securities law, or any other federal, state, local securities law anywhere in the world or any amendments thereto or any rules or regulations promulgated thereunder or any other provision of statutory or common law used to impose liability in connection with the offer to sell or purchase, or the sale or purchase of securities.

**Technology Product** means any:

(A) communication, computer, data security, electronic, information, Internet, network or website:

    (1) equipment or parts; or

    (2) programs or systems; and

(B) software, data or other information in electronic form.

CHUBB' Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*[SM]
*Miscellaneous Professional and Technology*
*Services Liability Coverage Part*

**Technology Services** means the following services performed by or on behalf of an **Insured** for others for a fee in connection with any **Technology Product**:

(A)     technology consulting services;

(B)     information systems or network analysis, design, programming or integration;

(C)     software design, distribution, servicing, installation and maintenance;

(D)     website design, programming or maintenance;

(E)     training; and

(F)     database design and the caching, collecting, compiling, processing, mining, recording or analysis of data.

**Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect, breach of duty or **Personal Injury** committed, attempted, or allegedly committed or attempted solely in the performance of or failure to perform **Professional Services**.

## III.    EXCLUSIONS

The Company shall not be liable for **Loss** on account of any **Claim**:

(A)     <u>Prior Notice</u>
based upon, arising from or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2(A), Policy Period, of the GTC Declarations, was the subject of any notice accepted under any policy or coverage part of which this Coverage Part is a direct or indirect renewal or replacement;

(B)     <u>Pending or Prior Proceedings</u>
based upon, arising from or in consequence of any written demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the inception date set forth in Item 2(A), Policy Period, of the GTC Declarations, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(C)     <u>Bodily Injury or Property Damage</u>
for bodily injury, mental anguish, humiliation, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed, provided that this Exclusion (C) shall not apply to **Loss** for any mental anguish, humiliation or emotional distress resulting from **Personal Injury**;

(D)     <u>Pollution</u>
based upon, arising from or in consequence of any:

(1)     discharge, emission, release, dispersal or escape of any **Pollutants** or any threat thereof;

(2)     treatment, removal or disposal of any **Pollutants**; or

(3)     regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**;

(E)     <u>ERISA</u>
based upon, arising from or in consequence of any violation of the responsibilities, obligations or duties imposed by **ERISA** with respect to employee, pension or welfare benefit plans or programs operated or sponsored by an **Organization**, or an entity which owns or controls an **Organization**, for the benefit of **Insured Persons**;

(F)     <u>Employment Practices</u>

CHUBB'  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*<sup>SM</sup>
*Miscellaneous Professional and Technology
Services Liability Coverage Part*

brought by or on behalf of any past, present or prospective employee, based upon, arising from or in consequence of any employment relationship or the nature, terms or conditions of employment, including claims of workplace torts, wrongful termination, dismissal or discharge, or any employment-related discrimination, harassment, breach of contract, or defamation;

(G)     Contract
for any liability of an **Insured** under any oral or written contract or agreement, provided that this Exclusion (G) shall not apply to **Loss** to the extent that an **Insured** would have been liable in the absence of such contract or agreement;

(H)     Prior Knowledge
based upon, arising from or in consequence of any **Wrongful Act** first committed before the **First Inception Date**, if, on or before such date, any **Insured** knew or could have reasonably foreseen that such **Wrongful Act** did or could result in a **Claim** against any **Insured**, provided that this Exclusion (H) shall only apply if coverage is afforded for **Wrongful Acts** first committed before the **First Inception Date**, as such coverage is determined by the Retroactive Date set forth in Item 4 of the MPTS Declarations;

(I)     Environmental Agents
based upon, arising from or in consequence of any:

(1)     **Environmental Agents**;

(2)     request, demand, order or regulatory or statutory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any **Environmental Agents**; or

(3)     action or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of any **Environmental Agents**;

(J)     Insured v. Insured
brought or maintained by or on behalf of any **Insured**;

(K)     Professional Services for Insureds and Affiliates
based upon, arising from or in consequence of the performance of or failure to perform **Professional Services** for any:

(1)     **Insured**;

(2)     entity which is owned or controlled by, or is under common ownership or control with, any **Insured**;

(3)     natural person or entity which owns or controls any entity included within the definition of **Insured**; or

(4)     entity of which any **Insured** is a director, officer, partner or principal shareholder, a manager or member of the Board of Managers, or a member of the Advisory Board;

(L)     Securities
based upon, arising from or in consequence of any violation of **Securities Laws**;

(M)     Antitrust or Unfair Trade Practices
based upon, arising from or in consequence of price fixing, restraint of trade, monopolization, interference with economic relations (including interference with contractual relations or with prospective advantage), unfair competition, unfair business or unfair trade practices, or any violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other federal statutory provision

CHUBB'  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*[SM]
*Miscellaneous Professional and Technology*
*Services Liability Coverage Part*

involving anti-trust, monopoly, price fixing, price discrimination, predatory pricing, restraint of trade, unfair competition, unfair business or unfair trade practices, and any amendments thereto or any rules or regulations promulgated thereunder or in connection with such statutes; or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

(N)   Intellectual Property
based upon, arising from or in consequence of any infringement of copyright, patent, trademark, trade name, trade dress or service mark; any misappropriation of ideas, trade secrets or other intellectual property rights; any false patent marking; or any violation of a federal, state, local or foreign intellectual property law, or a rule or regulation promulgated under such intellectual property law;

(O)   Unsolicited Communications
based upon, arising from or in consequence of any violation of:

(1)   the United States of America CAN-SPAM Act of 2003 or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

(2)   the United States of America Telephone Consumer Protection Act (TCPA) of 1991 or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world; or

(3)   any other law, ordinance, regulation or statute used to impose liability in connection with any unsolicited communication, distribution, publication, sending or transmission;

(P)   Governmental, Regulatory or Administrative Entity
brought or maintained by or on behalf of any governmental or quasi-governmental entity, regulatory or administrative agency or authority; provided that this Exclusion (P) shall not apply to **Loss** if such entity, agency or authority brings the **Claim** solely in its capacity as the client or customer of any **Insured** for **Professional Services**;

(Q)   Fees, Charges or Cost Over-runs
solely involving any **Insured's** fees, charges or cost over-runs;

(R)   Guaranty of Costs or Value
based upon, arising from or in consequence of any guaranty, promise or warranty, either express or implied, whether oral or written, with respect to:

(1)   any costs or cost savings; or

(2)   the future value of any real, personal or intellectual property;

(S)   Investment Performance
based upon, arising from or in consequence of any **Insured's** advice about, promise or guarantee of the future performance or value of investments, or rate of return or interest; or any **Loss** resulting from fluctuation in the value of any investment; or any failure of investments to perform as expected or desired;

(T)   Disappearance of Money and Commingling
for any loss of money or securities owned or held by any **Insured**, or for which any **Insured** is legally liable, due to disappearance, theft, injury or damage thereto; or any improper use or commingling of any funds or monies;

(U)   Maintenance of Licenses
based upon, arising from or in consequence of any decision by any **Insured**:

(1)   not to effect, maintain, procure or secure; or

CHUBB'   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*<sup>SM</sup>
*Miscellaneous Professional and Technology
Services Liability Coverage Part*

(2)     to cancel, let lapse, modify, not renew, revoke, suspend or otherwise impair,

in whole or in part at any time, any lease, license, order, permit or other contract for any **Technology Product** that any **Insured** is obligated to effect, maintain, procure or secure;

(V)     <u>Delay in Delivery or Performance</u>
based upon, arising from, in consequence of any delay in delivery of or failure to deliver any **Technology Product** or delay in performance of, or failure to begin any analysis, design, programming, integration, installation, maintenance, repair or support services in connection with any **Technology Product**;

(W)     <u>Ceasing Support</u>
based upon, arising from or in consequence of any decision by any **Insured**:

(1)     not to provide or support; or

(2)     to cease to provide or support,

in whole or in part at any time, any **Technology Product** that any **Insured** is obligated to provide or support;

(X)     <u>Adjustment, Inspection, Recall, Repair or Replacement</u>
for any adjustment, disposal, inspection, recall, removal, repair, replacement or withdrawal of any:

(1)     **Technology Product**; or

(2)     property containing or incorporating any **Technology Product** designed, programmed, integrated, distributed, installed, maintained, repaired or serviced by or on behalf of an **Insured**,

regardless of whether any such adjustment, disposal, inspection, recall, removal, repair, replacement or withdrawal is performed by any **Insured** or others;

(Y)     <u>Third Party Product Failures or Defects</u>
based upon, arising from or in consequence of any defect in any product manufactured, created or installed by any person or entity other than an **Insured**, provided that this Exclusion (Y) shall not apply if such person or entity manufactured, created or installed such product while performing **Professional Services**: (1) on behalf of or at the direction of the **Insured**; and (2) in accordance with a written contract or agreement with the **Insured**;

(Z)     <u>False Advertising</u>
based upon, arising from or in consequence of false advertising, misrepresentation in advertising, or any unfair or deceptive trade practices, with respect to the advertising or sale of any **Insured's** own goods, products, publications or services; or any inaccurate, inadequate or incomplete description of the price of goods, products or services disseminated by, on behalf of, or with the consent of any **Insured**, or any failure of such goods, products or services to conform with advertised quality or performance;

(AA)     <u>Unauthorized Network Access and Unlawful Collection</u>
based upon, arising from or in consequence of any:

(1)     unauthorized or exceeded authorized access to, use of or alteration of, any computer program, software, computer, computer system or any input, output, processing, storage and communication devices that can be connected thereto; or

(2)     unauthorized or unlawful collection, use or dissemination of Internet user information;

(BB)     <u>Nuclear</u>

CHUBB'   Chubb Group of Insurance Companies
        202B Hall's Mill Road
        Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*<sup>SM</sup>
**Miscellaneous Professional and Technology**
**Services Liability Coverage Part**

based upon, arising from or in consequence of any radioactive, toxic, explosive or other hazardous properties of any nuclear material, nuclear assembly, or nuclear component thereof; or

(CC)   Conduct
       based upon, arising from or in consequence of:

    (1)   any deliberately fraudulent act or omission, or any willful violation of any statute or regulation, by an **Insured**, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding brought by or against the Company) establishes such an act or omission or violation; or

    (2)   an **Insured** having gained any profit, remuneration or other advantage to which such **Insured** was not legally entitled, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding brought by or against the Company) establishes the gaining of such profit, remuneration or advantage,

provided that:

    (a)   no conduct pertaining to any **Insured Person** shall be imputed to any other **Insured Person**; and

    (b)   any conduct pertaining to any past, present, or future chief financial officer, chief executive officer, chief operating officer, in-house general counsel, manager of the Board of Managers (or any equivalent position to any of the foregoing), or **Managing Partner** of an **Organization** shall be imputed to such **Organization** and its **Subsidiaries**.

---

**IV.   REPORTING**

(A)   An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company written notice of any **Claim** as soon as practicable after the chief executive officer, president, chief financial officer, chief information officer, in-house general counsel, risk manager, **Managing Partner**, or any natural person with the responsibility for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**, but in no event later than:

    (1)   if this Coverage Part expires (or is otherwise terminated) without being renewed with the Company, ninety (90) days after the effective date of such expiration or termination; or

    (2)   the expiration of the Extended Reporting Period, if applicable,

provided that if the Company sends written notice to the **Parent Organization**, stating that this Coverage Part is being terminated for nonpayment of premium, an **Insured** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

(B)   If during the **Policy Period**, or any applicable Extended Reporting Period, an **Insured** becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company, then any **Claim** subsequently arising from such circumstances shall be deemed made against the **Insured** during the **Policy Period** in which such circumstances were first reported to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than ninety (90) days after the chief executive officer, president, chief financial officer, chief information officer, in-house general counsel, risk manager, **Managing Partner**, or any natural person with the responsibility for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**.

(C)   An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company such information, assistance and cooperation as the Company may reasonably require and shall include in any notice under Subsections (A) or (B) above a description of the **Claim** or

CHUBB® Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*[SM]
*Miscellaneous Professional and Technology*
*Services Liability Coverage Part*

circumstances, the nature of the alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of the actual or potential claimants, and the manner in which such **Insured** first became aware of the **Claim**, circumstances or alleged **Wrongful Act**.

## V.   RETENTION

(A)   The Company's liability under this Coverage Part shall apply only to that part of covered **Loss** on account of each **Claim** which is excess of the applicable Retention set forth in Item 3 of the MPTS Declarations, and such Retention shall be borne by the **Insureds** uninsured and at their own risk.  In the event that any **Insured** is unwilling or unable to bear the Retention, it shall be the obligation of the **Parent Organization** to bear such Retention uninsured and at its own risk.

(B)   If different parts of a single **Claim** are subject to different Retentions in different Coverage Parts, the applicable Retentions will be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(C)   **Claims** shall be subject to the Retention applicable to the **Policy Period** during which such **Claims** are first made or deemed to have been made.

## VI.   DEFENSE AND SETTLEMENT

(A)   The Company shall have the right and duty to defend any **Claim** covered by this Coverage Part. Coverage shall apply even if any of the allegations are groundless, false or fraudulent.  The Company's duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability.

(B)   The Company may make any investigation it deems necessary and may, with the consent of the **Insureds**, make any settlement of any **Claim** it deems appropriate.

(C)   No **Insured** shall settle any **Claim**, incur any **Defense Costs**, or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's written consent, which shall not be unreasonably withheld.  The Company shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented.

(D)   The Company shall have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** after the Company's Maximum Aggregate Limit of Liability set forth in Item 2 of the MPTS Declarations or the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations has been exhausted by the payment of **Loss** and the applicable premium shall be deemed fully earned.

(E)   The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company reasonably requests and agrees to do nothing that may prejudice the Company's position or its potential or actual rights of recovery.

(F)   The Company shall not seek repayment from an **Insured Person** of any **Defense Costs** paid by the Company that are deemed uninsured pursuant to Exclusion III(CC), Conduct, unless the applicable determination standard (whether a final, non-appealable adjudication or other determination standard) set forth in such Exclusion has been met.

## VII.   ALLOCATION



Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*<sup>SM</sup>
*Miscellaneous Professional and Technology*
*Services Liability Coverage Part*

If the **Insureds** who are afforded coverage for a **Claim** incur an amount consisting of both **Loss** that is covered by this Coverage Part and also loss that is not covered by this Coverage Part because such **Claim** includes both covered and uncovered matters, then coverage shall apply as follows:

(A)    **Defense Costs**: one hundred percent (100%) of **Defense Costs** incurred by such **Insured** on account of such **Claim** shall be considered covered **Loss**, provided that the foregoing shall not apply with respect to any **Insured** for whom coverage is excluded pursuant to Subsection X(C), Representations and Severability. Such **Defense Costs** shall be allocated between covered **Loss** and non-covered loss based on the relative legal exposures of the parties to such matters; and

(B)    loss other than **Defense Costs**: all remaining loss incurred by such **Insured** from such **Claim** shall be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

---

## VIII.  OTHER INSURANCE

If any **Loss** under this Coverage Part is insured under any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by this Coverage Part), this Coverage Part shall be excess of and shall not contribute with such other insurance, regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

---

## IX.  SUBROGATION

(A)    In the event of any payment under this Coverage Part, the Company shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery. As a condition precedent to the Company's payment under this Coverage Part, the **Insureds** agree to execute all papers required and shall take all reasonable actions to secure and preserve such rights, including the execution of such documents necessary to enable the Company to effectively bring suit or otherwise pursue subrogation rights in the name of the **Insureds**.

(B)    It is understood and agreed that the Company shall have no rights of subrogation against any **Insured** under this Coverage Part and that an **Organization** may, on behalf of the Company, waive the Company's subrogation rights against any third party under this Coverage Part, provided that such waiver of subrogation is executed in writing prior to any **Wrongful Act**.

---

## X.  REPRESENTATIONS AND SEVERABILITY

(A)    In granting coverage to the **Insureds** under this Coverage Part, the Company has relied upon the declarations and statements in the **Application** for this Coverage Part. Such declarations and statements are the basis of the coverage under this Coverage Part and shall be considered as incorporated in and constituting part of this Coverage Part.

(B)    The **Application** for coverage shall be construed as a separate **Application** for coverage by each **Insured Person**. With respect to the declarations and statements in such **Application**, no knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**.

(C)    However, in the event that such **Application** contains any misrepresentations made with the actual intent to deceive or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Company under this Coverage Part, then no coverage shall be afforded for any **Claim** based upon, arising from or in consequence of any such misrepresentations with respect to:

CHUBB' Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Chubb Professional Portfolio*[SM]
*Miscellaneous Professional and Technology*
*Services Liability Coverage Part*

    (1)    any **Insured Person** who knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations); or

    (2)    any **Organization** if any past or present chief financial officer, chief executive officer, in-house general counsel, manager of the Board of Managers (or any equivalent position to any of the foregoing), or **Managing Partner** of the **Parent Organization** knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations).

(D)    The Company shall not be entitled under any circumstances to void or rescind this Coverage Part with respect to any **Insured**.

CONFIDENTIAL

C-ASSOCIATES (INS.) 000028

**ENDORSEMENT/RIDER**

Coverage Section:  Chubb Professional Portfolio Miscellaneous Professional and Technology Services Liability Coverage Part CICNJ

Effective date of
this endorsement/rider: December 12, 2017

Chubb Insurance Company of New Jersey

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8168-4190

Issued to:  Control Associates/Constantin Group LP D/B/A Constantin Control Associates LP

---

AMENDED BODILY INJURY OR PROPERTY DAMAGE EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that Section III Exclusion (C) Bodily Injury or Property Damage in this Coverage Part is deleted and replaced with the following:

(C)  <u>Bodily Injury or Property Damage</u>
     based upon, arising from or in consequence of bodily injury, mental anguish, humiliation, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed, provided that this Exclusion (C) shall not apply to **Loss** for any mental anguish, humiliation or emotional distress resulting from **Personal Injury**;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

14-02-20951 (06/2015)                     Page 1

CONFIDENTIAL

C-ASSOCIATES (INS.) 000029

CONFIDENTIAL

**ENDORSEMENT/RIDER**

Coverage Section: Chubb Professional Portfolio Miscellaneous Professional and Technology Services Liability Coverage Part CICNJ

Effective date of
this endorsement/rider: December 12, 2017

Chubb Insurance Company of New Jersey

Endorsement/Rider No. 2

To be attached to and
form a part of Policy No. 8168-4190

Issued to:  Control Associates/Constantin Group LP D/B/A Constantin Control Associates LP

---

### FEDERAL FALSE CLAIMS ACT EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that the Company shall not be liable under this Coverage Part for **Loss** on account of any **Claim** based upon, arising from or in consequence of any violation of the responsibilities, obligations or duties imposed by the Federal False Claims Act or any similar federal, state, or local statutory law or common law anywhere in the world, or amendments to or regulations promulgated under any such law.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

CONFIDENTIAL

C-ASSOCIATES (INS.) 000032

NOTICE TO POLICYHOLDERS

Insuring Company: Chubb Insurance Company of New Jersey

Enclosed is your commercial insurance policy from Chubb. The bill that corresponds with this policy has been mailed separately. When you receive the bill, please pay the amount due by the date indicated. Payment should be made directly to Chubb. As always, prompt payment will keep your coverage in place.

If you have any questions about the attached policy or need assistance with additional insurance, contact your agent or broker. For questions about billing, call our Premium Accounting Service Center at 1-800-372-4822. Thank you for insuring through Chubb.

C-ASSOCIATES (INS.) 000033

CONFIDENTIAL

C-ASSOCIATES (INS.) 000034

# POLICYHOLDER
# DISCLOSURE NOTICE OF
# TERRORISM INSURANCE COVERAGE
### (for policies with no terrorism exclusion or sublimit)
### Insuring Company: Chubb Insurance Company of New Jersey

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), this policy makes available to you insurance for losses arising out of certain acts of terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States pays 85% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. Beginning in 2016, the Federal share will be reduced by 1% per year until it reaches 80%, where it will remain.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-**.

If you have any questions about this notice, please contact your agent or broker.

10-02-1281 (Ed. 03/2015)
CONFIDENTIAL

C-ASSOCIATES (INS.) 000036

# *INSURED'S COPY*

```
Control Associates/Constantin Group LP
/B/A Constantin Control Associates L
4400 Route 9 South
Suite 1000
Freehold, NJ   07728
```

**Producer Information:**
```
ATTN: Annie Valderrama
NEBCO INSURANCE SERVICES, LLC
5 GREENWICH OFFICE PARK
GREENWICH, CT   068310000
```

**PRODUCT:** CBPROPRT

**POLICY NO:** 000081684190

**TRANSACTION:** RENEWAL

C-ASSOCIATES (INS.) 000037

Control Associates/Constantin Group LP
/B/A Constantin Control Associates L
4400 Route 9 South
Suite 1000
Freehold, NJ  07728

CONFIDENTIAL

C-ASSOCIATES (INS.) 000038

# EXHIBIT "C"

Filing # 76850697 E-Filed 08/22/2018 04:57:00 PM

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.

ECB USA, INC., a Florida corporation,

     Plaintiff,

vs.

CONSTANTIN ASSOCIATES, LLP, a New
York limited liability partnership; and
BERTRAND PROUST, an individual,

     Defendants.

_____/

## COMPLAINT

Plaintiff, ECB USA, INC. ("ECB"), by and through its undersigned counsel, sues Defendants, CONSTANTIN ASSOCIATES, LLP ("Constantin"), and BERTRAND PROUST ("Proust"), and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff, ECB is a Florida corporation doing business in Miami-Dade County, Florida.

2.    At all relevant times, ECB was, directly or indirectly, a majority shareholder of Schratter Foods Incorporated, a Delaware corporation doing business as a specialty food wholesaler and distributor in Miami-Dade County, Florida ("SFI").

3.    Defendant, Constantin, is a New York limited liability partnership doing business in Miami-Dade County, Florida.

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                                    Case No.
Page 2

4.     Constantin is part of a network of entities that comprise the international accounting and consulting firm known as "Constantin" and/or "Constantin - Serval & Associates."

5.     At all relevant times, Constantin was engaged by SFI to audit its financial statements.

6.     Defendant, Proust is an individual over the age of eighteen, a resident of Broward County, Florida, and otherwise sui juris.

7.     At all relevant times, Proust was the Chief Financial Officer ("CFO") of SFI and one of the main internal auditors of SFI that worked with and/or on behalf of Constantin in auditing SFI's financial statements.

8.     This is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of interest, costs, and attorney's fees.

9.     Jurisdiction is proper with respect to Constantin because Constantin provided professional services for SFI in Miami-Dade County, Florida, under an engagement letter executed in Miami-Dade County, Florida, which services were intended for the benefit of ECB.

10.     Jurisdiction is proper with respect to Proust because, at all relevant times, Proust was a resident of Broward County, Florida, and served as CFO for SFI in Miami-Dade County, Florida.

11.     Venue is proper in Miami-Dade County pursuant to Sections 47.011, and 47.051, Florida Statutes, because Constantin's audits and Proust's activities took place in Miami-Dade County, Constantin conducts business continually in Miami-Dade County,

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                                    Case No.
Page 3

and the harm to ECB from Constantin's and Proust's wrongful actions occurred in Miami-Dade County, Florida.

12.    All conditions precedent to bringing this action have been performed, satisfied, excused, or waived.

## FACTUAL ALLEGATIONS

### Introduction

13.    Accounting audits can only be done by independent, certified, public accountants, who act as guardians of the integrity and truthfulness of the financial reporting of the audited company in order to protect its shareholders, creditors, investors, employees, other stakeholders, and the company itself, as required by law.

14.    Constantin failed in its protective watchdog duty because it allowed impermissible conflicts of interests and its own financial gain to compromise the independence and objectivity that are the foundation of any professional audit. The result was catastrophic.

15.    Founded in 1993 and operating as a wholly-owned subsidiary of the French group of companies known as Savencia Fromage & Dairy ("Savencia/ZNHC"), SFI was a food supply company that both manufactured and distributed various food products.

16.    SFI's financial performance remained stable from 2010 to 2013.

17.    In 2014, SFI was purchased by ECB and Voss Enterprises, Inc. ("VEI"), a New York corporation owned by Alain Voss.[1]

18.    Constantin – Serval & Associates utilizes its various subsidiaries, divisions, and/or affiliates to "allow compliance with the International Federation of Accountants

---

[1] ECB and VEI later assigned their equity in SFI to a new entity called Atlantic Ventures, Corp., owned by ECB and VEI in the same proportions as their prior direct ownership of SFI.

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                                    Case No.
Page 4

"IFAC" Code of Ethics and other major national codes of ethics and professional rules and standards of conduct."[2]

19.     Since 2010, Constantin has been auditing the financial statements of SFI.

20.     The objective of such audits, as stated in Constantin's own engagement letter, is "the expression of an opinion about whether [SFI's] financial statements are fairly presented, in all material respects, in conformity with the U.S. generally accepted accounting principles ("US GAAP")." *See* Constantin 2017 Engagement Letter, a true and correct copy of which is attached hereto as Exhibit "1."

21.     More specifically, the audit is undertaken to obtain:

reasonable assurance about whether the financial statements are free of material misstatement, whether from (1) errors, (2) fraudulent financial reporting, (3) misappropriation of assets, or (4) violation of laws or governmental regulations that are attributable to the entity or to acts by management or employees acting on behalf of the entity.

*Id.*

22.     These audits were performed in close cooperation with SFI's management, and particularly with Proust who, in his capacity as CFO, provided Constantin with the financial and accounting information they needed to perform their audits.

23.     Because of the evaluative role of an auditing firm, it is essential that the auditing firm, and even more specifically the members of the audit team, be completely independent from the entity that is being audited; otherwise, the transparency and objectivity that are essential to the value of any audit will be compromised.

---

[2] *See* Constantin, ORGANIZATION, http://www.constantin.com/US/EN/pages/organization (last visited July 30, 2018).

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                    Case No.
Page 5

24.     Constantin did not perform its audits of SFI independently; instead, it relied heavily on the involvement of Proust who was, at the same time, a member of the audit team as well as an employee of SFI.

25.     Proust would then utilize his position of influence with both SFI and Constantin to assume, with Constantin's improper acquiescence, the roles and duties of Constantin, without alerting ECB or the principals of SFI of the potential conflicts of interests or of the financial problems facing SFI.

26.     Constantin also failed to notify ECB or the principals of SFI of the potential conflicts of interest of Proust acting as an internal auditor or of the serious financial problems facing SFI.

27.     ECB and the users of its financial statements depended on its gatekeeper, Constantin, to ensure that those financial statements were both: (a) fairly presented in accordance with US GAAP; and (b) free of material misstatement due to error or fraud.

### Constantin was not Independent

28.     Constantin did not act as a watchdog. Instead, Constantin assisted in the misstatements, mishandling, and deceptive self-dealing of Proust, and certified the materially misstated financial statements of SFI.

29.     Rather than conducting independent reviews of the information received by Proust in order to uncover and disclose misstatements and/or irregularities in the SFI financial statements, Constantin corroborated and/or accepted such misstatements as provided by Proust at face value.

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                    Case No.
Page 6

30.     Constantin, in direct contravention of its duties and obligations, "rubber-stamped" Proust's acts, decisions, recommendations, and representations, improperly delegating its review functions to Proust himself.

31.     Constantin lacked the independence required by professional ethics, auditing standards and all applicable laws and regulations that govern it. Because Constantin lacked independence, Constantin could not even issue its audit opinions, perform reviews, or audit the internal financial controls of SFI. Constantin's audits and reviews thus failed as a matter of law.

### Constantin Was Grossly Negligent

32.     Even apart from Constantin's lack of independence, Constantin still performed grossly negligent audits and reviews. Because Constantin violated basic audit and review requirements, Constantin failed to detect material errors in SFI's financial statements, including but not limited to, the underreporting of expenses and the overreporting of revenues to increase the profitability of SFI before the 2014 acquisition by ECB.

33.     Constantin's audit and review failures highlight Constantin's gross negligence, and its calamitous effects, including the subsequent insolvency of SFI and the resulting losses and damages to ECB.

34.     In May 2017, Proust was dismissed from SFI for sexual harassment.[3] After Proust's departure from SFI, when he no longer had access or control to SFI' finances

---

[3] Proust subsequently filed a lawsuit against SFI, baselessly alleging that he was fired because the new principals of SFI asked him to "cook" the books and that he refused. In fact, no such request was ever made to Proust and he was terminated for sexual harassment.

and reporting, the operational margin of SFI suddenly dropped by 6 percentage points with no explanation.

35.    ECB retained the accounting firm Deloitte Touche Tohmatsu Limited ("Deloitte") to help reconcile SFI' figures in an attempt to understand why SFI's profit margins suddenly dropped by 6 percentage points. Deloitte's representatives advised they had rarely seen such a "mess."

36.    Proust, prior to becoming SFI' CFO, had been employed by Constantin where he had been reviewing SFI's accounts for years.

37.    Proust had been closely involved in the preparation of a business plan that Savencia/ZNHC, as seller of SFI, included in the information provided to ECB in connection with the sale of SFI to ECB. This business plan was a highly material component of the sale and was heavily relied upon by ECB because it not only contained financial projections, but also detailed financial and market analyses, with disclosure of objectives, known threats and risks, opportunities, and other specific data.

38.    Proust, having assisted in the preparation of the business plan and in the purchase negotiations for SFI, knew that omitted, exaggerated, understated, false, unsubstantiated, and misleading information would be – and was – relied upon by ECB in its decision to ultimately purchase of SFI.

39.    After the acquisition of SFI by ECB, Proust received a "pay for stay" bonus from Savencia/ZNHC.

40.    Following Proust's termination from SFI, various conflicts became evident to ECB: (a) Constantin had not properly performed its duties as auditors of SFI; (b) Constantin improperly and, despite clear and significant conflicts, acted as the auditors

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                    Case No.
Page 8

for VEI, a 45 percent shareholder of the parent company of SFI, which was owned by the President and CEO of SFI at all times material to Constantin's audits; (c) Proust improperly assumed the duties of Constantin and reported information to ECB in a manner that concealed his own self-interested transactions, which caused significant losses to SFI and ECB; and (d) Proust and Constantin failed to properly act in the best interests of SFI.

41.    In 2016, while Proust retained control and authority over SFI, Constantin sent only three accountants over a two-week period to audit the accounts of SFI, a 250-million-dollar business. This audit activity reflects severely inadequate attention to Constantin's obligations and a complete abdication of Constantin's watchdog function. Conversely, in 2017, after the termination of Proust, Constantin's former colleague, Constantin posed hundreds of questions to the new CFO and his team. Many of the questions posed by Constantin sought basic information that Constantin should have already possessed in light of its prior work performed for SFI.

42.    In addition, Constantin was late in reviewing SFI's 2017 accounts and issued an unintelligible report dated December 22, 2017 that referred to information exchanged with SFI by mail in January 2018, acts that could not have possibly taken place at the time the report was generated.

### The Agreement

43.    The engagement letter (the "Agreement") between SFI and Constantin set forth the audit services Constantin would perform for SFI. *See* Exhibit "1."

44.    Pursuant to the Agreement signed each year, Constantin prepared audit opinions of SFI' financial statements each year from 2010 to 2017.

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                                    Case No.
Page 9

45.     In each of these years, Constantin certified that SFI' financial statements presented fairly, in all material respects, the financial condition of SFI, and that SFI's financial statements were in conformance with US GAAP.

46.     Constantin's certification was false, and Constantin was grossly negligent in auditing SFI. Constantin was not independent, in clear violation of auditing standards and the ethical rules governing auditors, and therefore Constantin could not even audit or review SFI' financial statements or audit SFI' internal controls. Even if Constantin had been independent, Constantin still was grossly negligent in its audits and reviews of SFI' financial statements and its audit of SFI' internal controls because it took as true, without even a cursory investigation into, the information provided to it by Proust.

47.     As SFI' auditor, Constantin knew that Proust was one of the officers of SFI and that, therefore, he owed fiduciary duties to SFI and its owners.

48.     Constantin also knew that Proust was in breach of his fiduciary duties because Constantin knew that Proust was an employee of SFI, and Constantin should have had procedures in place to ensure that any audit team member is free from conflicts of interest or any sort of connection with the audited entity that would compromise the objectivity of the audit.

49.     Despite Constantin's certification that SFI' financial statements presented fairly, in all material respects, the financial condition of SFI, the financial statements were not prepared in accordance with US GAAP and were materially misstated.

50.     Specifically, the financial statements audited and reviewed by Constantin:

a.      failed to appropriately and accurately account for certain supplier allowances, billbacks or discounts, thus artificially increasing revenues;

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                    Case No.
Page 10

      b.     failed to appropriately and accurately recognize sales at the correct time, reporting as "sold" goods still in inventory and not yet delivered or accepted by the customers, thus artificially increasing revenues;

      c.     failed to appropriately and accurately account for brokers' commissions, which would be either underreported or not reported at all, thus artificially reducing expenses;

      d.     failed to appropriately and accurately book certain items of expenses related to marketing and promotions for the Savencia group in general that would be assumed by the prior owners of SFI in the 2014 stock purchase transaction with ECB and VEI, thus leaving ECB with the understanding that a large item of expense would disappear from SFI's financial statements upon their purchase of SFI's stock.

51.    Moreover, Constantin also was required to perform audits of the effectiveness of SFI's internal control over financial reporting. In connection with these audits, Constantin was required to audit SFI's assessment of the effectiveness of its internal controls over financial reporting and identify any significant deficiencies and material weaknesses in control. Instead, Constantin entrusted Proust with the responsibility for all auditing, reviewing, and reporting functions and trusted and accepted Proust's self-interested, inaccurate, deceptive, and false reports.

52.    Constantin therefore knew, and aided and abetted, Proust in maintaining material weaknesses and significant deficiencies in SFI's system of internal control over financial reporting during at least seven years, which included, but were not limited to, the following:

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                                Case No.
Page 11

    a.      failure to provide financial statements accurately representing the financial condition of SFI in all material aspects;

    b.      failure to identify flaws in SFI's system of internal control;

    c.      failure to identify an irreconcilable conflict of interest in Proust's work as CFO of SFI and as "independent" internal auditor;

    d.      failure to effectively and objectively test, verify, and evaluate SFI's financial statements.

53.    Each of the above deficiencies was the result of Constantin's knowing and substantial assistance and encouragement to Proust in breaching his fiduciary duties.

54.    Constantin, therefore, aided and abetted Proust's breaches of fiduciary duties and is responsible for the damages resulting from those breaches.

55.    Upon discovering the falsity of Constantin's audited financial statements, ECB became aware, for the first time, that SFI was insolvent and that its financial condition had been misrepresented, rendering it unable to: (a) continue to do business; (b) continue its financing relationships; (c) secure new financing; (d) meet its various obligations; and (e) secure new business opportunities; thus destroying the value of ECB's asset and investments.

56.    In the case of SFI, Constantin knew or should have known that US GAAP compliant financial statements were a covenant requirement of the SFI loan agreements, and that a failure to present SFI's lenders with US GAAP compliant financial statements would, among other things, result in a default on the lines of credit on which SFI relied to conduct its business, thus causing irreparable harm to SFI. This is precisely what occurred.

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                    Case No.
Page 12

57.     The harm to ECB resulting from materially misstated financial statements should have been foreseeable to Constantin at all times for which Constantin was a financial auditor for SFI.

58.     Within three months of discovering its misrepresented financial condition, SFI filed an assignment for the benefit of creditors in the Miami-Dade County Circuit Court.

**COUNT I**
**PROFESSIONAL LIABILITY**
**(Against Constantin)**

59.     ECB hereby incorporates Paragraphs 1 through 58 of this Complaint as if fully restated herein.

60.     At all relevant times, Constantin owed SFI and ECB a duty of care in performing its professional services.

61.     Constantin is required to perform its services within the scope of professional auditing standards.

62.     Constantin breached its duty to ECB because, inter alia, it was grossly negligent in conducting its audits, quarterly reviews and other reviews of SFI's financial statements and its internal control over financial reporting.

63.     In violation of auditing standards, Constantin repeatedly failed to obtain sufficient audit evidence and repeatedly failed to exercise due professional care in the performance of its audits, quarterly reviews, and other reviews and in the preparation of its reports. Constantin's failures were numerous and far-reaching.

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                    Case No.
Page 13

64.     Constantin failed to exercise due care by providing erroneous advice to ECB, wholly inconsistent with US GAAP, regarding SFI's overreported sales and underreported expenses. ECB justifiably relied on this advice.

65.     Constantin failed to plan its audits and reviews appropriately in light of the inherent risks of the engagement, including, among other things, known self-interest, conflicts and unreliability of the representations and determinations of Proust.

66.     Constantin's acts and omissions as set forth herein demonstrated a complete lack of due care because the audit team frequently failed to consider seriously repeated concerns that would, and should, have been evident had a proper and independent audit been performed as required.

67.     In addition, Constantin lacked independence as required. Constantin's assigned auditors had little or no control over the conclusions and decisions reached by Proust, merely accepting his reporting rather than engaging in independent inquiry and review.

68.     As a direct and proximate result of Constantin's breaches, ECB has sustained and will continue to sustain severe and extensive damages in an amount to be proven at trial.

WHEREFORE, ECB demands judgment against Constantin for compensatory damages and for such other and further relief as this Court may deem just and proper.

### COUNT II
### NEGLIGENCE PER SE (VIOLATION OF AUDITING STANDARDS)
### (Against Constantin)

69.     ECB hereby incorporates Paragraphs 1 through 58 of this Complaint as if fully restated herein.

70.     Constantin's acts and omissions violated key accounting principles of US GAAP, including, but not limited to:

a.      Financial Accounting Standards Board Accounting Standards Codification ("FASB ASC") 205, presentation of Financial Statements, by failing to accurately and fairly present the financial condition of SFI;

b.      FASB ASC 605, Revenue Recognition, by failing to distinguish and accurately reflect and report the status of SFI's goods. For example, by booking sales and reporting as sold, goods that were actually in transit or subject to returns by SFI's customers;

c.      FASB ASC 606, Revenue from Contracts with Customers, by failing to provide an allowance for returns, bill backs, discounts, damaged goods, etc. when booking revenue which resulted in an inaccurate inflated revenue for SFI;

d.      FASB ASC 705, Cost of Sales, by failing to provide an allowance for returns, bill backs, discounts, damaged goods, etc. when booking expenses incurred in connection with sales which resulted in an inaccurate understated cost of goods sold; and

e.      FASB ASC 720, Other Expenses, and specifically FASB ASC 720-35 Advertising Costs, by inappropriately shifting advertising costs and marketing expenses as more fully detailed in paragraph 50(d), *supra*.

71.     Constantin's acts and omissions, as more detailed *supra*, violated key accounting principles of the International Ethics Standards Board for Accountants' ("IESBA") International Code of Ethics for Professional Accountants ("ICEPA") – compliance with which Constantin specifically advertises to its customers- including, but not limited to:

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                                    Case No.
Page 15

     a.     ICEPA Subsections R112.1 and R112.2 in regard to the failure to maintain the required objectivity;

     b.     ICEPA Subsection R120.6 A3, in regard to the failure to identify threats to objectivity;

     c.     ICEPA Subsection R120.12 A1, in regard to the failure to maintain independence;

     d.     ICEPA Subsection R120.13 A1, in regard to the failure to maintain objectivity during an audit of financial statements;

     e.     ICEPA Subsection R200.6 A1, in regard to the failure to identify threats caused by self-interest in business;

     f.     ICEPA Subsection R210.2, in regard to the failure to identify threats caused by conflicts of interests;

     g.     ICEPA Subsection R210.8 A1 and A2, in regard to the failure to properly disclose existing conflicts of interest and the mandatory requirement to obtain informed consent from the client;

     h.     ICEPA Subsection R220.7 in regard to the failure to properly rely on the work of others after the exercise of professional judgment;

     i.     ICEPA Subsection R240.2 and R240.3 A2 in regard to the failure to avoid situations whereby a professional accountant holds a direct or indirect financial interest that might affect the accountant's decisions;

     j.     ICEPA Subsection R270.3 A2 in regard to the failure to protect from pressure to report misleading financial results;

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                              Case No.
Page 16

   k.  ICEPA Subsection R400 in regard to the failure to maintain independence in the context of audit procedures;

   l.  ICEPA Subsection R 400.31 in regard to the failure to detect threats to independence in the context of audit procedures;

   m.  ICEPA Subsection R400.60 in regard to the failure to provide and maintain appropriate documentation of independence in the context of audit procedures;

   n.  ICEPA Subsection R400.84 in regard to the failure to communicate with the client any breaches of those charged with governance;

   o.  ICEPA Subsection R510.2 in regard to the prohibition against having a financial interest in an audit client;

   p.  ICEPA Subsection R510.4 in regard to the prohibition of specific audit team members from having a financial interest in an audit client;

   q.  ICEPA Subsection R520.1 and R520.2 in regard to the failure to maintain an arm's length relationship with an audit client;

   r.  ICEPA Subsection R522.1 and R522.2 in regard to the prohibition from including anyone in an audit team who has a close relationship with the audit client;

   s.  ICEPA Subsection R522.3 and 522.4 A1 in regard to the failure to mitigate self-interest threats and prohibition from employing a current or former officer of the audit client as a member of the audit team;

   t.  ICEPA Subsection R523.3 in regard to the prohibition of a partner in the audit firm from being employed by the audit client;

   u.  ICEPA Subsection R524.3 A1 in regard to the failure to mitigate intimidation threats from the audit client;

**Marko & Magolnick, P.A.**
3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129

TELEPHONE 305/285-2000                 FACSIMILE 305/285-5555

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                                    Case No.
Page 17

   v.  ICEPA Subsection R524.4 A2 in regard to the failure to mitigate familiarity threats with the audit client;

   w.  ICEPA Subsection R524.5 in regard to the prohibition of audit team members from gaining employment with the audit client;

   x.  ICEPA Subsection R540.2 in regard to the prohibition from maintaining a long term or recurring auditing engagement with the same client;

   y.  ICEPA Subsection R540.3 in regard to the prohibition from specific audit team members maintaining a long term or recurring auditing engagement with the same client;

   z.  ICEPA Subsection R600.7 in regard to the prohibition against assuming a managerial role for the audit client;

   aa.  ICEPA Subsection R600.7 A3 in regard to the failure to refrain from making decisions involving management responsibility for an audit client;

   bb.  ICEPA Subsection R923.3 in regard to the failure of a firm's employee or partner from being employed as a director by the audit client.

 72. Constantin's acts and omissions as set forth herein constitute violations of the auditing requirements set forth in the previous paragraph.

 73. Constantin's acts and omissions constitute negligence per se.

 74. As a direct and proximate result of Constantin's negligence, ECB has sustained and will continue to sustain severe and extensive damages in an amount to be proven at trial.

 WHEREFORE, ECB demands judgment against Constantin for compensatory damages and for such other and further relief as this Court may deem just and proper.

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                                      Case No.
Page 18

## COUNT III
## BREACH OF CONTRACT
### (Against Constantin)

75.     ECB hereby incorporates Paragraphs 1 through 58 of this Complaint as if fully restated herein.

76.     Constantin's acts and omissions as set forth hereinabove constitute a material breach of its contractual obligations under its professional independent auditing Agreement(s) with SFI. *See* Exhibit "1."

77.     ECB is a known and intended third party beneficiary of the Agreement(s).

78.     As a direct and proximate result of Constantin's breaches, ECB has sustained and will continue to sustain severe and extensive damages in an amount to be proven at trial.

WHEREFORE, ECB demands judgment against Constantin for compensatory damages and for such other and further relief as this Court may deem just and proper.

## COUNT IV
## NEGLIGENT ENTRUSTMENT (IMPROPER ASSIGNMENT OF DUTIES)
### (Against Constantin)

79.     ECB hereby incorporates Paragraphs 1 through 58 of this Complaint as if fully restated herein.

80.     Constantin improperly delegated its professional duties and obligations to Proust in derogation of its professional and contractual responsibilities and without the authorization or consent of ECB or the Directors of SFI.

81.     Proust lacked the objectivity, discretion, or disinterest to carry out the functions and responsibilities imposed upon Constantin.

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                    Case No.
Page 19

82.     Constantin knew or reasonably should have known that entrusting its duties to Proust was improper and exposed SFI and ECB to substantial risk of harm.

83.     In entrusting its duties to Proust, Constantin's conduct fell below a reasonable standard of care for a professional and independent auditor.

84.     As a direct and proximate result of Constantin's negligent entrustment, ECB has sustained and will continue to sustain severe and extensive damages in an amount to be proven at trial.

WHEREFORE, ECB demands judgment against Constantin for compensatory damages and for such other and further relief as this Court may deem just and proper. ECB reserves the right, pursuant to Florida Statutes, Section 768.72 and Rule 1.190(f) of the Florida Rules of Civil Procedure, to further amend this claim to seek punitive damages to the extent awardable against Constantin.

### COUNT V
### BREACH OF FIDUCIARY DUTIES
#### (Against Constantin)

85.     Plaintiff hereby incorporates Paragraphs 1 through 58 of this Complaint as if fully restated herein.

86.     The relationship between Constantin and ECB was based on confidentiality and trust, because of the exchange of private company information between the parties.

87.     ECB relied on the knowledge, expertise, and professionalism of Constantin to make commitments to third parties including lenders, shareholders, suppliers, and other stakeholders generally.

88.     ECB was influenced by Constantin to believe that SFI's financial statements were true and correct because of Constantin's role as an "independent" auditor.

89.     Constantin abused its position as fiduciary because it failed to act in the best interest of ECB when Constantin maintained its engagement and continued to collect auditing fees, despite the fact that Constantin knew or should have known that its position as an independent auditor had been compromised.

90.     As a direct and proximate result of Constantin's abuse of its fiduciary position, ECB made commitments it could not have fulfilled and incurred substantial losses when SFI filed an assignment for the benefit of creditors in April 2018.

91.     As a direct and proximate result of Constantin's acts, ECB has sustained and will continue to sustain severe and extensive damages in an amount to be proven at trial.

WHEREFORE, ECB demands judgment against Constantin for compensatory damages and for such other and further relief as this Court may deem just and proper. ECB reserves the right, pursuant to Florida Statutes, Section 768.72 and Rule 1.190(f) of the Florida Rules of Civil Procedure, to further amend this claim to seek punitive damages to the extent awardable against Constantin.

## COUNT VI
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (Against Constantin)

92.     Plaintiff repeats and realleges paragraphs 1 through 58 of this Complaint as though fully set forth herein.

93.     As SFI's auditor, Constantin knew that SFI' directors and officers owed the company a fiduciary duty.

94.     More specifically, Constantin knew or should have known that Proust, as an officer of SFI, owed SFI a duty of care, loyalty, and good faith.

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                                    Case No.
Page 21

95.    Constantin also knew that Proust, by purporting to act as a disinterested auditor, was acting in violation of a variety of accounting and auditing principles, as well as in breach of his fiduciary duties to SFI.

96.    Constantin knowingly provided substantial assistance and encouragement to Proust's breach of his fiduciary duties because it conclusively relied on Proust's representations without conducting any inquiry or verification, thus allowing Proust carte blanche to prepare inaccurate financial statements without the fear of his representations ever being questioned, reviewed, or corrected.

97.    Constantin therefore aided and abetted Proust's breaches of fiduciary duties. As a result, Constantin is jointly responsible with Proust for the damages to ECB resulting from those breaches.

98.    As a direct and proximate result of Constantin's acts, ECB has sustained and will continue to sustain severe and extensive damages in an amount to be proven at trial.

WHEREFORE, ECB demands judgment against Constantin for compensatory damages and for such other and further relief as this Court may deem just and proper.

## COUNT VII
## BREACH OF FIDUCIARY DUTIES
### (Against Proust)

99.    ECB hereby incorporates Paragraphs 1 through 58 of this Complaint as if fully restated herein.

100.    The relationship between Proust and ECB was based on confidentiality and trust, because of the exchange of private company information between the parties.

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                                    Case No.
Page 22

101.   ECB relied on the knowledge, expertise, and professionalism of Proust to make commitments to third parties including lenders, shareholders, suppliers, and other stakeholders generally. As SFI's CFO, Proust's disclosures and interactions with ECB, as owner of SFI, were critical and needed to be complete, honest, fair, and accurate.

102.   ECB trusted Proust that SFI's financial statements were true and correct because of Constantin's role as an independent auditor and that Proust was, at all times, acting in the true and best interests of SFI.

103.   Proust abused his position as a fiduciary because he failed to act in the best interest of ECB by concealing vital financial information, by misrepresenting the financial condition of SFI, by providing false information to Constantin, by representing that accounts had been properly and independently audited when they had not, and by placing his own personal interests and financial gain ahead of that of SFI.

104.   As a direct and proximate result of Proust's abuse of its fiduciary position, ECB made commitments it could not have fulfilled and incurred substantial losses, in an amount to be proven at trial, when SFI filed an assignment for the benefit of creditors in April 2018.

105.   As a direct and proximate result of Proust's breaches, ECB has sustained and will continue to sustain severe and extensive damages in an amount to be proven at trial.

WHEREFORE, ECB demands judgment against Proust for compensatory damages and for such other and further relief as this Court may deem just and proper.

## COUNT VIII
## FRAUD
### (Against Proust)

106.    ECB hereby incorporates Paragraphs 1 through 58 of this Complaint as if fully restated herein.

107.    In his capacity as CFO of SFI, Proust was tasked with preparing a multitude of financial statements and reports regarding SFI's financial position including, without limitation: monthly financial reports issued to Wells Fargo Bank, N.A.; quarterly financial reports distributed to SFI's shareholders, including ECB; and yearly financial statements for the years 2012 to 2016.

108.    By drafting financial statements and reports on behalf of SFI for the benefit of SFI's stakeholders, Proust made specific representations regarding SFI's sales, assets, profitability, creditworthiness, and generally SFI's financial position.

109.    Entries in financial statements used by shareholders, lenders, and other stakeholders to evaluate the financial performance of a corporation are not only material, but essential to perform an accurate assessment of the corporation.

110.    The entries in SFI's financial statements were false, and Proust knew them to be false because he actively contributed in artificially inflating SFI's profitability. Examples of such false entries include, without limitation:

    a.    The overstatement by approximately $211,000 of certain credits owed to SFI by one of its suppliers, Toscana Cheese Company. The overstatement of such credits resulted in the artificial reduction of SFI's expenses and the resulting inflation of SFI's profits.

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                    Case No.
Page 24

  b.  The overstatement by approximately $600,000 of certain credits owed to SFI by one of its suppliers, Alouette Cheese, LLC. The overstatement of such credits resulted in the artificial reduction of SFI's expenses and the resulting inflation of SFI's profits.

  c.  An understatement in excess of $1 Million of certain credits owed by SFI to its customers. The understatement of such credits resulted in the artificial inflation of SFI's revenues and profits.

  111. Proust made those statements knowing that ECB would rely on them as it did; in fact, Proust was a key player in communicating such statements to SFI's shareholders and lending institutions, such as Wells Fargo Bank, N.A.

  112. Proust made those statements with the intent that SFI's stakeholders, including ECB, rely on them.

  113. ECB reasonably relied on Proust's representations because Proust was the CFO of SFI, bound by law to act in the best interest of SFI and its shareholders.

  114. As a direct and proximate result of Proust's fraudulent statements, ECB has sustained and will continue to sustain severe and extensive damages in an amount to be proven at trial.

  WHEREFORE, ECB demands judgment against Proust for compensatory damages and for such other and further relief as this Court may deem just and proper.

### COUNT IX
### NEGLIGENCE
### (Against Proust)

  115. ECB hereby incorporates Paragraphs 1 through 58 of this Complaint as if fully restated herein.

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                    Case No.
Page 25

116.    Because of his role as SFI's CFO, Proust had a duty to act in the best
interests of SFI, as well as a duty to act in a reasonably prudent manner in his executive
role.

117.    By making false entries in the accounting books of SFI and concealing
accurate information from SFI's shareholders and lending institutions, Proust breached
his duty of care.

118.    As a direct and proximate result of Proust's breaches, ECB has sustained
and will continue to sustain severe and extensive damages in an amount to be proven at
trial.

WHEREFORE, ECB demands judgment against Proust for compensatory
damages and for such other and further relief as this Court may deem just and proper.

**COUNT X**
**BREACH OF EMPLOYMENT AGREEMENT**
**(Against Proust)**

119.    ECB hereby incorporates Paragraphs 1 through 58 of this Complaint as if
fully restated herein.

120.    On or about February 13, 2013, Proust executed an employment agreement
with SFI, which agreement set forth the rights and responsibilities of the parties. A true
and correct copy of Proust's employment agreement is attached hereto as Exhibit "2."

121.    ECB, although not directly a party to Proust's employment agreement with
SFI, was an intended beneficiary thereof, because:

a.    Proust knew that his work for SFI would be relied upon by ECB, the
owner of SFI;

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                    Case No.
Page 26

      b.     Proust was in continuous communication with representatives of ECB with respect to the financial condition of SFI;

      c.     Proust would provide opinions as to the profitability and operations of SFI to representatives of ECB; and

      d.     Proust would make investment recommendations to representatives of ECB and represent to them whether they should have contributed additional capital to SFI.

122.   Pursuant to his employment agreement, Proust was required to act in a professional and diligent manner, in addition to being bound by the covenant of good faith and fair dealing implied in any agreement.

123.   Throughout his employment, Proust did not act professionally, diligently or in good faith. In fact, he breached his employment agreement by knowingly reporting inaccurate financial information and by defrauding the public and ECB's shareholders.

124.   As a direct and proximate result of Proust's breaches, ECB has sustained and will continue to sustain severe and extensive damages in an amount to be proven at trial.

WHEREFORE, ECB demands judgment against Proust for compensatory damages and for such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: August 22, 2018

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                    Case No.
Page 27

Respectfully submitted,

**MARKO & MAGOLNICK, P.A.**
Attorneys for Plaintiff
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: (305) 285-2000
Facsimile:   (305) 285-5555

By: /s/Joel S. Magolnick
**Joel S. Magolnick**
Florida Bar No. 776068
Magolnick@mm-pa.com
**Veronica M. Rabinowitz**
Florida Bar No. 99618
Rabinowitz@mm-pa.com
**Davide Proietti**
Florida Bar No. 1002553
Proietti@mm-pa.com

# CONSTANTIN

May 15, 2017

Mr. Arno Leoni,
Chief Executive Officer
Schratter Foods Inc.
11421 NW 107th Street, Suite 1
Miami, Florida 33178

Dear Mr. Leoni:

We are pleased to confirm our understanding of the services we are to provide for
Schratter Foods, Inc., (hereafter referred to as "the Company") for the year ended April 30, 2017

We will audit the financial statements of Schratter Foods, Inc., which comprise the balance sheet as of April
30, 2017, and the related statements of income, retained earnings, and cash flows for the year then ended and
the related notes to the financial statements.

## Audit Objective

The objective of our audit is the expression of an opinion about whether your financial statements are fairly
presented, in all material respects, in conformity with the U.S. generally accepted accounting principles. Our
audit will be conducted in accordance with auditing standards generally accepted in the United States of
America and will include tests of your accounting records and other procedures we consider necessary to
enable us to express such an opinion. We cannot provide assurance that an unmodified opinion will be
expressed. Circumstances may arise in which it is necessary for us to modify our opinion or add an emphasis-
of-matter or other-matter paragraph. If our opinion is other than unmodified, we will discuss the reasons with
you in advance. If, for any reason, we are unable to complete the audit or are unable to form or have not
formed an opinion, we may decline to express an opinion or withdraw from this engagement.

## Audit Procedures

Our procedures will include tests of documentary evidence supporting the transactions recorded in the
accounts, tests of physical existence of inventories, and direct confirmation of certain assets and liabilities by
correspondence with selected customers, creditors, and financial institutions. We will also request written
representations from your attorneys as part of the engagement. At the conclusion of our audit, we will require
certain written representations from you about the financial statements and related matters.

An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial
statements; therefore, our audit will involve judgment about the number of transactions to be examined and
the areas to be tested. An audit also includes evaluating the appropriateness of accounting policies used and

# CONSTANTIN

the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements. We will plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether from (1) errors, (2) fraudulent financial reporting, (3) misappropriation of assets, or (4) violation of laws or governmental regulations that are attributable to the entity or to acts by management or employees acting on behalf of the entity.

Because of the inherent limitations of an audit, combined with the inherent limitations of internal control, and because we will not perform a detailed examination of all transactions, there is a risk that material misstatements may exist and not be detected by us, even though the audit is properly planned and performed in accordance with U.S. generally accepted auditing standards. In addition, an audit is not designed to detect immaterial misstatements or violations of laws or governmental regulations that do not have a direct and material effect on the financial statements. However, we will inform the appropriate level of management of any material errors, fraudulent financial reporting, or misappropriation of assets that comes to our attention. We will also inform the appropriate level of management of any violations of laws or governmental regulations that come to our attention, unless clearly inconsequential. Our responsibility as auditors are limited to the period covered by our audit and does not extend to any later periods for which we are not engaged as auditors.

Our audit will include obtaining an understanding of the entity and its environment, including internal control, sufficient to assess the risks of material misstatement of the financial statements and to design the nature, timing and extent of further audit procedures. An audit is not designed to provide assurance on internal control or to identify deficiencies in internal control. However, during the audit, we will communicate to you and those charged with governance internal control related matters that are required to be communicated under professional standards.

We may from time to time, and depending on the circumstances, use third-party service providers in servicing your account. We may share confidentiality information about you with these service providers, but remain committed to maintaining the confidentiality and security of your information. Accordingly, we maintain internal policies, procedures, and safeguards to protect the confidentiality of your personal information. In addition, we will secure confidentiality agreements with all service providers to maintain the confidentiality of your information and we will take reasonable precautions to determine that they have appropriate procedures in place to prevent the unauthorized release of your confidential information to others. In the event that we are unable to secure an appropriate confidentiality agreement, you will be asked to provide your consent prior to the sharing of your confidential information with the third-party service provider. Furthermore, we will remain responsible for the work provided by any such third party service providers.

## Management Responsibilities

You agree to assume all management responsibilities for the tax services and any other non-attest services we provide; oversee the services by designating an individual, preferably from senior management, with suitable skill, knowledge, or experience; evaluate the adequacy and results of the services; and accept responsibility for them.

You are responsible for establishing and maintaining internal controls, including monitoring ongoing activities; for the selection and application of accounting principles; and for the preparation and fair presentation of the financial statements in conformity with U. S. generally accepted accounting principles. You are also responsible for making all financial records and related information available to us and for the

# CONSTANTIN

accuracy and completeness of that information. You are also responsible for providing us with (1) access to all information of which you are aware that is relevant to the preparation and fair presentation of the financial statements, (2) additional information that we may request for the purpose of the audit, and (3) unrestricted access to persons within the company from whom we determine it necessary to obtain audit evidence.

Your responsibilities include adjusting the financial statements to correct material misstatements and confirming to us in the management representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole.

You are responsible for the design and implementation of programs and controls to prevent and detect fraud, and for informing us about all known or suspected fraud affecting the Company involving (1) management, (2) employees who have significant roles in internal control, and (3) others where the fraud could have a material effect on the financial statements. Your responsibilities include informing us of your knowledge of any allegations of fraud or suspected fraud affecting the Company received in communications from employees, former employees, regulators, or others. In addition, you are responsible for identifying and ensuring that the Company complies with applicable laws and regulations.

## Engagement Administration, Fees and Deliverables

We understand that your employees will prepare information and all cash, accounts receivable and payable, and all other confirmations we request, and will locate any documents selected by us for testing. It is your responsibility to designate an individual with suitable skill, knowledge, or experience to assist, inform and provide us during our audit.

We estimate that our fees for these audit services will amount to $61,800. You will also be billed for travel and other out-of-pocket costs such as report production, postage, etc.

The fees estimate is based on anticipated cooperation from your personnel and the assumption that unexpected circumstances will not be encountered during the engagement. If significant additional time is necessary, we will keep you informed of any problems we encounter and our fees will be adjusted accordingly.

Bills including out-of-pocket expenses will be rendered on a regular basis as the engagement progresses. A final bill will be sent at the completion of all work. Payment is due upon invoice receipt.

If you intend to publish or otherwise reproduce any document prepared and/or issued by us, and make reference to our firm, you agree to provide us with printer proofs or masters for our review and approval before printing. You also agree to provide us with a copy of the final reproduced material for our approval before it is distributed.

In the unlikely event that differences concerning our services or fees should arise that are not resolved by mutual agreement, to facilitate juridical resolution and save time and expense of both parties, the Company and Constantin Associates, LLP agree not to demand a trial by jury in any action, proceeding or counterclaim arising out of or relating to our services and fees for this engagement.

# CONSTANTIN

We appreciate the opportunity to be of service to you and believe this letter accurately summarizes the significant terms of our engagement. If you have any questions, please let us know. If you agree with the terms of our engagement as described in this letter, please sign the enclosed copy and return it to us.

Very truly yours,

Constantin Associates, LLP

Daniel P. Nagle
Managing Director

This letter correctly sets forth the understanding of Schratter Foods, Inc., please sign below and return back to us.

_____ _____        _____
                                          Date



**SCHRATTER FOODS INC.**

February 13, 2013

**Bertrand Proust**
**360 W. 15th Street Apt 102**
**New York, NY 10011**

Dear Bertrand:

We are pleased to confirm our offer to have you serve in the position of Chief Financial Officer of Schratter Foods Incorporated. This position reports to Alain Voss, President and CEO of Schratter Foods Incorporated.

The specifics of our offer are set forth on the attached documents. On a personal note, I look forward to the opportunity of working with you as we pursue the strategic plans for Schratter Foods, Inc.

Sincerely

*Dennise Tapia*

Dennise Tapia
Human Resources Director

**EXHIBIT**
**2**



**SCHRATTER FOODS INC.**

February 19, 2013

<u>Via Mail Delivery</u>

**Bertrand Proust**
**360 W. 15th Street Apt 102**
**New York, NY 10011**

Dear Betrand,

We are very pleased to convey the following offer to you, subject to the conditions listed towards the end of this letter:

| | |
|---|---|
| Position: | Chief Financial Officer of Schratter Foods Incorporated, as set forth in greater detail on Attachment 1 ("Job Description"). Of course, we reserve the right to modify your responsibilities in accordance with our business needs. |
| Start Date: | April 1, 2013. |
| Reporting: | You will report to Alain Voss, President and CEO ("Supervisor"). This reporting relationship may change at the sole discretion of management. |
| Base Salary: | $144,000 USD per annum, less applicable withholding, payable in equal bi-weekly installments. |
| Annual Bonus Opportunity: | You will be eligible for a total annual bonus of up to 25 % of your then-current annual base salary, to be calculated in accordance with the rules Schratter Foods, Inc.'s bonus program, based upon (1) the financial results of Schratter Foods Inc.; and (2) your achievement of mutually agreed upon personal goals relating to the Company's calendar year. You will be eligible for this bonus on a *pro rata* basis for *2013*. The Company reserves, in its sole discretion, the right to change and/or terminate this bonus opportunity at any time after 2013. Additionally, you will be eligible for a 10% "super" bonus if you exceed targets to be specified by Alain. |

would prohibit, restrict, or otherwise limit your ability to be employed by our Schratter Foods, Inc.

Acceptance of our offer constitutes acknowledgment of your status as an at-will employee. As such, you understand that either you or our Company may terminate the employment relationship at any time, with or without prior notice and with or without cause. This letter is not intended to alter your at-will status, but rather confirms it.

If you are in agreement with the foregoing, kindly sign this letter where indicated below and return it to me. A second set of originals of all of the documents is enclosed for your records.

Thank you.

Very truly yours,

*Dennise Tapia*

Dennise Tapia
HR Director


READ, UNDERSTOOD AND AGREED


_____
Bertrand Proust


_____
Date

# EXHIBIT "D"

Chubb Policy #81684190 Insured: Constantin Control Associates ...

**Subject:** Chubb Policy #81684190 Insured: Constantin Control Associates - NOTICE OF CLAIM
FW: Notice of Service Received from CSC Info- Constantin
**From:** "Mary Kate Walsh" <mkwalsh@bridgepointrm.com>
**Date:** 9/19/2018, 11:21 AM
**To:** <specialtyclaims@chubb.com>
**CC:** <cwemett@controlassociates.com>

Dear Chubb Specialty Claims Dept,

Please see below and attached notice of claim regarding the attached complaint filed by ECB USA against
Constantin Associates  LLP and Bertrand Proust.

Please reply to all verifying receipt of this email notice from the insured below and receipt of the attached
complaint

Thank you.

Regards,

**Mary Kate Walsh**  |  Claims Manager
**BridgePoint Risk Management**

203-274-8109     mkwalsh@bridgepointrm.com
203-249-7642     203-274-8177
bridgepointrm.com
375 South County Road Suite 205 Palm Beach, FL 33480

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Confidentiality Notice:** This email is intended for the sole use of the intended recipient(s) and may contain confidential or privileged information. No one other than the intended recipient is authorized to copy or re-use this email or any information contained in it. If you are not the intended recipient, we request that you please notify us by reply email and destroy all copies of the message and any attachments. Thank you for your cooperation.

*Please note that you cannot add, change, or cancel coverage or report a claim by leaving an e-mail or voice-mail message.*
*BP Risk and Insurance Services  |  CA License #0118125*

**From:** Annie Valderrama <avalderrama@bridgepointrm.com>
**Sent:** Monday, September 17, 2018 5:23 PM
**To:** Claims2 <claims2@bridgepointrm.com>
**Cc:** Gail Stamler <gstamler@bridgepointrm.com>; 'Carmen Wemett (cwemett@controlassociates.com)'
<cwemett@controlassociates.com>
**Subject:** FW: Notice of Service Received from CSC Info- Constantin

Attn: Claims department

CONFIDENTIAL

5/30/2019, 1:19 PM

Chubb Policy #81684190 Insured: Constantin Control Associates ...

Attached please find a Summons the insured received.

Kindly file on behalf of the insured. Attached please find the claim information page from the E&O Policy. Also attached please find a copy of the policy along with end't #1. The policy has a $50K deductible.

Should you have any questions, please let me know. Thank you.

Annie Valderrama | Commercial Account Technician BridgePoint Risk Management

avalderrama@bridgepointrm.com Tel: 203-274-8096

-----Original Message----- From: Carmen Wemett <cwemett@controlassociates.com> Sent: Monday, September 17, 2018 2:28 PM To: Annie Valderrama <avalderrama@bridgepointrm.com> Cc: 'Dan Nagle' <dnagle@constantinusa.com>; 'Carmen Wemett' <cwemett@controlassociates.com> Subject: FW: Notice of Service Received from CSC Info

Hi Annie,

Attached please find Summons Constantin received from a former client ECB, USA, Inc. Per our conversation you will let us know who will be sending the summons to Chubb. We think it will be filed under Error and Omission Policy - please advise.

Thank you,

Carmen Wemett Constantin Control Associates LP 4400 Route 9 South Suite 1000 Freehold, New Jersey 07728

Work #: (201) 377-7560 Fax #: (201) 217-0837

—Attachments:

| | |
|---|---|
| viewSopDocument.pdf | 1.3 MB |
| Constantin page 8 filing of claim.pdf | 87.1 KB |
| Control Associates Constantin Group LP Endorsement 2018.pdf | 25.4 KB |
| 2120_001.pdf | 1.7 MB |

CONFIDENTIAL

5/30/2019, 1:19 PM

# EXHIBIT "E"

CHUBB  | North American Financial Lines Claims
        | 150 Allen Road, Suite 101
        | Basking Ridge, NJ 07960
        | Phone: 908.860.4819
        | E-mail: cheryl.napurano@chubb.com

October 12, 2018

**Via E-Mail & Certified Mail:**
Daniel P. Nagle
Constantin Associates, LLP
575 Madison Avenue, 25th Floor
New York, NY 10022

Re:  Insured:            Constantin Group, LP d/b/a Constantin Control Associates, LP
     Policy No.:          8168-4190
     Claim No.:           426527
     Writing Company:     Chubb Insurance Company of New Jersey
     Subject:             ECB USA, Inc.

Dear Mr. Nagle:

This letter follows our previous correspondence dated September 21, 2018, which acknowledged receipt of this matter on behalf of Chubb Insurance Company of New Jersey ("Chubb" or the "Company"). The Company issued a Chubb Professional Portfolio Policy to Control Associates/ Constantin Group, LP d/b/a Constantin Control Associates, LP ("Constantin" or the "Insured"). If the Insured is seeking coverage under any other policies issued by the Company, please let us know as soon as possible.

**The purpose of this letter is to inform you that for the reasons set forth below and based on the information provided, there is no coverage for this claim under the Policy.**

**THE ALLEGATIONS**

As a preliminary matter, please understand that Chubb has not made any determination as to the validity of the above-referenced matter, nor do we assert that any liability exists. We reference the allegations herein only to describe the matter submitted for coverage.

We are in receipt of a Complaint captioned *ECB USA, Inc. v. Constantin Associates, LLP, et al.,* filed in the Circuit Court of the Eleventh Judicial Circuit in Miami-Dade County, Florida on August 22, 2018. The Complaint alleges that from 2010 to the present, the Insured was retained to audit the financial statements of Schratter Foods, Inc. and express an opinion as to whether they were fairly presented in accordance with the U.S. generally accepted accounting principles. Co-defendant Bertrand Proust was formerly employed by the Insured but left to join Schratter Foods, Inc. as its Chief Financial Officer in March 2013. ECB USA, Inc. has been a majority shareholder of Schratter Foods, Inc. since approximately 2014. The Complaint alleges that the Insured failed to "perform its audits" independently and failed to conduct independent reviews of the information provided by Proust in order to uncover and disclose misstatements and/or irregularities in the Schratter Foods financial statements, and instead, the Insured corroborated and/or accepted Proust's misstatements at

C-ASSOCIATES (INS.) 000041

face value. Consequently, it is alleged the Insured certified materially misstated financial statements of Schratter Foods. It is further alleged that the Insured performed grossly negligent audits and reviews.

The Complaint alleges the following causes of action against the Insured: (1) professional liability; (2) negligence per se (violation of auditing standards); (3) breach of contract; (4) negligent entrustment (improper assignment of duties); (5) breach of fiduciary duties; and (6) aiding and abetting breach of fiduciary duties. The Complaint also alleges breach of fiduciary duties, fraud, negligence, and breach of employment agreement against Proust. The Complaint demands unspecified compensatory damages and reserves the right to seek punitive damages in the future.

We further note the engagement letter dated May 15, 2017 stated that the Insured "will audit the financial statements of Schratter Foods, Inc., which comprise of the balance sheet as of April 30, 2017, and the related statements of income, retained earnings, and cash flows for the year then ended and related notes to the financial statements."

**THE POLICY**

Chubb issued a Chubb Professional Portfolio Policy (the "Policy") to the Insured for the period December 12, 2017 through December 12, 2018. The Policy has a maximum aggregate of liability of $3,000,000 for the Miscellaneous Professional and Technology Services (MPTS) Liability Coverage Part, which is subject to a $50,000 per Claim retention. Defense costs and expenses are part of and not in addition to the limit of liability.

With respect to the above allegations, we first direct your attention to the MPTS Insuring Clause, which provides:

I.    **INSURING CLAUSE**

**Miscellaneous Professional and Technology Services Liability Coverage**

The Company shall pay, on behalf of an **Insured**, **Loss** on account of a **Claim** first made against the **Insured** during the **Policy Period**, or the Extended Reporting Period if applicable, for a **Wrongful Act** on or after the Retroactive Date set forth in Item 4 of the MPTS Declarations.

Next, we call your attention to the following Definitions per the MPTS Liability Coverage Part, which states:

**Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect, breach of duty or **Personal Injury** committed, attempted, or allegedly committed or attempted solely in the performance of or failure to perform **Professional Services**.

**Professional Services** means:

(A) Services which are performed by or on behalf of an Insured for others for a fee and set forth in Item 5 of the MPTS Declarations;

...

Page 3

We further direct your attention to the MPTS Declarations, Item 5, which states that the Professional Services are:

>  Computer Consulting including computer system architecture and design
>  Temporary Placement Agency Services and Management consulting
>  Management consulting services meaning services directed toward expertise in banking finance, accounting, risk and systems analysis, design and implementation, asset recovery and strategy planning for financial institutions.

## COVERAGE POSITION

In light of the facts in our possession at this time, and based upon the Policy language referenced above, **please be advised that there is no coverage for this matter.**

As noted above, the Complaint alleges that the Insured failed to properly perform an independent audit of financial statements in its capacity as auditor of Schratter Foods, Inc. and failed to provide an opinion as to whether the financial statements were compliant with U.S. generally accepted accounting principles. The Complaint does not allege any wrongful act in the performance of or failure to perform *consulting* services to others for a fee. Therefore this matter does not allege a Wrongful Act as defined under the Policy and the Policy's Insuring Clause has not been triggered. Accordingly, there is no coverage for this matter.

Without prejudice to the above, Chubb also reserves its rights in relation to the following:

First, the Complaint alleges that the Insured aided and abetted Proust in his efforts to conceal material financial information and misrepresent Schratter Foods' financial condition. Chubb shall not be liable for Loss on account of any Claim based upon, arising from or in consequence of (1) any deliberately fraudulent act or omission, or any willful violation of any statute or regulation, by an Insured, if a final and non-appealable judgment or adjudication establishes such a fraudulent act or omission or willful violation or (2) an Insured having gained any profit, remuneration or other advantage to which they were not legally entitled, if a final and non-appealable judgment or adjudication establishes the gaining of such profit, remuneration or advantage. *See Section III(CC).*

Additionally, the Complaint alleges that the Insured knew or should have known that the failure to present U.S. GAAP compliant financial statements would result in the default of certain lines of credit issued to Schratter Foods, and that the Claimant therefore made commitments it could not fulfill when Schratter Foods filed an assignment for the benefit of creditors in April 2018. Chubb shall not be liable for Loss on account of any Claim based upon, arising from or in consequence of any guaranty, promise or warranty, either express or implied, whether oral or written, with respect to the future value of any real, personal or intellectual property. *See Section III(R).*

Finally, the Complaint indicates that the Claimant may seek punitive damages in the future. Chubb is not liable for any amounts that do not meet the definition of Loss under the Policy. *See Section II.*

We strongly recommend that you report this matter to any other insurance carrier that may afford coverage for this matter. Please note that you may request a re-evaluation of the coverage position. Any requests for re-evaluation should be accompanied by additional factual information, documentation, and/or legal precedent which you believe may apply. It should be directed to my

C-ASSOCIATES (INS.) 000043

attention. In the event of a re-evaluation, the Company reserves all rights under the Policy. Nothing herein shall be construed as a waiver of such rights.

Chubb reserves the right to deny coverage based upon grounds other than those expressly set forth in this letter and to supplement and/or amend this letter to address additional coverage issues as they may arise, based upon all the provisions, terms, conditions, exclusions, endorsements and definitions found in the Policy and additional facts that may come to Chubb's attention. By the same token, Chubb will take into consideration any additional information that you provide. Nothing stated herein and no further action taken by Chubb or on its behalf should be construed as a waiver of any of its rights under the Policy. On the contrary, by providing this or any prior correspondence to the Insured, engaging in any prior or future discussions with the Insured, or paying or agreeing to pay any amount to or on or behalf of the Insured, Chubb does not waive any rights that it has under the Policy at law or in equity and understands the Insured reserves its rights as well.

Pursuant to New Jersey Statute 17:29E-9, you may request claims decisions be reviewed by our Internal Appeal panel. Requests for review may be submitted in writing to:

> Chubb North America Claims
> Attn: Internal Appeal Officer, Routing WB04B
> 436 Walnut Street
> Philadelphia, PA 19106
> Phone: (800) 352-4462
> Fax: (215) 640-2489
> Email: NJAppeals@chubb.com

Should you have any questions, please feel free to contact me. Thank you for your cooperation in this matter.

Sincerely,

*Cheryl Napurano*

Cheryl A. Napurano
Claim Director
Chubb North American Financial Lines Claims

cc:     Mary Kate Walsh, Bridgepoint Risk Management
        *Via Email Only*: mkwalsh@bridgepointrm.com

CONFIDENTIAL

# EXHIBIT "F"

Filing # 87820324 E-Filed 04/11/2019 11:19:27 AM

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

CASE NO.: 2018-028627-CA-01 (44)

ECB USA, INC., a Florida corporation,
ATLANTIC VENTURES CORP, a Florida
corporation, and G.I.E. C2B, a French
entity,

       Plaintiffs,

vs.

CONSTANTIN ASSOCIATES, LLP, a New
York limited liability partnership; and
BERTRAND PROUST, an individual,

       Defendants.
_____/

BERTRAND PROUST, an individual,

    Third Party Plaintiff,

vs.

ARNO LEONI, an individual,

    Third Party Defendant.
_____/

## **AMENDED COMPLAINT**

Plaintiffs, ECB USA, INC. ("ECB USA"), Atlantic Ventures Corp. ("Atlantic

Ventures") and G.I.E. C2B ("C2B"), by and through their undersigned counsel, hereby

sue Defendants Constantin Associates, LLP ("Constantin"), and Bertrand Proust

("Proust"), and allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      ECB USA is a Florida corporation doing business in Miami-Dade County, Florida.

2.      Atlantic Ventures is a Florida corporation doing business in Miami-Dade County, Florida.

3.      C2B is a French business entity (economic interest grouping) doing business in Miami-Dade County, Florida. C2B is an affiliate of ECB USA, Atlantic Ventures, and Schratter Foods Incorporated ("SFI"). C2B was formed for the purpose of funding/lending money to its affiliates, including, but not limited to, SFI.

4.      Constantin is a New York limited liability partnership doing business in Miami-Dade County, Florida.

5.      Proust is an individual over the age of eighteen, a resident of Broward County, Florida, and is otherwise sui juris.

6.      This is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of interest, costs, and attorney's fees.

7.      Jurisdiction is proper with respect to Constantin because Constantin provided professional services in Miami-Dade County, Florida, under an engagement letter executed in Miami-Dade County, Florida and because Constantin committed tortious acts in Miami-Dade County, Florida.

8.      Jurisdiction is proper with respect to Proust because, at all relevant times, Proust was a resident of Broward County, Florida and committed torts in Miami-Dade County, Florida.

9.     Venue is proper in Miami-Dade County pursuant to Sections 47.011, and 47.051, Florida Statutes, because some of Constantin's audits and tortious activities and Proust's tortious activities took place in Miami-Dade County, Florida. Additionally, Constantin conducts business continually in Miami-Dade County, and the harm to Atlantic Ventures, ECB USA, and C2B from Constantin's and Proust's wrongful actions occurred in Miami-Dade County, Florida.

10.     All conditions precedent to bringing this action have been performed, satisfied, excused, or waived.

## COMMON FACTUAL ALLEGATIONS

11.     SFI is a Delaware corporation that was in the specialty food and cheese business and distributed, in the United States, many of the most well-known brands of French cheese.

12.     From in or about 1993 until his termination in 2017, Alain Voss ("Voss") was SFI's chief executive officer. At all relevant times, Voss was, and is, the owner and chief executive officer of Voss Enterprises, Inc. ("VEI").

13.     In 2014, Voss, acting on behalf of VEI, approached ZNHC, Inc. ("ZNHC"), SFI's parent company, regarding the purchase of SFI and, in October 2014, Voss negotiated a letter of intent with ZNHC for VEI to purchase SFI's assets.

14.     Because VEI was unable to complete the purchase on its own, in late October 2014, Voss approached ECB USA and proposed that VEI and ECB USA jointly purchase SFI.

15.     VEI and ECB USA elected to pursue a purchase of SFI's stock rather than an asset purchase and, on December 6, 2014, entered into a stock purchase agreement

with ZNHC to purchase 100% of SFI's shares (the "Stock Purchase Agreement"). The purchase price was $27 million.

16.     On December 10, 2014, ECB USA and VEI formed Atlantic Ventures to complete the SFI stock purchase. ECB USA and VEI assigned the Stock Purchase Agreement to Atlantic Ventures.

17.     Atlantic Ventures' purchase of SFI's shares was structured so that $2 million was paid at closing on December 29, 2014. The balance of the purchase price was to be paid as follows: $15 million in June 2015 and $10 million in four equal annual installments thereafter.

18.     Pursuant to the terms of the Stock Purchase Agreement, on December 29, 2014, Atlantic Ventures purchased 100% of SFI's shares. SFI became a wholly owned subsidiary of Atlantic Ventures

19.     At all relevant times, it was clear that, as part of the stock purchase, not only would the balance of the purchase price ($27 million) have to be paid, but Atlantic Ventures, ECB USA and/or C2B would have to inject additional funds in SFI for its continuing operations.

20.     Shortly after closing, in early January 2015, Claude Blandin and Arno Leoni (on behalf of Atlantic Ventures, ECB USA, and C2B), together with their corporate attorney Jean Dominique Ruby, met with representatives of Constantin, including, Daniel Nagle, Constantin's managing director, to discuss SFI.

21.     Constantin, pursuant to its retention as an independent auditor of SFI, had been auditing SFI's financial statements and internal controls for the previous several years. In each of the previous years in which it served as SFI's auditor, Constantin,

opined that SFI's financial statements were fairly presented in conformity with the U.S. generally accepted accounting principles ("US GAAP"). Additionally, Constantin opined that SFI's financial statements were free of material misstatements resulting from (1) errors, (2) fraudulent financial reporting, (3) misappropriation of assets, or (4) violation of laws or governmental regulations attributable to SFI or to acts by management or employees acting on behalf of SFI.

22.     In the January 2015 meeting, Constantin agreed that ECB USA, Atlantic Ventures and C2B would be provided the audited financial statements for SFI and that ECB USA, Atlantic Ventures and C2B could rely on Constantin's audits in making financial decisions relating to SFI.

23.     Specifically, at that meeting, Arno Leoni and Claude Blandin, on behalf of Atlantic Ventures, C2B, and ECB USA, discussed with Constantin the $15 million payment that was due to ZNHC in June 2015 under the Stock Purchase Agreement, as well as the annual installments due thereafter, and the importance of the accuracy of the audits with respect to the decision to proceed with those payments.

24.     Arno Leoni and Claude Blandin, as representatives of Atlantic Ventures, C2B, and ECB USA, explained to Nagle and the other Constantin representatives, that the decision to fund the balance of the purchase price, whether through ECB USA or another source, would be based, in large part, upon Constantin's audit of SFI's 2014 financial statements. As such, Atlantic Ventures, C2B, and ECB USA requested that Constantin complete its 2014 audit promptly.

25.     In the January 2015 meeting, Arno Leoni and Claude Blandin, as representatives of Atlantic Ventures, ECB USA, and C2B, also explained to Constantin

that C2B, as a related funding company, would be loaning monies to SFI as needed to maintain operations.

26.    Arno Leoni and Claude Blandin, as representatives of Atlantic Ventures, ECB USA, and C2B, explained to Constantin that Atlantic Ventures, ECB USA, and C2B would be relying on Constantin's completed audit and subsequent year audits for SFI in making the decision for C2B to lend money to SFI.

27.    Constantin represented that Atlantic Ventures, ECB USA, and C2B could rely on Constantin's professional accounting services and audits and that this reliance would be appropriate use of the audited financial statements and professional services rendered by Constantin to SFI.

28.    Over the next three years, Constantin repeatedly acknowledged that Atlantic Ventures, ECB USA, and C2B would be provided with the results of Constantin's professional accounting services to SFI, including the audits, and agreed that Atlantic Ventures, ECB USA, and C2B could rely on the results of those professional accounting services, including the audits.

29.    Atlantic Ventures relied upon Constantin's professional accounting services and paid millions of dollars towards the purchase of the SFI shares.

30.    C2B relied upon Constantin's professional accounting services and loaned over $12 million to SFI.

31.    During the three years beginning in January 2015, and even in the years prior to January 2015, Constantin did not exercise diligence, professionalism, and independence in the performance of its professional accounting services, including the certification of SFI's audited financial statements.

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.     Case No.: 2018-028627-CA-01 (44)
Page 7 of 37

32.     Rather, in conducting the SFI audits, Constantin, among other things, abandoned its duty of independence and relied heavily on Proust, SFI's Chief Financial Officer, who had previously been an employee of Constantin, and part of the Constantin audit team that provided professional accounting services to SFI, including annual audits of SFI's books and records

33.     Proust, improperly and with Constantin's knowledge and consent, exercised undue influence over the SFI audits conducted by Constantin and delayed the discovery of SFI's myriad of financial problems and internal conflicts of interests.

34.     If the true nature of SFI's financial problems, lack of internal controls, and conflicts of interest had been reported in Constantin's work, Atlantic Ventures, ECB USA, and C2B would not have continued to fund either the balance of the purchase price under the Stock Purchase Agreement or SFI's continuing operations.

35.     Constantin performed its audits and reviews negligently. Constantin failed to detect material errors in SFI's financial statements, including but not limited to, continuing and material underreporting of SFI expenses and continuing and material overreporting of its revenues. Constantin further failed to note material changes in SFI's financial affairs.

36.     On May 3, 2017, SFI fired Proust, after which many of the errors, omissions, and misrepresentations in Constantin's work became evident. By way of example only: (a) Constantin had not properly performed its duties as SFI's auditor; (b) Constantin improperly and, despite clear and significant conflicts, had also acted as the auditor for VEI, an entity owned by SFI's President and CEO, and a 45 percent shareholder of SFI's

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.                    Case No.: 2018-028627-CA-01 (44)
Page 8 of 37

parent company, Atlantic Ventures; and (c) Proust and Constantin failed to properly act in SFI's best interests.

37.    Because of the misrepresentations and omissions in the financial statements, Atlantic Ventures, ECB USA, and C2B did not know that SFI was fiscally unable (a) to continue to do business; (b) to continue its financing relationships; (c) to secure new financing; (d) to meet its various obligations; and (e) to secure new business opportunities.

38.    Based upon the misrepresentations and omissions in the audited financial statements, ECB USA, Atlantic Ventures, and C2B, invested and loaned millions of dollars, which they otherwise would not have invested in or loaned to SFI.

39.    As a direct and proximate result of the misrepresentations and omissions in the audited financial statements, ECB USA, Atlantic Ventures and C2B lost tens of millions of dollars.

## COUNT I

### NEGLIGENT MISREPRESENTATION
### (Atlantic Ventures against Constantin)

40.    Atlantic Ventures hereby incorporates Paragraphs 1 through 39 of this Amended Complaint as if fully restated herein.

41.    At all relevant times, Atlantic Ventures was among the class of persons or entities whom Constantin knew, or reasonably expected, would be relying on the results of Constantin's professional accounting services to SFI, including, but not limited to, SFI's audited financial statements.

42.    Commencing in 2015, and continuing through 2017, Constantin misrepresented to Atlantic Ventures SFI's financial condition and the state of its internal

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.       Case No.: 2018-028627-CA-01 (44)
Page 9 of 37

controls in the audited financial statements prepared for the years 2014, 2015, 2016, and 2017. The audited financial statements, among other things, overstated revenue and understated expenses thereby inflating SFI's profitability and the margins realized on sales. Further, Constantin failed to note material changes in SFI's financial statements that Constantin knew or reasonably should have known raised concerns about SFI's financial position and internal controls.

43.     Additionally, Constantin misrepresented to Atlantic Ventures that Constantin conducted its audits of SFI's financial statements and SFI's internal controls over financial reporting in accordance with US GAAP, Financial Accounting Standards Board Accounting Standards, and accounting principles of the International Ethics Standards Board for Accountants' ("IESBA") International Code of Ethics for Professional Accountants.

44.     At all relevant times, Constantin represented to Atlantic Ventures, expressly and through its conduct, that Constantin understood that Atlantic Ventures intended to rely, and agreed that Atlantic Ventures could rely, on the results of Constantin's professional accounting services rendered to SFI in making the decisions to continue to invest funds in and/or lend monies to SFI.

45.     At all relevant times, Constantin intended for the class of entities of which Atlantic Ventures was part to rely on the results of Constantin's professional accounting services rendered to SFI, including, but not limited to, SFI's audited financial statements, in decisions to fund SFI, either through investments or loans.

46.     Constantin made the referenced misrepresentations regarding SFI's financial condition and internal controls over financial reporting without any basis for

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.          Case No.: 2018-028627-CA-01 (44)
Page 10 of 37

believing the truth of the information about SFI and without regard for whether the information being provided was true or false.

47.     Atlantic Ventures justifiably relied to its detriment on the misrepresentations made by Constantin and invested and/or loaned monies to SFI.

48.     As a direct and proximate result of Constantin's negligence, Atlantic Ventures was damaged in an amount to be proven at trial.

WHEREFORE, Atlantic Ventures demands judgment against Constantin for compensatory damages, pre- and post-judgment interest, costs, and for such other and further relief as this Court may deem just and proper.

## COUNT II

### NEGLIGENT MISREPRESENTATION
### (ECB USA against Constantin)

ECB USA hereby incorporates Paragraphs 1 through 39 of this Amended Complaint as if fully restated herein.

49.     At all relevant times, ECB USA was among the class of persons or entities whom Constantin knew, or reasonably expected, would be relying on the results of Constantin's professional accounting services to SFI, including, but not limited to, SFI's audited financial statements.

50.     Commencing in 2015, and continuing through 2017, Constantin misrepresented to ECB USA SFI's financial condition and the state of its internal controls in the audited financial statements prepared for the years 2014, 2015, 2016, and 2017. The audited financial statements, among other things, overstated revenue and understated expenses thereby inflating SFI's profitability and the margins realized on sales. Further, Constantin failed to note material changes in SFI's financial statements

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.       Case No.: 2018-028627-CA-01 (44)
Page 11 of 37

that Constantin knew or reasonably should have known raised concerns about SFI's financial position and internal controls.

51.     Additionally, Constantin misrepresented to ECB USA that Constantin conducted its audits of SFI's financial statements and SFI's internal controls over financial reporting in accordance with US GAAP, Financial Accounting Standards Board Accounting Standards, and accounting principles of the International Ethics Standards Board for Accountants' ("IESBA") International Code of Ethics for Professional Accountants.

52.     At all relevant times, Constantin represented to ECB USA, expressly and through its conduct, that Constantin understood that ECB USA intended to rely, and agreed that ECB USA could rely, on the results of Constantin's professional accounting services rendered to SFI in making the decisions to continue to invest funds in and/or lend monies to SFI.

53.     At all relevant times, Constantin intended for the class of entities of which ECB USA was part to rely on the results of Constantin's professional accounting services rendered to SFI, including, but not limited to, SFI's audited financial statements, in decisions to fund SFI, either through investments or loans.

54.     Constantin made the referenced misrepresentations regarding SFI's financial condition and internal controls over financial reporting without any basis for believing the truth of the information about SFI and without regard for whether the information being provided was true or false.

55.     ECB USA justifiably relied to its detriment on the misrepresentations made by Constantin and invested and/or loaned monies to SFI.

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.          Case No.: 2018-028627-CA-01 (44)
Page 12 of 37

56.    As a direct and proximate result of Constantin's negligence, ECB USA was damaged in an amount to be proven at trial.

WHEREFORE, ECB USA demands judgment against Constantin for compensatory damages, pre- and post-judgment interest, costs, and for such other and further relief as this Court may deem just and proper.

### COUNT III

### NEGLIGENT MISREPRESENTATION
### (C2B against Constantin)

C2B hereby incorporates Paragraphs 1 through 39 of this Amended Complaint as if fully restated herein.

57.    At all relevant times, C2B was among the class of persons or entities whom Constantin knew, or reasonably expected, would be relying on the results of Constantin's professional accounting services to SFI, including, but not limited to, SFI's audited financial statements.

58.    Commencing in 2015, and continuing through 2017, Constantin misrepresented to C2B SFI's financial condition and the state of its internal controls in the audited financial statements prepared for the years 2014, 2015, 2016, and 2017. The audited financial statements, among other things, overstated revenue and understated expenses thereby inflating SFI's profitability and the margins realized on sales. Further, Constantin failed to note material changes in SFI's financial statements that Constantin knew or reasonably should have known raised concerns about SFI's financial position and internal controls.

59.    Additionally, Constantin misrepresented to C2B that Constantin conducted its audits of SFI's financial statements and SFI's internal controls over financial reporting

in accordance with US GAAP, Financial Accounting Standards Board Accounting Standards, and accounting principles of the International Ethics Standards Board for Accountants' ("IESBA") International Code of Ethics for Professional Accountants.

60.   At all relevant times, Constantin represented to C2B, expressly and through its conduct, that Constantin understood that C2B intended to rely, and agreed that C2B could rely, on the results of Constantin's professional accounting services rendered to SFI in making the decisions to continue to invest funds in and/or lend monies to SFI.

61.   At all relevant times, Constantin intended for the class of entities of which C2B was part to rely on the results of Constantin's professional accounting services rendered to SFI, including, but not limited to, SFI's audited financial statements, in decisions to fund SFI, either through investments or loans.

62.   Constantin made the referenced misrepresentations regarding SFI's financial condition and internal controls over financial reporting without any basis for believing the truth of the information about SFI and without regard for whether the information being provided was true or false.

63.   C2B justifiably relied to its detriment on the misrepresentations made by Constantin and invested and/or loaned monies to SFI.

64.   As a direct and proximate result of Constantin's negligence, C2B was damaged in an amount to be proven at trial.

WHEREFORE, C2B demands judgment against Constantin for compensatory damages, pre- and post-judgment interest, costs, and for such other and further relief as this Court may deem just and proper.

## COUNT IV

### FRAUD
### (Atlantic Ventures against Constantin)

Atlantic Ventures hereby incorporates Paragraphs 1 through 39 of this Amended Complaint as if fully restated herein.

65.    At all relevant times, Atlantic Ventures was among the class of persons or entities whom Constantin knew, or reasonably expected, would be relying on the results of Constantin's professional accounting services to SFI, including, but not limited to, SFI's audited financial statements.

66.    Constantin prepared audited financial statements of SFI for each year from 2014 through 2017.

67.    In each of the audited financial statements, Constantin made the following false representations:

> We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement.

\*\*\*

> In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Schratter Foods, Inc. as of December 31, 2014 and 2013, and the results of its operations and its cash flows for the years then ended in accordance with accounting principles generally accepted in the United States of America.

68.    Constantin knew or reasonably should have known that its representations set forth above were false when they were made.

69.    At all relevant times, Constantin intended that Atlantic Ventures would rely upon its misrepresentations regarding Constantin's audits of SFI.

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.           Case No.: 2018-028627-CA-01 (44)
Page 15 of 37

70.     Atlantic Ventures reasonably relied to their detriment on the misrepresentations made by Constantin by investing in and/or loaning monies to SFI.

71.     As a direct and proximate result of Constantin's fraudulent conduct, Atlantic Ventures has been damaged in an amount to be proven at trial.

**WHEREFORE**, Atlantic Ventures demands judgment against Constantin for compensatory damages, plus pre- and post-judgment interest, costs, and for such other and further relief as this Court may deem just and proper.

### COUNT V

### FRAUD
### (ECB USA against Constantin)

ECB USA hereby incorporates Paragraphs 1 through 39 of this Amended Complaint as if fully restated herein.

72.     At all relevant times, ECB USA was among the class of persons or entities whom Constantin knew, or reasonably expected, would be relying on the results of Constantin's professional accounting services to SFI, including, but not limited to, SFI's audited financial statements.

73.     Constantin prepared audited financial statements of SFI for each year from 2014 through 2017.

74.     In each of the audited financial statements, Constantin made the following false representations:

> We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement.

\*\*\*

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.          Case No.: 2018-028627-CA-01 (44)
Page 16 of 37

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Schratter Foods, Inc. as of December 31, 2014 and 2013, and the results of its operations and its cash flows for the years then ended in accordance with accounting principles generally accepted in the United States of America.

75.     Constantin knew or reasonably should have known that its representations set forth above were false when they were made.

76.     At all relevant times, Constantin intended that ECB USA would rely upon its misrepresentations regarding Constantin's audits of SFI.

77.     ECB USA reasonably relied to their detriment on the misrepresentations made by Constantin by investing in and/or loaning monies to SFI.

78.     As a direct and proximate result of Constantin's fraudulent conduct, ECB USA has been damaged in an amount to be proven at trial.

**WHEREFORE**, ECB USA demands judgment against Constantin for compensatory damages, plus pre- and post-judgment interest, costs, and for such other and further relief as this Court may deem just and proper.

## COUNT VI

### FRAUD
### (C2B against Constantin)

C2B hereby incorporates Paragraphs 1 through 39 of this Amended Complaint as if fully restated herein.

79.     At all relevant times, C2B was among the class of persons or entities whom Constantin knew, or reasonably expected, would be relying on the results of Constantin's professional accounting services to SFI, including, but not limited to, SFI's audited financial statements.

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.          Case No.: 2018-028627-CA-01 (44)
Page 17 of 37

80.     Constantin prepared audited financial statements of SFI for each year from 2014 through 2017.

81.     In each of the audited financial statements, Constantin made the following false representations:

> We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement.

\*\*\*

> In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Schratter Foods, Inc. as of December 31, 2014 and 2013, and the results of its operations and its cash flows for the years then ended in accordance with accounting principles generally accepted in the United States of America.

82.     Constantin knew or reasonably should have known that its representations set forth above were false when they were made.

83.     At all relevant times, Constantin intended that C2B would rely upon its misrepresentations regarding Constantin's audits of SFI.

84.     C2B reasonably relied to their detriment on the misrepresentations made by Constantin by investing in and/or loaning monies to SFI.

85.     As a direct and proximate result of Constantin's fraudulent conduct, C2B has been damaged in an amount to be proven at trial.

**WHEREFORE**, C2B demands judgment against Constantin for compensatory damages, plus pre- and post-judgment interest, costs, and for such other and further relief as this Court may deem just and proper.

## COUNT VII

### BREACH OF FIDUCIARY DUTIES
### (Atlantic Ventures against Proust)

Atlantic Ventures hereby incorporates Paragraphs 1 through 39 of this Amended Complaint as if fully restated herein.

86.     At all relevant times, the relationship between Proust and Atlantic Ventures was based on confidentiality and trust. Proust knew that Atlantic Ventures had placed its trust in him. Proust accepted that trust, acknowledging to Atlantic Ventures that he had a duty of utmost good faith and loyalty to Atlantic Ventures, and that Atlantic Ventures could trust and rely on his work as SFI's CFO in making decisions to invest funds in SFI. The trust relationship between Proust and Atlantic Ventures was further predicated on the exchange of private information, Proust's knowledge that Atlantic Ventures would rely on him in making decisions regarding further investments in SFI, and the inherent nature of Proust's position as a financial officer of SFI, pursuant to which he maintained control and knowledge over the financial transactions and condition of SFI.

87.     Atlantic Ventures relied on Proust's knowledge and expertise to make financial commitments relating to the business of SFI. As SFI's CFO, Proust's disclosures and interactions with Atlantic Ventures were critical and thus required completeness honesty, fairness, and accuracy.

88.     Atlantic Ventures placed its trust in Proust that SFI's financial statements were true and correct because of Constantin's role as an independent auditor and that Proust was, at all times, acting in the true and best interests of Atlantic Ventures.

89.     Proust abused his position as a fiduciary because he failed to act in the best interests of Atlantic Ventures by concealing from Atlantic Ventures vital financial

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.          Case No.: 2018-028627-CA-01 (44)
Page 19 of 37

information, and by, but not limited to, misrepresenting SFI's financial condition, providing false information to Constantin, and representing that accounts had been properly and independently audited.

90.     As a direct and proximate result of Proust's breach of his fiduciary duties to Atlantic Ventures, Atlantic Ventures has suffered, and will continue to suffer substantial losses, in an amount to be proven at trial.

WHEREFORE, Atlantic Ventures, demands judgment against Proust for compensatory damages, pre- and post-judgment interest, costs, and for such other and further relief as this Court may deem just and proper.

## COUNT VIII

### BREACH OF FIDUCIARY DUTIES
### (ECB USA against Proust)

ECB USA hereby incorporates Paragraphs 1 through 39 of this Amended Complaint as if fully restated herein.

91.     The relationship between Proust and ECB USA was based on confidentiality and trust. Proust knew that ECB USA had placed its trust in him. Proust accepted that trust, acknowledging to ECB USA that he had a duty of utmost good faith and loyalty to ECB USA, and that ECB USA could trust and rely on his work as SFI's CFO in making financial decisions regarding SFI. The trust relationship between Proust and ECB USA was further predicated on the exchange of private information, Proust's knowledge that ECB USA would rely on him in making decisions regarding loans to SFI, and the inherent nature of Proust's position as a financial officer of SFI, pursuant to which he maintained control and knowledge over the financial transactions and condition of SFI.

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.          Case No.: 2018-028627-CA-01 (44)
Page 20 of 37

92.     ECB USA relied on Proust's knowledge and expertise to make financial commitments relating to the business of SFI. As SFI's CFO, Proust's disclosures and interactions with ECB USA were critical and thus required completeness honesty, fairness, and accuracy.

93.     ECB USA placed its trust in Proust that SFI's financial statements were true and correct because of Constantin's role as an independent auditor and that Proust was, at all times, acting in the true and best interests of ECB USA.

94.     Proust abused his position as a fiduciary because he failed to act in the best interests of ECB USA by concealing from ECB USA vital financial information, and by, but not limited to, misrepresenting SFI's financial condition, providing false information to Constantin, and representing that accounts had been properly and independently audited.

95.     As a direct and proximate result of Proust's breach of his fiduciary duties to ECB USA, ECB USA has suffered, and will continue to suffer, substantial losses, in an amount to be proven at trial.

WHEREFORE, ECB USA demands judgment against Proust for compensatory damages, pre- and post-judgment interest, costs, and for such other and further relief as this Court may deem just and proper.

## COUNT IX

### BREACH OF FIDUCIARY DUTIES
### (C2B against Proust)

C2B hereby incorporates Paragraphs 1 through 39 of this Amended Complaint as if fully restated herein.

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.        Case No.: 2018-028627-CA-01 (44)
Page 21 of 37

96.     The relationship between Proust and C2B was based on confidentiality and trust. Proust knew that C2B had placed its trust in him. Proust accepted that trust, acknowledging to C2B that he had a duty of utmost good faith and loyalty to C2B, and that C2B could trust and rely on his work as SFI's CFO in making decisions to loan monies to SFI for its continued operations. The trust relationship between Proust and C2B was further predicated on the exchange of private information, Proust's knowledge that C2B would rely on him in making decisions regarding loans to SFI, and the inherent nature of Proust's position as a financial officer of SFI, pursuant to which he maintained control and knowledge over the financial transactions and condition of SFI.

97.     C2B relied on Proust's knowledge and expertise to make financial commitments relating to the business of SFI. As SFI's CFO, Proust's disclosures and interactions with C2B were critical and thus required completeness honesty, fairness, and accuracy.

98.     C2B placed its trust in Proust that SFI's financial statements were true and correct because of Constantin's role as an independent auditor and that Proust was, at all times, acting in the true and best interests of C2B.

99.     Proust abused his position as a fiduciary because he failed to act in the best interests of C2B by concealing from C2B vital financial information, and by, but not limited to, misrepresenting SFI's financial condition, providing false information to Constantin, and representing that accounts had been properly and independently audited.

100.    As a direct and proximate result of Proust's breach of his fiduciary duties to C2B, C2B has suffered, and will continue to suffer, substantial losses, in an amount to be proven at trial.

WHEREFORE, C2B demands judgment against Proust for compensatory damages, pre- and post-judgment interest, costs, and for such other and further relief as this Court may deem just and proper.

## COUNT X

### AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY
### (Atlantic Ventures against Constantin)

Atlantic Ventures hereby incorporates Paragraphs 1 through 39 and 86 through 90 of this Amended Complaint as if fully restated herein.

101.   Constantin gave Proust substantial assistance and encouragement in breaching his fiduciary duties to Atlantic Ventures by allowing him to control the course of Constantin's audits of SFI and by failing or refusing to exercise appropriate independence in the conduct of the audits. By its conduct and its words, Constantin indicated to Proust that it would not be reviewing his work on SFI's financial affairs but accepting them at face value.

102.   Based upon its review of the financial affairs, internal controls, and financial statements, Constantin was aware of its role in Proust's wrongful conduct and chose not to reveal that conduct to SFI or Atlantic Ventures.

103.   Constantin knowingly and substantially assisted in Proust's breach of fiduciary duty by fraudulently certifying SFI's financial statements.

104.   As a direct and proximate result of Constantin's wrongful actions, Atlantic Ventures has sustained and will continue to sustain substantial damages in an amount to be proven at trial.

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.          Case No.: 2018-028627-CA-01 (44)
Page 23 of 37

WHEREFORE, Atlantic Ventures demands judgment against Constantin for compensatory damages, pre- and post-judgment interest, costs, and for such other and further relief as this Court may deem just and proper.

## COUNT XI

### AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY
### (ECB USA against Constantin)

ECB USA hereby incorporates Paragraphs 1 through 39 and 91 through 95 of this Amended Complaint as if fully restated herein.

105.    Constantin gave Proust substantial assistance and encouragement in breaching his fiduciary duties to ECB USA by allowing him to control the course of Constantin's audits of SFI and by failing or refusing to exercise appropriate independence in the conduct of the audits. By its conduct and its words, Constantin indicated to Proust that it would not be reviewing his work on SFI's financial affairs but accepting them at face value.

106.    Based upon its review of the financial affairs, internal controls, and financial statements, Constantin was aware of its role in Proust's wrongful conduct and chose not to reveal that conduct to SFI or ECB USA.

107.    Constantin knowingly and substantially assisted in Proust's breach of fiduciary duty by fraudulently certifying SFI's financial statements.

108.    As a direct and proximate result of Constantin's wrongful actions, ECB USA has sustained and will continue to sustain substantial damages in an amount to be proven at trial.

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.        Case No.: 2018-028627-CA-01 (44)
Page 24 of 37

WHEREFORE, ECB USA demands judgment against Constantin for compensatory damages, pre- and post-judgment interest, costs, and for such other and further relief as this Court may deem just and proper.

## COUNT XII

### AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY
### (C2B against Constantin)

C2B hereby incorporates Paragraphs 1 through 39 and 96 through 100of this Amended Complaint as if fully restated herein.

109.    Constantin gave Proust substantial assistance and encouragement in breaching his fiduciary duties to C2B by allowing him to control the course of Constantin's audits of SFI and by failing or refusing to exercise appropriate independence in the conduct of the audits. By its conduct and its words, Constantin indicated to Proust that it would not be reviewing his work on SFI's financial affairs but accepting them at face value.

110.    Based upon its review of the financial affairs, internal controls, and financial statements, Constantin was aware of its role in Proust's wrongful conduct and chose not to reveal that conduct to SFI or C2B.

111.    Constantin knowingly and substantially assisted in Proust's breach of fiduciary duty by fraudulently certifying SFI's financial statements.

112.    As a direct and proximate result of Constantin's wrongful actions, C2B has sustained and will continue to sustain substantial damages in an amount to be proven at trial.

WHEREFORE, C2B demands judgment against Constantin for compensatory damages, pre- and post-judgment interest, costs, and for such other and further relief as this Court may deem just and proper.

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.        Case No.: 2018-028627-CA-01 (44)
Page 25 of 37

## COUNT XIII

### FRAUD
### (Atlantic Ventures against Proust)

Atlantic Ventures hereby incorporates Paragraphs 1 through 39 of this Amended Complaint as if fully restated herein.

113.    In his capacity as SFI's CFO, Proust was tasked with preparing a multitude of financial statements and reports regarding SFI's financial position including, without limitation: monthly financial reports issued to Wells Fargo Bank, N.A.; quarterly financial reports distributed to SFI's shareholder Atlantic Ventures; and yearly financial statements for the years 2012 to 2016 given to Atlantic Ventures. Proust's obligations also included transmitting and communicating accurate and reliable information concerning SFI's financial condition and circumstances and important financial issues to Atlantic Ventures.

114.    By drafting financial statements and reports on behalf of SFI for the benefit of SFI's shareholders, lenders and other stakeholders, Proust made specific representations regarding SFI's sales, assets, profitability, creditworthiness, and financial position.

115.    Entries in financial statements used by shareholders, lenders, and other stakeholders to evaluate the financial performance of a corporation are not only material, but essential to obtain an accurate assessment of the corporation.

116.    The entries in SFI's financial statements were false, and Proust knew them to be false because he actively contributed to artificially inflating SFI's profitability. Examples of such false entries include, without limitation:

i.      The overstatement by approximately $211,000 of certain credits owed to SFI by one of its suppliers, Toscana Cheese Company. The

overstatement of such credits resulted in the artificial reduction of SFI's expenses and the resulting artificial inflation of its profits.

  ii.  The overstatement by approximately $600,000 of certain credits owed to SFI by one of its suppliers, Alouette Cheese, LLC. The overstatement of such credits resulted in the artificial reduction of SFI's expenses and the resulting inflation of its profits.

  iii.  An understatement in excess of $1 Million of certain credits owed by SFI to its customers. The understatement of such credits resulted in the artificial inflation of SFI's revenues and profits.

  117. Proust made those false entries knowing that they were false and with the specific intention of Atlantic Ventures relying on them; in fact, Proust was a key player in communicating such statements to SFI's shareholders and lending institutions, such as Atlantic Ventures, ECB USA, C2B, and Wells Fargo Bank, N.A.

  118. Atlantic Ventures reasonably relied to their detriment on Proust's representations.

  119. As a direct and proximate result of Proust's fraudulent statements, Atlantic Ventures sustained and will continue to sustain substantial damages in an amount to be proven at trial.

  WHEREFORE, Atlantic Ventures demands judgment against Proust for compensatory damages, pre- and post-judgment interest, and for such other and further relief as this Court may deem just and proper.

## COUNT XIV

### FRAUD
### (ECB USA against Proust)

ECB USA hereby incorporates Paragraphs 1 through 39 of this Amended Complaint as if fully restated herein.

120.    In his capacity as SFI's CFO, Proust was tasked with preparing a multitude of financial statements and reports regarding SFI's financial position including, without limitation: monthly financial reports issued to Wells Fargo Bank, N.A.; quarterly financial reports distributed to SFI's shareholder ECB USA; and yearly financial statements for the years 2012 to 2016 given to ECB USA. Proust's obligations also included transmitting and communicating accurate and reliable information concerning SFI's financial condition and circumstances and important financial issues to ECB USA.

121.    By drafting financial statements and reports on behalf of SFI for the benefit of SFI's shareholders, lenders and other stakeholders, Proust made specific representations regarding SFI's sales, assets, profitability, creditworthiness, and financial position.

122.    Entries in financial statements used by shareholders, lenders, and other stakeholders to evaluate the financial performance of a corporation are not only material, but essential to obtain an accurate assessment of the corporation.

123.    The entries in SFI's financial statements were false, and Proust knew them to be false because he actively contributed to artificially inflating SFI's profitability. Examples of such false entries include, without limitation:

iv.    The overstatement by approximately $211,000 of certain credits owed to SFI by one of its suppliers, Toscana Cheese Company. The

overstatement of such credits resulted in the artificial reduction of SFI's expenses and the resulting artificial inflation of its profits.

v.      The overstatement by approximately $600,000 of certain credits owed to SFI by one of its suppliers, Alouette Cheese, LLC. The overstatement of such credits resulted in the artificial reduction of SFI's expenses and the resulting inflation of its profits.

vi.      An understatement in excess of $1 Million of certain credits owed by SFI to its customers. The understatement of such credits resulted in the artificial inflation of SFI's revenues and profits.

124.   Proust made those false entries knowing that they were false and with the specific intention of ECB USA relying on them; in fact, Proust was a key player in communicating such statements to SFI's shareholders and lending institutions, such as Atlantic Ventures, ECB USA, C2B, and Wells Fargo Bank, N.A.

125.   ECB USA reasonably relied to their detriment on Proust's representations.

126.   As a direct and proximate result of Proust's fraudulent statements, ECB USA sustained and will continue to sustain substantial damages in an amount to be proven at trial.

WHEREFORE, ECB USA demands judgment against Proust for compensatory damages, pre- and post-judgment interest, and for such other and further relief as this Court may deem just and proper.

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.                    Case No.: 2018-028627-CA-01 (44)
Page 29 of 37

## COUNT XV

### FRAUD
### (C2B against Proust)

C2B hereby incorporates Paragraphs 1 through 39 of this Amended Complaint as if fully restated herein.

127.   In his capacity as SFI's CFO, Proust was tasked with preparing a multitude of financial statements and reports regarding SFI's financial position including, without limitation: monthly financial reports issued to Wells Fargo Bank, N.A.; quarterly financial reports distributed to SFI's creditor C2B; and yearly financial statements for the years 2012 to 2016 given to C2B. Proust's obligations also included transmitting and communicating accurate and reliable information concerning SFI's financial condition and circumstances and important financial issues to C2B.

128.   By drafting financial statements and reports on behalf of SFI for the benefit of SFI's shareholders, lenders and other stakeholders, Proust made specific representations regarding SFI's sales, assets, profitability, creditworthiness, and financial position.

129.   Entries in financial statements used by shareholders, lenders, and other stakeholders to evaluate the financial performance of a corporation are not only material, but essential to obtain an accurate assessment of the corporation.

130.   The entries in SFI's financial statements were false, and Proust knew them to be false because he actively contributed to artificially inflating SFI's profitability. Examples of such false entries include, without limitation:

vii.   The overstatement by approximately $211,000 of certain credits owed to SFI by one of its suppliers, Toscana Cheese Company. The

overstatement of such credits resulted in the artificial reduction of SFI's expenses and the resulting artificial inflation of its profits.

viii.     The overstatement by approximately $600,000 of certain credits owed to SFI by one of its suppliers, Alouette Cheese, LLC. The overstatement of such credits resulted in the artificial reduction of SFI's expenses and the resulting inflation of its profits.

ix.     An understatement in excess of $1 Million of certain credits owed by SFI to its customers. The understatement of such credits resulted in the artificial inflation of SFI's revenues and profits.

131.     Proust made those false entries knowing that they were false and with the specific intention of C2B relying on them; in fact, Proust was a key player in communicating such statements to SFI's shareholders and lending institutions, such as Atlantic Ventures, ECB USA, C2B, and Wells Fargo Bank, N.A.

132.     C2B reasonably relied to their detriment on Proust's representations.

133.     As a direct and proximate result of Proust's fraudulent statements, C2B sustained and will continue to sustain substantial damages in an amount to be proven at trial.

WHEREFORE, C2B demands judgment against Proust for compensatory damages, pre- and post-judgment interest, and for such other and further relief as this Court may deem just and proper.

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.      Case No.: 2018-028627-CA-01 (44)
Page 31 of 37

## COUNT XVI

## AIDING AND ABETTING A FRAUD
### (Atlantic Ventures against CONSTANTIN)

Atlantic Ventures hereby incorporates Paragraphs 1 through 39 and 113 through 119 of this Amended Complaint as if fully restated herein.

134.   Constantin gave Proust substantial assistance and encouragement in committing his fraud against Atlantic Ventures by allowing Proust to control the course of the SFI audits and by failing or refusing to exercise appropriate independence in the conduct of the audits. By its conduct and its words, Constantin made clear to Proust that it would not be reviewing his work on SFI's financial affairs and would accept them at face value.

135.   Based upon its review of SFI's financial affairs, internal controls, and financial statements, Constantin was aware of its role in Proust's fraudulent conduct and chose not to reveal it to SFI.

136.   Constantin knowingly and substantially assisted in the fraud by fraudulently certifying SFI's annual financial statements as set forth in paragraphs 113 through 119 of this Amended Complaint.

137.   As a direct and proximate result of Constantin's aiding and abetting Proust's fraudulent conduct, Atlantic Ventures has sustained and will continue to sustain substantial damages, in an amount to be proven at trial.

WHEREFORE, Atlantic Ventures demands judgment against Constantin for compensatory damages, pre- and post-judgment interest, costs, and for such other and further relief as this Court may deem just and proper.

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.          Case No.: 2018-028627-CA-01 (44)
Page 32 of 37

## COUNT XVII

### AIDING AND ABETTING A FRAUD
### (ECB USA against CONSTANTIN)

ECB USA hereby incorporates Paragraphs 1 through 39 and 120 through 126 of this Amended Complaint as if fully restated herein.

138.   Constantin gave Proust substantial assistance and encouragement in committing his fraud against ECB USA by allowing Proust to control the course of the SFI audits and by failing or refusing to exercise appropriate independence in the conduct of the audits. By its conduct and its words, Constantin made clear to Proust that it would not be reviewing his work on SFI's financial affairs and would accept them at face value.

139.   Based upon its review of SFI's financial affairs, internal controls, and financial statements, Constantin was aware of its role in Proust's fraudulent conduct and chose not to reveal it to SFI.

140.   Constantin knowingly and substantially assisted in the fraud by fraudulently certifying SFI's annual financial statements as set forth in paragraphs 120 through 126 of this Amended Complaint.

141.   As a direct and proximate result of Constantin's aiding and abetting Proust's fraudulent conduct, ECB USA has sustained and will continue to sustain substantial damages, in an amount to be proven at trial.

WHEREFORE, ECB USA demands judgment against Constantin for compensatory damages, pre- and post-judgment interest, costs, and for such other and further relief as this Court may deem just and proper.

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.          Case No.: 2018-028627-CA-01 (44)
Page 33 of 37

## COUNT XVIII

### AIDING AND ABETTING A FRAUD
### (C2B against CONSTANTIN)

C2B hereby incorporates Paragraphs 1 through 39 and 127 through 133 of this Amended Complaint as if fully restated herein.

142.   Constantin gave Proust substantial assistance and encouragement in committing his fraud against C2B by allowing Proust to control the course of the SFI audits and by failing or refusing to exercise appropriate independence in the conduct of the audits. By its conduct and its words, Constantin made clear to Proust that it would not be reviewing his work on SFI's financial affairs and would accept them at face value.

143.   Based upon its review of SFI's financial affairs, internal controls, and financial statements, Constantin was aware of its role in Proust's fraudulent conduct and chose not to reveal it to SFI.

144.   Constantin knowingly and substantially assisted in the fraud by fraudulently certifying SFI's annual financial statements as set forth in paragraphs 127 through 133 of this Amended Complaint.

145.   As a direct and proximate result of Constantin's aiding and abetting Proust's fraudulent conduct, C2B has sustained and will continue to sustain substantial damages, in an amount to be proven at trial.

WHEREFORE, C2B demands judgment against Constantin for compensatory damages, pre- and post-judgment interest, costs, and for such other and further relief as this Court may deem just and proper.

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.          Case No.: 2018-028627-CA-01 (44)
Page 34 of 37

## COUNT XIX

### NEGLIGENCE
### (Atlantic Ventures against Proust)

Atlantic Ventures hereby incorporates Paragraphs 1 through 39 of this Amended Complaint as if fully restated herein.

146.   At all relevant times, because of his role as SFI's CFO, Proust had a duty to act in the best interests of SFI, as well as a duty to SFI's shareholders, including Atlantic Ventures, direct and indirect, and SFI's lenders, to act in a reasonably prudent manner.

147.   By making false entries in the accounting books of SFI and concealing accurate financial information regarding SFI from Atlantic Ventures, Proust breached his duty of care.

148.   As a direct and proximate result of Proust's breaches, Atlantic Ventures has sustained and will continue to sustain substantial damages, in an amount to be proven at trial.

WHEREFORE, Atlantic Ventures demands judgment against Proust for compensatory damages, pre- and post-judgment interest, costs and for such other and further relief as this Court may deem just and proper.

## COUNT XX

### NEGLIGENCE
### (ECB USA against Proust)

ECB USA hereby incorporates Paragraphs 1 through 39 of this Amended Complaint as if fully restated herein.

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.          Case No.: 2018-028627-CA-01 (44)
Page 35 of 37

149.   At all relevant times, because of his role as SFI's CFO, Proust had a duty to act in the best interests of SFI, as well as a duty to SFI's shareholders, including ECB USA, direct and indirect, and SFI's lenders, to act in a reasonably prudent manner.

150.   By making false entries in the accounting books of SFI and concealing accurate financial information regarding SFI from ECB USA, Proust breached his duty of care.

151.   As a direct and proximate result of Proust's breaches, ECB USA has sustained and will continue to sustain substantial damages, in an amount to be proven at trial.

WHEREFORE, ECB USA demands judgment against Proust for compensatory damages, pre- and post-judgment interest, costs and for such other and further relief as this Court may deem just and proper.

### COUNT XXI

### NEGLIGENCE
### (C2B against Proust)

C2B hereby incorporates Paragraphs 1 through 39 of this Amended Complaint as if fully restated herein.

152.   At all relevant times, because of his role as SFI's CFO, Proust had a duty to act in the best interests of SFI, as well as a duty to SFI's shareholders, including, C2B, direct and indirect, and SFI's lenders, to act in a reasonably prudent manner.

153.   By making false entries in the accounting books of SFI and concealing accurate financial information regarding SFI from C2B, Proust breached his duty of care.

154.   As a direct and proximate result of Proust's breaches, C2B has sustained and will continue to sustain substantial damages, in an amount to be proven at trial.

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.          Case No.: 2018-028627-CA-01 (44)
Page 36 of 37

WHEREFORE, C2B demands judgment against Proust for compensatory damages, pre- and post-judgment interest, costs and for such other and further relief as this Court may deem just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

**MARKO & MAGOLNICK, P.A.**
Attorneys for Plaintiffs
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: (305) 285-2000
Facsimile: (305) 285-5555

By: */s/Joel S. Magolnick*
**Joel S. Magolnick**
Florida Bar No. 776068
Magolnick@mm-pa.com
**Veronica M. Rabinowitz**
Florida Bar No. 99618
Rabinowitz@mm-pa.com
**Davide Proietti**
Florida Bar No. 1002553
Proietti@mm-pa.com

ECB USA, Inc., et al. v. Constantin Associates, LLP et al.                 Case No.: 2018-028627-CA-01 (44)
Page 37 of 37

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on

this April 11, 2019, to all parties listed in the Service List below in the manner specified

therein.

/s/Veronica M. Rabinowitz
Veronica M. Rabinowitz

**Service List**
Mark J. Beutler, Esq.
Law Offices of Mark J. Beutler, P.A.
One Datran Center
9100 South Dadeland Blvd., Suite 1500
Miami FL 33156
Via an automated email generated by the Florida Courts E-filing Portal to:
mjb@mjbpa.com and mwooduk@mjbpa.com

Roy M. Hartman, Esq.
Sacher Zelman Hartman, P.A.
Two Datran Center – Suite 2000
9130 South Dadeland Boulevard
Miami, Florida 33156
Via an automated email generated by the Florida Courts E-filing Portal to:
rhartman@sacherzelman.com

# EXHIBIT "G"

SACHER, ZELMAN, HARTMAN, P.A.
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW
TWO DATRAN CENTER – SUITE 2000
9130 SOUTH DADELAND BOULEVARD
MIAMI, FLORIDA 33156

—

TELEPHONE: (305) 371-8797
WEBSITE: www.sacherzelman.com

June 10, 2019

VIA EMAIL TO cheryl.napurano@chubb.com

Cheryl A. Napurano
Claim Director
Chubb North American Financial Lines Claims
150 Allen Road, Suite 101
Basking Ridge, NJ 07960

      Re:    Insured:  Constantin Associates, LLP
               Policy No.:   8168-4190
               Claim No.:    426527
               Insurer:  Chubb Insurance Company of New Jersey ("Chubb")
               Claimant:  ECB USA, Inc., et al.

Dear Ms. Napurano:

    This office has been retained by Constantin Associates, LLP ("Constantin") to defend them in the lawsuit initially filed by ECB USA, Inc. We are aware of your October 12, 2018 letter to Daniel Nagle at Constantin advising him that there was no coverage under the Chubb policy for the Complaint filed by ECB USA, Inc. on August 22, 2018.

    The Plaintiff has now filed an amended complaint adding in addition to ECB USA, Inc., Atlantic Ventures Corp and G.I.E. C2B as Plaintiffs. An answer to the amended pleading is due by June 14, 2019. Attached is a copy of the Amended Complaint. Based upon the new allegations in the Amended Complaint, we believe coverage is available under the Chubb policy and that a defense should be provided.

    I am confident that you are aware that in Florida an insurance company's duty to defend is distinct from and is broader than its duty to indemnify. *Zurich American Insurance Company v. Southern-Owner's Insurance Company, 314 F Supp. 3d 1284 (M.D. Fla. 2018).* The duty to provide a defense is measured entirely by the allegations in the complaint against the insured. *National Union Fire Insurance Company v. Lenox Liquors, Inc., 358 So. 2d 533 (Fla. 1977); MCO Environmental, Inc. v. Agricultural Excess and Surplus Insurance Company, 689 So. 2d 1114 (Fla. 3d DCA 1997).*

    Under Florida Law, if the complaint alleges facts which <u>potentially</u> fall within the

CONFIDENTIAL

Cheryl A. Napurano
Claim Director
Chubb North American Financial Lines Claims
June 10, 2019
Page -2-

coverage of the policy, the insurer is obligated to defend.   *See MCO Environmental Inc. supra.*  If an examination of the allegations of the complaint leaves any doubt regarding the insurer's duty to defend its insured, the issue is resolved in favor of the insured. *Zurich American Insurance Company, supra at 1299; see also Marr Investments, Inc. v. Greco, 621 So. 2d 447 (4th DCA 1993).*

In Section VI of the Policy, entitled Defense and Settlement, the opening sub-paragraph A states that "The company shall have the right and duty to defend any Claim covered by this Coverage Part. Coverage shall apply even if the allegations are groundless, false or fraudulent."

Professional Services is defined to mean "Management consulting services meaning services directed towards expertise in banking, finance, accounting, risk and systems analysis …."

We believe the new allegations contained in the Amended Complaint come within the definition of accounting services and are sufficiently broad to trigger, at a minimum, a duty to defend under the reservation of rights.

It is requested that all future communications from your office regarding this claim be directed to the attention of the undersigned.  If you need any further information from our client, or this law firm as its counsel, please address such requests to me.

Thank you.

Very truly yours,

SACHER, ZELMAN, HARTMAN, P.A.

By: _____
     Roy M. Hartman, Esq.
     For the Firm

Enclosure as indicated

cc:  Daniel Nagle, U.S. Managing Director, Constantin Associates, LLP

SACHER, ZELMAN, HARTMAN
PROFESSIONAL ASSOCIATION

CONFIDENTIAL

# EXHIBIT "H"

SACHER, ZELMAN, HARTMAN, P.A.
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW
TWO DATRAN CENTER — SUITE 2000
9130 SOUTH DADELAND BOULEVARD
MIAMI, FLORIDA 33156

—

TELEPHONE:  (305) 371-8797
WEBSITE: www.sacherzelman.com

June 27, 2019

VIA EMAIL TO cheryl.napurano@chubb.com

Cheryl A. Napurano
Claim Director
Chubb North American Financial Lines Claims
150 Allen Road, Suite 101
Basking Ridge, NJ 07960

> Re:   Insured:  Constantin Associates, LLP
> Policy No.:   8168-4190
> Claim No.:   426527
> Insurer:  Chubb Insurance Company of New Jersey ("Chubb")
> Claimant:  ECB USA, Inc., et al.

Dear Ms. Napurano:

As you are aware, this office has been retained by Constantin Associates, LLP ("Constantin") to defend them in this lawsuit.  This letter is in furtherance of our prior letter to you dated June 10, 2019, for which you acknowledged receipt two week ago.  Since we have not heard from you as to Chubb's coverage position, we are writing you again.

The amended complaint that we furnished to Chubb on June 10 makes nineteen (19) separate references to "professional accounting services" rendered by the Insured for which Plaintiffs claim that are entitled to seek damages.  Despite those specific allegations, all found by a simple document search, and which all fall within the coverage of the referenced Policy, Chubb has not yet indicated a coverage position.  Be advised that Plaintiffs seek in excess of $27 million and upwards of $40 million in compensatory damages in this lawsuit.  As you are aware from a reading of the amended complaint, there is no fee shifting or prevailing party claim for attorneys' fees available.

We continue to defend Constantin's interests in this litigation at great cost and expense to the Insured.  Since the date of our June 10 letter, the Insured has incurred approximately $90,000 in legal fees and costs billed by this law firm, in addition to thousands of dollars of outside third party costs for the maintenance of the document database for documents produced in this case, court reporter fees, consulting expert fees and costs, etc.  Depositions have commenced, depositions are scheduled in this case for

Cheryl A. Napurano
Claim Director
Chubb North American Financial Lines Claims
June 27, 2019
Page -2-

July (next one July 10), August and September, for which we have and continue to prepare; mediation has scheduled for September pursuant to Court Order; and the Court has otherwise imposed pre-trial deadlines.  Constantin's defenses and legal positions must be continued to be vigorously asserted.

Each day Chubb waits to asserts its coverage position not only requires the Insured to spend more monies on additional legal fees and costs but also limits its ability to attempt to impose any fee shifting strategies to the Insured's detriment.

We believe that Chubb has had more than sufficient time to assert its coverage position in regard to Plaintiffs' amended complaint, and, accordingly, we request that Chubb do so now in writing.

Very truly yours,

SACHER, ZELMAN, HARTMAN, P.A.

By: _____
　　　Roy M. Hartman, Esq.
　　　For the Firm

cc:  Daniel Nagle, U.S. Managing Director, Constantin Associates, LLP

SACHER, ZELMAN, HARTMAN
PROFESSIONAL ASSOCIATION

# EXHIBIT "I"

 **CHUBB** | North American Financial Lines Claims
150 Allen Road, Suite 101
Basking Ridge, NJ 07960
Phone: 908.860.4819
E-mail: cheryl.napurano@chubb.com

July 2, 2019

**Via E-Mail & Certified Mail, Return Receipt Requested**
Roy M. Hartman, Esq.
Sacher. Zelman, Hartman, P.A.
Two Datran Center – Suite 2000
9130 South Dadeland Boulevard
Miami, FL 33156

| | | |
|---|---|---|
| Re: | Insured: | Constantin Group, LP d/b/a Constantin Control Associates, LP |
| | Policy No.: | 8168-4190 |
| | Claim No.: | 426527 |
| | Writing Company: | Chubb Insurance Company of New Jersey |
| | Subject: | ECB USA, Inc. |

Dear Mr. Hartman:

This letter acknowledges receipt of your letter dated June 10, 2019 on behalf of Chubb Insurance Company of New Jersey ("Chubb" or the "Company"). The Company issued a Chubb Professional Portfolio Policy to Control Associates/ Constantin Group, LP d/b/a Constantin Control Associates, LP ("Constantin" or the "Insured"). If the Insured is seeking coverage under any other policies issued by the Company, please let us know as soon as possible.

We note your position that the allegations in the Amended Complaint "come within the definition of accounting services and are sufficiently broad to trigger, at a minimum, a duty to defend under a reservation of rights". We respectfully disagree. **The purpose of this letter is to therefore inform you that for the reasons set forth below and based on the information provided, there is no coverage for this claim under the Policy.**

**THE ALLEGATIONS**

As a preliminary matter, please understand that Chubb has not made any determination as to the validity of the above-referenced matter, nor do we assert that any liability exists. We reference the allegations herein only to describe the matter submitted for coverage.

We are in receipt of an Amended Complaint in the suit captioned *ECB USA, Inc. v. Constantin Associates, LLP, et al.*, which was filed on or about April 11, 2019. Similarly to the original Complaint, the Amended Complaint alleges that the Insured was retained to audit the financial statements of Schratter Foods, Inc. ("SFI") and express an opinion as to whether they were fairly presented in accordance with the U.S. generally accepted accounting principles. It is further alleged that the Insured opined that SFI's financial statements were free of material misstatements resulting from (1) errors, (2) fraudulent financial reporting, (3) misappropriation of assets, or (4) violation of laws or governmental regulations attributable to SFI or to acts by management or employees acting on behalf of SFI. We further note that the engagement letter dated May 15, 2017 stated that the Insured

"will audit the financial statements of Schratter Foods, Inc., which comprise of the balance sheet as of April 30, 2017, and the related statements of income, retained earnings, and cash flows for the year then ended and related notes to the financial statements."

Co-defendant Bertrand Proust was formerly employed by the Insured but left to join SFI as its Chief Financial Officer in March 2013. The Amended Complaint alleges that the Insured abandoned its duty of independence in providing professional accounting services to SFI, and instead relied heavily upon Proust and therefore failed to detect material errors in SFI's financial statements, including but not limited to, continual and material underreporting of expenses and overreporting of revenues. The Amended Complaint further alleges that the Insured failed to exercise diligence, professionalism, and independence in the performance of its professional accounting services, including the certification of SFI's audited financial statements. Consequently, the Insured certified materially misstated financial statements, which the plaintiffs relied upon when making financial decisions related to SFI.

The Amended Complaint asserts the following causes of action against the Insured: negligent misrepresentation, fraud, aiding and abetting breach of fiduciary duties, and aiding and abetting fraud. The Complaint also alleges breach of fiduciary duties, fraud, and negligence against Proust. The plaintiffs demand unspecified compensatory damages, pre- and post-judgment interest and costs of suit.

## THE POLICY

Chubb issued a Chubb Professional Portfolio Policy (the "Policy") to the Insured for the period December 12, 2017 through December 12, 2018. The Policy has a maximum aggregate of liability of $3,000,000 for the Miscellaneous Professional and Technology Services (MPTS) Liability Coverage Part, which is subject to a $50,000 per Claim retention. Defense costs and expenses are part of and not in addition to the limit of liability.

With respect to the above allegations, we first direct your attention to the MPTS Insuring Clause, which provides:

I.      **INSURING CLAUSE**

**Miscellaneous Professional and Technology Services Liability Coverage**

The Company shall pay, on behalf of an **Insured**, **Loss** on account of a **Claim** first made against the **Insured** during the **Policy Period**, or the Extended Reporting Period if applicable, for a **Wrongful Act** on or after the Retroactive Date set forth in Item 4 of the MPTS Declarations.

Next, we call your attention to the following Definitions per the MPTS Liability Coverage Part, which states:

**Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect, breach of duty or **Personal Injury** committed, attempted, or allegedly committed or attempted solely in the performance of or failure to perform **Professional Services**.

**Professional Services** means:

    **(A)** Services which are performed by or on behalf of an Insured for others for a fee and set forth in Item 5 of the MPTS Declarations;

    …

We further direct your attention to the MPTS Declarations, Item 5, which states that the Professional Services are:

    Computer Consulting including computer system architecture and design
    Temporary Placement Agency Services and Management consulting
    Management consulting services meaning services directed toward expertise in banking finance, accounting, risk and systems analysis, design and implementation, asset recovery and strategy planning for financial institutions.

## COVERAGE POSITION

In light of the facts in our possession at this time, and based upon the Policy language referenced above, **please be advised that there is no coverage for this matter**.

As noted above, the Amended Complaint alleges that the Insured failed to properly perform an independent audit of financial statements in its capacity as auditor of Schratter Foods, Inc. and failed to provide an opinion as to whether the financial statements were compliant with U.S. generally accepted accounting principles. The Amended Complaint also references the accounting services provided by the Insured. The Policy defines Professional Services as including "management consulting services meaning services directed toward expertise in …accounting". The Amended Complaint does not allege any wrongful act in the performance of or failure to perform *management consulting services* to others for a fee. For the sake of completeness and contrary to the conclusion in your letter of June 10th, the definition of Professional Services does not include accounting services. Therefore this matter does not allege a Wrongful Act as defined under the Policy and the Policy's Insuring Clause has not been triggered. Accordingly, there is no coverage for this matter.

Without prejudice to the above, Chubb also reserves its rights in relation to the following:

First, the Amended Complaint asserts a claim of fraud against the Insured and alleges that the Insured aided and abetted Proust in his efforts to conceal material financial information and misrepresent Schratter Foods' financial condition. Chubb shall not be liable for Loss on account of any Claim based upon, arising from or in consequence of (1) any deliberately fraudulent act or omission, or any willful violation of any statute or regulation, by an Insured, if a final and non-appealable judgment or adjudication establishes such a fraudulent act or omission or willful violation or (2) an Insured having gained any profit, remuneration or other advantage to which they were not legally entitled, if a final and non-appealable judgment or adjudication establishes the gaining of such profit, remuneration or advantage. *See Section III(CC).*

Additionally, Chubb shall not be liable for Loss on account of any Claim based upon, arising from or in consequence of any guaranty, promise or warranty, either express or implied, whether oral or written, with respect to the future value of any real, personal or intellectual property. *See Section III(R).*

Finally, Chubb is not liable for any amounts that do not meet the definition of Loss under the Policy. *See Section II.*

We strongly recommend that you report this matter to any other insurance carrier that may afford coverage for this matter. Please note that you may request a re-evaluation of the coverage position. Any requests for re-evaluation should be accompanied by additional factual information, documentation, and/or legal precedent which you believe may apply. It should be directed to my attention. In the event of a re-evaluation, the Company reserves all rights under the Policy. Nothing herein shall be construed as a waiver of such rights.

Chubb reserves the right to deny coverage based upon grounds other than those expressly set forth in this letter and to supplement and/or amend this letter to address additional coverage issues as they may arise, based upon all the provisions, terms, conditions, exclusions, endorsements and definitions found in the Policy and additional facts that may come to Chubb's attention. By the same token, Chubb will take into consideration any additional information that you provide. Nothing stated herein and no further action taken by Chubb or on its behalf should be construed as a waiver of any of its rights under the Policy. On the contrary, by providing this or any prior correspondence to the Insured, engaging in any prior or future discussions with the Insured, or paying or agreeing to pay any amount to or on or behalf of the Insured, Chubb does not waive any rights that it has under the Policy at law or in equity and understands the Insured reserves its rights as well.

Pursuant to New Jersey Statute 17:29E-9, you may request claims decisions be reviewed by our Internal Appeal panel. Requests for review may be submitted in writing to:

> Chubb North America Claims
> Attn: Internal Appeal Officer, Routing WB04B
> 436 Walnut Street
> Philadelphia, PA 19106
> Phone: (800) 352-4462
> Fax: (215) 640-2489
> Email: NJAppeals@chubb.com

Should you have any questions, please feel free to contact me. Thank you for your cooperation in this matter.

Sincerely,

Cheryl A. Napurano
Claim Director
Chubb North American Financial Lines Claims

cc:     Daniel P. Nagle
        *Via Email Only*: dnagle@constantinusa.com

        Mary Kate Walsh, Bridgepoint Risk Management
        *Via Email Only*: mkwalsh@bridgepointrm.com

# EXHIBIT "J"

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

CASE NO.: 2018-028627-CA-01 (44)

ECB USA, INC., a Florida corporation,
ATLANTIC VENTURES CORP., a Florida
corporation, and G.I.E. C2B, a French entity,

     Plaintiffs,

vs.

CONSTANTIN ASSOCIATES, LLP, a New
York limited liability partnership; and
BERTRAND PROUST, an individual,

     Defendants.

_____/

BERTRAND PROUST, an individual,

     Third-Party Plaintiff,

vs.

ARNO LEONI, an individual,

     Third-Party Defendant.

_____/

## AGREED FINAL JUDGMENT

    **THIS CAUSE** having come before the Court on the Joint Motion for Entry of Agreed Final

Judgment, the Court having reviewed the file, and being otherwise duly advised in the premises,

it is thereupon,

    **ORDERED AND ADJUDGED** that

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.                    Case No.: 2018-028627-CA-01 (44)
Page 2

1. Plaintiff ECB USA, INC., c/o Marko & Magolnick, P.A., 3001 S.W. Third Avenue, Miami, Florida 33129, shall, **as to Counts I, II and III of Plaintiffs' Amended Complaint only**, recover from Defendant CONSTANTIN ASSOCIATES, LLP, 575 Madison Avenue, New York, NY 10022, the sum of $10,000.00, in principal, which shall bear interest at the applicable statutory rate of 6.57%, as set forth in section 55.03, *Florida Statutes*, for all of which let execution issue.

2. Plaintiff ATLANTIC VENTURES CORP., c/o Marko & Magolnick, P.A., 3001 S.W. Third Avenue, Miami, Florida 33129, shall, **as to Counts I, II and III of Plaintiffs' Amended Complaint only**, recover from Defendant CONSTANTIN ASSOCIATES, LLP, 575 Madison Avenue, New York, NY 10022, the sum of $2,420,000.00, in principal, which shall bear interest at the applicable statutory rate of 6.57%, as set forth in section 55.03, *Florida Statutes*, for all of which let execution issue.

3. Plaintiff G.I.E.C2B, c/o Marko & Magolnick, P.A., 3001 S.W. Third Avenue, Miami, Florida 33129, shall, **as to Counts I, II and III of Plaintiffs' Amended Complaint only**, recover from Defendant CONSTANTIN ASSOCIATES, LLP, 575 Madison Avenue, New York, NY 10022, the sum of $2,420,000.00, in principal, which shall bear interest at the applicable statutory rate of 6.57%, as set forth in section 55.03, *Florida Statutes*, for all of which let execution issue.

4. As to the remaining Counts contained in Plaintiffs' Amended Complaint, each of the Plaintiffs shall recover nothing from Defendant CONSTANTIN ASSOCIATES, LLP. Further, each of the Plaintiffs and Defendant CONSTANTIN ASSOCIATES, LLP

ECB USA, Inc. v. CONSTANTIN ASSOCIATES, LLP, et al.          Case No.: 2018-028627-CA-01 (44)
Page 3

shall bear their own respective attorneys' fees and costs incurred as a result of this

action.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Clerk is instructed not to

record this judgment without further order of this Court.

**DONE AND ORDERED** in Chambers in Miami-Dade County, Florida on this *18* day

of _November_, 2019.

_____

**Honorable William Thomas**
**Circuit Court Judge**

William Thomas
Circuit Court Judge

Copies furnished to:

Joel S. Magolnick, Esq. (magolnick@mm-pa.com), and John E. Kirkpatrick, Esq.
(kirkpatrick@mm-pa.com) - Marko & Magolnick, P.A., 3001 SW 3rd Ave, Miami, FL 33131;

Roy M. Hartman, Esq. (rhartman@sacherzelman.com) - Two Datran Center – Suite 2000, 9130
South Dadeland Boulevard, Miami, Florida 33156

FINAL ORDERS AS TO ALL PARTIES
SRS DISPOSITION
NUMBER _12_
THE COURT DISMISSES THIS CASE AGAINST
ANY PARTY NOT LISTED IN THIS FINAL ORDER
OR PREVIOUS ORDER(S). THIS CASE IS CLOSED
AS TO ALL PARTIES.
       Judge's Initials _____

3

Filing # 100530868 E-Filed 12/18/2019 04:02:05 PM

| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.<br>☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
|---|---|---|
| **DIVISION**<br>☐ CIVIL<br>☐ DISTRICTS<br>☐ OTHER | **SUMMONS 20 DAY CORPORATE SERVICE**<br>**(a) GENERAL FORMS** | **CASE NUMBER**<br>2019-036532-CA-01 |
| **PLAINTIFF(S)**<br>ECB USA, INC., a Florida corporation,<br>ATLANTIC VENTURES CORP., a Florida<br>corporation, G.I.E. C2B, a French business<br>entity, as assignees of CONSTANTIN<br>ASSOCIATE LLP, a New York limited liability partnership | **VS. DEFENDANT(S)**<br>CHUBB INSURANCE<br>COMPANY OF NEW<br>JERSEY, a New Jersey<br>insurance company corporation | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on

defendant(s):  The Corporation Trust Company, as Registered Agent
CHUBB INSURANCE COMPANY OF NEW JERSEY

820 Bear Tavern Road
West Trenton, NJ 08628

Each defendant is required to serve written defense to the complaint or petition on
Plaintiff's Attorney:  Joel S. Magolnick, Esq./ Marko & Magolnick, P.A.

whose address is:  3001 SW 3 Avenue
Miami, Florida 33129

CLOCK IN

within 20 days " <u>Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies,</u> <u>or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days.</u> <u>When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."</u> after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| | | | **DATE** |
|---|---|---|---|
| **HARVEY RUVIN**<br>**CLERK of COURTS** | | DEPUTY CLERK | |

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@jud11.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 09/19

Filing # 100530868 E-Filed 12/18/2019 04:02:05 PM

| ☑ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.<br>☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
|---|---|---|
| **DIVISION**<br>☐ CIVIL<br>☐ DISTRICTS<br>☐ OTHER | **SUMMONS 20 DAY CORPORATE SERVICE**<br>**(a) GENERAL FORMS** | **CASE NUMBER**<br>2019-036532-CA-01 |
| **PLAINTIFF(S)**<br>ECB USA, INC., a Florida corporation, ATLANTIC VENTURES CORP., a Florida corporation, G.I.E. C2B, a French business entity, as assignees of CONSTANTIN ASSOCIATE LLP, a New York limited liability partnership | **VS.  DEFENDANT(S)**<br>CHUBB INSURANCE COMPANY OF NEW JERSEY, a New Jersey insurance company corporation | **SERVICE** |

THE STATE OF FLORIDA:

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s):  The Corporation Trust Company, as Registered Agent
CHUBB INSURANCE COMPANY OF NEW JERSEY

820 Bear Tavern Road
West Trenton, NJ 08628

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney:  Joel S. Magolnick, Esq./ Marko & Magolnick, P.A.

whose address is:  3001 SW 3 Avenue
Miami, Florida 33129

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to 768.28, Florida Statutes, the time to respond shall be 30 days.**" after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| **HARVEY RUVIN**<br>**CLERK of COURTS** | *[signature]*<br>**219401**<br>DEPUTY CLERK | **DATE**<br>12/26/2019 |
|---|---|---|

**AMERICANS WITH DISABILITIES ACT OF 1990**
**ADA NOTICE**

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@jud11.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 09/19

Clerk's web address: www.miami-dadeclerk.com

Filing # 101549351 E-Filed 01/13/2020 01:48:28 PM

## VERIFIED RETURN OF SERVICE

| State of Florida | County of Miami-Dade | Circuit Court |
| --- | --- | --- |

Case Number: 19-36532

Plaintiff:
ECB USA, INC., A FLORIDA CORPORATION, ATLANTIC VENTURES CORP., A
FLORIDA CORPORATION, G. I. E. C2B, A FRENCH BUSINESS ENTIY, A
ASSIGNEES OF CONSTANTIN ASSOCIATE LLP, A NEW YORK LIMITED LIABILITY
PARTNERSHIP

vs.

Defendant:
CHUBB INSURANCE COMPANY OF NEW JERSEY, A NEW JERSEY INSURANCE
COMPANY CORPORATION

For:
MARKO MAGOLNICK
3001 S.W. Third Avenue
Miami, FL 33129

Received by GORMAN PROCESS SERVICE, LLC on the 6th day of January, 2020 at 9:00 am to be served on CHUBB
INSURANCE COMPANY OF NEW JERSEY C/O THE CORPORATION TRUST COMPANY, AS REGISTERED AGENT, 820
BEAR TAVERN ROAD, WEST TRENTON, NJ 08628..

I, JOHN BARATTA, do hereby affirm that on the 9th day of January, 2020 at 2:54 pm, I:

SERVED the within name corporation by delivering a true copy of the SUMMONS/CIVIL COVER SHEET/COMPLAINT FOR
DECLARATORY RELIEF AND DAMAGES at the address of 820 BEAR TAVERN ROAD, WEST TRENTON, NJ 08628 with
date and hour endorsed thereon by me to, BREON THOMPSON, INTAKE SPECIALIST as an employee of the Registered
Agent listed with the Florida Division of Corporations, pursuant to F.S. 48.081 (3)(e).

Description of Person Served: Age: 28, Sex: M, Race/Skin Color: BLACK, Height: 5'6", Weight: 160, Hair: BLACK, Glasses:
Y

I am over the age of eighteen, and have no interest in the above action. Under penalty of perjury, I declare that I have read
the foregoing verified return of service and that the facts stated in it are true.

JOHN BARATTA
Process Server

GORMAN PROCESS SERVICE, LLC
11767 South Dixie Highway
Suite 204
Miami, FL 33156
(305) 971-9636

Our Job Serial Number: ARG-2020000104

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1g

Filing # 102509735 E-Filed 01/30/2020 03:18:22 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2019-036532-CA-01
SECTION: CA04
JUDGE: Carlos Guzman

**ECB USA, Inc. et al**

Plaintiff(s)

vs.

**CHUBB INSURANCE COMPANY OF NEW JERSEY**

Defendant(s)

_____/

**AGREED ORDER EXTENDING TIME TO RESPOND TO PLAINTIFF'S COMPLAINT**

THIS CAUSE, having come before the Court on Defendant' Motion For Extension of Time to Respond to Plaintiffs' Complaint (the "Motion"), and the Court being fully advised, it is ordered and adjudged as follows:

1. The Motion is granted.

2. Chubb is granted an extension of time through and including February 24, 2020, to file its responsive pleading to Plaintiffs' Complaint.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 30th day of January, 2020.

2019-036532-CA-01 01-30-2020 3:04 PM

2019-036532-CA-01 01-30-2020 3:04 PM
Hon. Carlos Guzman

**CIRCUIT COURT JUDGE**
Electronically Signed

Case No: 2019-036532-CA-01

No Further Judicial Action Required on THIS MOTION

CLERK TO RECLOSE CASE IF POST JUDGMENT

**Copies Furnished To:**
Daniel G. Enriquez , Email : DEnriquez@CFJBLaw.com
Daniel G. Enriquez , Email : mrivera@carltonfields.com
Daniel G. Enriquez , Email : miaecf@cfdom.net
JOEL S MAGOLNICK , Email : file@mm-pa.com
JOEL S MAGOLNICK , Email : magolnick@mm-pa.com
JOEL S MAGOLNICK , Email : sandy@mm-pa.com
John E Kirkpatrick , Email : ligia@mm-pa.com
John E Kirkpatrick , Email : kirkpatrick@mm-pa.com
John E Kirkpatrick , Email : file@mm-pa.com

the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by the Florida Courts E-Filing Portal or some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Daniel G. Enriquez*
Steven J. Brodie
Florida Bar No. 333069
Daniel G. Enriquez
Florida Bar No. 85864
*Counsel for Defendant Chubb Insurance Company of New Jersey*
CARLTON FIELDS, P.A.
100 S.E. Second Street, Suite 4200
Miami, Florida 33131
Telephone:    305-530-0050
Facsimile:    305-530-0055
Primary E-mail:        SBrodie@carltonfields.com
Alternate 1 E-mail:    Ldelpino@carltonfields.com
Alternate 2 E-mail:    miaecf@cfdom.net
Primary E-mail:
        DEnriquez@carltonfields.com
Alternate 1 E-mail:    MRivera@carltonfields.com
Alternate 2 E-mail:    miaecf@cfdom.net

## SERVICE LIST

Joel S. Magolnick, Esq.
John E. Kirkpatrick, Esq.
Davide Proietti, Esq.
Marko & Magolnick, P.A.
3001 S.W. 3rd Avenue
Miami, FL 33129
Telephone: (305) 285-2000
Fax: (305) 285-5555
*Attorneys for Plaintiffs*